**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929
PaulSilverstein@andrewskurth.com

Counsel to Plaintiffs/Debtors

**GOLUB & GOLUB, LLP**
225 Broadway, Suite 1515
New York, New York 10007
Steven M. Golub, Esq. (SG 3592)
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090
Sgolub@golublaw.com

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re

WINIMO REALTY CORPORATION. et al.,

                                 Debtors.

-----------------------------------------------------------------x

WINIMO REALTY CORPORATION. et al.

                             Plaintiffs,

                        v.

WILLIAM J. CIRILLO ON HIS BEHALF AND
AS AGENT FOR THE ESTATE OF CONSTANCE
CIRILLO, JACQUELYN CIRILLO, ROBERT CIRILLO,
AND WILLIAM J. CIRILLO AND BARBARA CIRILLO, AS
TRUSTEES FOR JANICE CIRILLO AND
MONTAUK OIL TRANSPORTATION CORP.

                        Defendants.

-----------------------------------------------------------------x

Chapter 11 Case Nos. 92-B-40026
Through 92-B- 40045 (RRD) (inclusive)

Jointly Administered
Under Case No. 92-B-40026 (RRD)

Adversary Proceeding

No.: 10-

FILED
U.S. BANKRUPTCY COURT
2010 FEB -9 A 10: 10
S.D. OF N.Y.

**COMPLAINT FOR THE SUBORDINATION, PURSUANT
TO 11 U.S.C. §510(b), OF CLAIMS FILED AGAINST THE DEBTORS BY
WILLIAM J. CIRILO ON HIS BEHALF AND AS AGENT FOR OTHERS
AND BY MONTAUK OIL TRANSPORTATION CORP.**

Winimo Realty Corp., et al., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their counsel, Andrews Kurth LLP, and the Official Committee of Unsecured Creditors, by its counsel, Golub & Golub, LLP, for their complaint against the Defendants, allege:

I

## NATURE OF ACTION

1.      Plaintiffs bring this action pursuant to sections 105(a), 502 and 510(b) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") for: entry of an order (a) subordinating to all unsecured claims twenty (20) proofs of claim filed by William J. Cirillo, on his behalf and as agent for others (the "Cirillo Claims"), which were filed against each of the Debtors in an aggregate amount in excess of $22 million as set forth in Exhibit "A" hereto (b) subordinating fifteen (15) proofs of claim (the "Montauk Claims") filed by Montauk Oil Transportation Corp. ("Montauk") against certain of the Debtors in the aggregate amount of $550,000 as set forth in Exhibit "B" hereto.

## II.

## BACKGROUND

2.      On January 3, 1992, each of the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.

2

3. Pursuant to this Court's Order, dated January 3, 1992, the Debtors' Chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors manage and operate their respective businesses and properties as debtors in possession.

5. On February 12, 1992, the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "Committee") to represent all of the Debtors' unsecured creditors.

## III

## JURISDICTION, VENUE AND APPLICABLE RULES

6. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1334(b) and 1334(e). The claims alleged herein are core proceedings under 28 U.S.C. §§ 157(b)(A) and (b)(2)(B), (K) and (O). Resolution of the claims alleged herein will impact the distributions to be received by general unsecured creditors under a plan of reorganization and the value of the Debtors' estates. Pursuant to 28 U.S.C. §§ 157(a) and 157(b)(1) and the United States District Court for the Southern District of New York's reference of proceedings to the Bankruptcy Court, this Court may exercise subject matter jurisdiction in this case.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1408 because a substantial part of the events, acts or omissions giving rise to the claims herein occurred in this District and pursuant to 28 U.S.C. § 1409(a) because this proceeding arises under title 11 or relates to a case under title 11.

3

8. This Adversary Proceeding is brought in accordance with Federal Rules of Bankruptcy Procedure 7001, *et seq.*, and seeks relief under sections 105(a), and 510(b) of the Bankruptcy Code.

## IV

## PARTIES

**A.  Plaintiffs**

9. Plaintiffs are New York corporations with a principal place of business c/o James Fiore, 183 Otis Lane, Bay Shore, NY 11706.

**B.  Defendants**

10. Defendant, William J. Cirillo, individually and as agent for the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo; and William J. Cirillo and Barbara Cirillo, as Trustees for Janice Cirillo (collectively, "Cirillo Defendants"), is a resident of the State of New York residing at 19 Manger Circle, Pelham Manor, New York 10803.

11. Defendant, Montauk Oil Transportation Corp is a New York Corporation with a principal place of business c/o John Cirillo, Ellen's Way, Alpine, New York 07620 ("Montauk Defendant").

## V

## FACTUAL ALLEGATIONS

**A.  The Cirillo Claims**

12. On June 2 and June 3, 1993, the holder of the Cirillo Claims (the "Cirillo Claimants") filed twenty (20) proofs of claim in these Chapter 11 Cases. The attachments to the proofs of claim

4

are essentially duplicates, except for matters which are not relevant to this Complaint. The Cirillo Claims, filed as "secured claims," allege that the Debtors were and remain indebted to the Cirillo Claimants in the principal amount of $1,028,841.35, plus interest as of June 1, 1993 in the amount of $9,831.26 and reasonable attorneys' fees incurred by the Cirillo Claimants in the amount of $77,214.18 or the aggregate amount of $1,115,886.79. For reference purposes, a copy of proof of claim no. 322 filed against Cibro Terminals, Inc., Debtor is attached hereto as Exhibit "C" ("Claim 322").

13. The terms of the purchase by the Debtors, and the sale by the Cirillo Claimants, of the "Stock" (defined below) is set forth in a stock purchase agreement, dated May 29, 1987 (the "SPA"; Exhibit "B" to Claim 322). The SPA is by and among William J. Cirillo, the Estate of Constance Cirillo ("Constance Cirillo Estate"), Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo, as Trustees for Janice R. Cirillo (collectively the "Sellers").

14. Under the SPA, William J. Cirillo was Agent for the Sellers (Sellers' Agent") and Cibro Terminals, Inc., a Debtor in these Chapter 11 Cases, was agent for the Buyers. The Buyers of the Stock listed on the Schedule include eighteen (18) entities, which are Debtors in these Chapter 11 Cases, Montauk, is a non-debtor affiliate of the Debtors.

15. Each Cirillo Defendant was the owner of the number of shares of capital stock as set forth on Schedule II to the SPA (all of the shares of such stock referred to as the "Stock"), and each Buyer (also being referred to under the SPA as the "Issuer") was an Issuer with respect to the shares of Stock issued by it. At a closing, each Cirillo Defendant sold, transferred and assigned the shares of Stock owned by each of the Cirillo Defendants to the Buyers pursuant to the terms of the SPA.

5

16.     The SPA and other attachments to the proofs of claim make clear that the Cirillo Defendants sold back to Debtors their Stock in the Debtors and were given notes and guarantees from the various Debtors in payment for such Stock. The Cirillo Claims for damages consist of the unpaid purchase price for the Stock.

17.     The Cirillo Defendants assert the Cirillo Claims are secured by Cirillo Defendants' collateral consisting of 166.96 shares of the capital stock of Debtor, Cibro Terminals, Inc., and that the stock certificates representing such shares are being held in escrow in accordance with the terms of a certain Escrow Agreement, dated May 29, 1987.

18.     The Cirillo Claims acknowledge, on their face, that the claims were incurred "in connection with or arising out of the Note, Stock Purchase Agreement and Guaranty."

## B.     The Montauk Claims

19.     On June 1, 1993, Montauk filed the Montauk Claims (fifteen (15) proofs of claim) against fifteen (15) Debtors in the aggregate amount of $550,000. The proofs of claim were filed on the same date as the Cirillo Claims (June 1 and 2, 1993). Each of the Montauk Claims is signed by John Cirillo, at that time an officer and, upon information and belief, a stockholder of Montauk, as well as a stockholder of each of the Debtors. For example, the Montauk Claim, filed as an unsecured non-priority claim against Winimo Realty Corp., Debtor ("Winimo") alleges that Winimo is indebted to Montauk in the amount of $10,187.00 (its allocable amount) under a guaranty issued by the Debtor companies in favor of William J. Cirillo (the "Guaranty"). For reference purposes, a copy of proof of claim no. 274 filed against Winimo Realty Corp., Debtor is attached as Exhibit "D" ("Claim 274").

6

20.     As indicated on Exhibit "D," each of the proofs of claim filed by Montauk is against different Debtors in different amounts (their respective allocable share of the Purchase Price of the Stock). The proofs of claim and attachments to the proofs of claim are essentially duplicates, except for matters which are not relevant to this Complaint.

21.     Montauk, a party to the SPA, asserts in Claim 274 that the damages, which aggregate $550,000 against the fifteen (15) Debtors, consist of the amount it paid the Cirillo Defendants on behalf of the Debtors, as Buyers under the SPA, as guarantor of the Debtors' obligations for indebtedness underlying the Cirillo Claims.

22.     Montauk, as a guarantor of the Debtors' obligations to pay the Notes issued to the Cirillo Defendants, paid a portion of the amount of the Notes and, as a consequence, stands in shoes of the Cirillo Defendants as a creditor of the Debtors.

## C.     Relief Under Sections 510(b) of the Bankruptcy Code

23.     Section 510(b) of the Bankruptcy Code reads, as follows:

> For the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

24.     This Complaint relates to damages arising from a purchase or sale of a security. Specifically, the Cirillo Claimants' sale to the Debtors of stock in or of the Debtors, which was owned by the Cirillo Claimants immediately before the closing of the sale.

7

25.     The Cirillo Claims and Montauk Claims fall squarely within section 510(b) of the Bankruptcy Code and must be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security and to all unsecured claims.

26.     The Cirillo Claims assert damages resulting as a consequence of the purchase of Stock and the Montauk Claims assert damages which result as a consequence of having purchased the Stock and their Guaranty of payment of the purchase price of the Stock.

27.     The Cirillo Claims and Montauk Claims must be subordinated to the claims of all unsecured creditors pursuant to section 510(b) of the Bankruptcy Code.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST CIRILLO DEFENDANTS
### (Subordination Under Sections 510(b) of the Bankruptcy Code)

28.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 27 as if set forth at length hereat.

29.     The Cirillo Claims, which assert damages which arise in connection with the purchase or sale of the Debtors' Stock, fall squarely within section 510(b) of the Bankruptcy Code and must be subordinated pursuant to section 510(b) of the Bankruptcy Code to the claims of all unsecured creditors and shall, upon such subordination, have the same priority as common stock.

30.     Subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

8

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST MONTAUK
### (Subordination Under Sections 510(b) of the Bankruptcy Code)

31.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 27 with the same force and effect as if more fully set forth hereat.

32.     The Montauk Claims, which assert damages which arise in connection with the purchase or sale of the Debtors' Stock, fall squarely within section 510(b) of the Bankruptcy Code and must be subordinated pursuant to section 510(b) of the Bankruptcy Code to the claims of all unsecured creditors and, upon such subordination, shall have the same priority as common stock.

33.     Subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs respectfully request entry of judgment in their favor granting the relief sought in this Complaint (a) subordinating the Cirillo Claims and the Montauk Claims to the claims of all unsecured creditors and, upon such subordination, shall have the same priority as

9

common stock, (b) reasonable attorneys' fees and costs, and costs of this action, and (c) such other and further relief as is just and proper.

Dated: New York, New York
        February 5, 2010

ANDREWS KURTH LLP
Counsel to the Debtors


By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

        and

GOLUB & GOLUB, LLP
Counsel to the Official Committee of
Unsecured Creditors
Steven M. Golub, Esq. (SG 3592)
Remy J. Ferrario, Esq. (RF 4105)
225 Broadway, Suite 1515
New York, New York 10007
Telephone: (212) 693-1000
Fax: (212) 693-0090

NYC:206736.4

# EXHIBIT B - Subordination Under 11 U.S.C. § 510(b)

————————Claims To Be Subordinated————————

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| 0001307-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 307 | 6/2/1993 | 92-40027 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002802-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 308 | 6/2/1993 | 92-40028 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002804-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 309 | 6/2/1993 | 92-40026 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000262-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 310 | 6/2/1993 | 92-40043 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0004502-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 311 | 6/2/1993 | 92-40045 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002243-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 312 | 6/2/1993 | 92-40040 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001313-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 313 | 6/2/1993 | 92-40041 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT B - Subordination Under 11 U.S.C. § 510(b)

## Claims To Be Subordinated

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| 0000256-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 314 | 6/2/1993 | 92-40042 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000291-00 | CIRILLO, WILLIAM J<br>SOUTHSHORE TERMINAL CHATTERTON &<br>BLACKROCK<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 315 | 6/2/1993 | 92-40036 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001316-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 316 | 6/2/1993 | 92-40038 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000242-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 317 | 6/2/1993 | 92-40039 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000221-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 318 | 6/2/1993 | 92-40035 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000215-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 319 | 6/2/1993 | 92-40034 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 320 | 6/2/1993 | 92-40034 | $1,115,886.79<br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT B - Subordination Under 11 U.S.C. § 510(b)

## Claims To Be Subordinated

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | | |
|---|---|---|---|---|---|---|---|
| 0000037-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 321 | 6/2/1993 | 92-40031 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |
| 0003226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHEM MANOR NY 10803 | 322 | 6/2/1993 | 92-40032 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |
| 0000017-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 323 | 6/2/1993 | 92-40029 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |
| 0000031-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 324 | 6/2/1993 | 92-40030 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |
| 0001334-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 334 | 6/3/1993 | 92-40037 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |
| 0001335-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 335 | 6/3/1993 | 92-40044 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) | |

# EXHIBIT B - Subordination Under 11 U.S.C. § 510(b)

## Claims To Be Subordinated

| Creditor Number Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|
| **Totals:** | 20 Claims | | | $22,317,735.80 | (T) ESTIMATED |
| | | | | | (S) |
| | | | | | (A) |
| | | | | | (P) |
| | | | | $22,317,735.80 | (U) |

**EXHIBIT B**

# EXHIBIT C - Subordination Under 11 U.S.C. § 510(b)

| Creditor Number | Name/Address of Claimant | Claims To Be Subordinated | | | |
|---|---|---|---|---|---|
| | | Claim Number | Date Filed | Case Number | Total Amount Claimed |
| 0002816-00 | MONTAUK OIL TRANSPORTATION<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 288 | 6/1/1993 | 92-40028 | $18,591.33 (T)<br>(S)<br>(A)<br>(P)<br>$18,591.33 (U) |
| 0001274-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 274 | 6/1/1993 | 92-40026 | $10,187.00 (T)<br>(S)<br>(A)<br>(P)<br>$10,187.00 (U) |
| 0001275-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 275 | 6/1/1993 | 92-40035 | $18,099.85 (T)<br>(S)<br>(A)<br>(P)<br>$18,099.85 (U) |
| 0001276-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 276 | 6/1/1993 | 92-40045 | $5,921.18 (T)<br>(S)<br>(A)<br>(P)<br>$5,921.18 (U) |
| 0001277-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 277 | 6/1/1993 | 92-40032 | $370,685.42 (T)<br>(S)<br>(A)<br>(P)<br>$370,685.42 (U) |
| 0001278-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 278 | 6/1/1993 | 92-40039 | $19,299.55 (T)<br>(S)<br>(A)<br>(P)<br>$19,299.55 (U) |
| 0001279-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 279 | 6/1/1993 | 92-40040 | $34,013.96 (T)<br>(S)<br>(A)<br>(P)<br>$34,013.96 (U) |

# EXHIBIT C - Subordination Under 11 U.S.C. § 510(b)

| Creditor Number | Name/Address of Claimant | Claims To Be Subordinated | | | |
|---|---|---|---|---|---|
| | | Claim Number | Date Filed | Case Number | Total Amount Claimed |
| 0001280-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 280 | 6/1/1993 | 92-40043 | $5,653.92 (T)<br>(S)<br>(A)<br>(P)<br>$5,653.92 (U) |
| 0001281-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 281 | 6/1/1993 | 92-40029 | $4,324.33 (T)<br>(S)<br>(A)<br>(P)<br>$4,324.33 (U) |
| 0001282-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 282 | 6/1/1993 | 92-40034 | $11,017.38 (T)<br>(S)<br>(A)<br>(P)<br>$11,017.38 (U) |
| 0001283-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 283 | 6/1/1992 | 92-40036 | $38,113.04 (T)<br>(S)<br>(A)<br>(P)<br>$38,113.04 (U) |
| 0001284-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 284 | 6/1/1993 | 92-40042 | $251.28 (T)<br>(S)<br>(A)<br>(P)<br>$251.28 (U) |
| 0001285-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 285 | 6/1/1993 | 92-40030 | $3,616.36 (T)<br>(S)<br>(A)<br>(P)<br>$3,616.36 (U) |
| 0001286-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 286 | 6/1/1993 | 92-40033 | $4,787.97 (T)<br>(S)<br>(A)<br>(P)<br>$4,787.97 (U) |

# EXHIBIT C - Subordination Under 11 U.S.C. § 510(b)

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| | | | | —Claims To Be Subordinated— | | |
| 0001287-00 | MONTAUK OIL TRANSPORTATION COR<br>ATTN: JOHN CIRILLO<br>1066 ZEREGA AVENUE<br>BRONX NY 10462 | 287 | 6/1/1993 | 92-40031 | $5,437.43 | (T)<br>(S)<br>(A)<br>(P)<br>(U) |
| | | | | | $5,437.43 | (U) |
| Totals: | | 15 Claims | | | $550,000.00 | (T)<br>(S)<br>(A)<br>(P)<br>(U) |
| | | | | | $550,000.00 | (U) |

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

In re                              :     Chapter 11
                                         Case No. 92-B-40032
CIBRO TERMINALS, INC.,             :     (CB)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WINIMO REALTY CORP
CASE # 9240026 THROUGH # 9240045
0322

                        Debtor.     :
------------------------------------x

PROOF OF SECURED CLAIM

     1.   The undersigned, whose mailing address is 19
Manger Circle, Pelham Manor, New York 10803, is authorized to
make this proof of claim on behalf of, and as agent for, himself,
the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert
Cirillo and William J. Cirillo and Barbara Cirillo as Trustees
for Janice Cirillo (the "Claimant").

     2.   The Debtor was and remains indebted to the
Claimant in the principal amount of $1,028,841.35, plus interest
as of June 1, 1993 in the amount of $9,831.26 and reasonable
attorneys' fees incurred by the Claimant in connection with or
arising out of the Note, Stock Purchase Agreement and Guaranty
(all as herein defined) in the amount of $77,214.18 (as of
April 30, 1993).  Claimant reserves the right to amend this proof
of claim to, _inter alia_, reflect interest accruals subsequent to
June 1, 1993 and legal expenses incurred or paid by Claimant
subsequent to April 30, 1993.

     3.   The consideration for this debt is as follows:
(a) the principal amount of $1,028,841.35 owed by the Debtor to
the Claimant pursuant to (i) a certain Secured Note, dated

Doc 789129

JUN 2 1993
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

May 29, 1987 (the "Note"), (ii) a certain Stock Purchase Agreement, dated as of May 29, 1987 (the "Stock Purchase Agreement"), (iii) a certain Guaranty, dated as of May 29, 1987 (the "Guaranty"), and (iv) a certain Agreement, dated as of March 5, 1993 (the "Settlement Agreement"); (b) interest in the amount of $9,831.26 pursuant to the Note, Stock Purchase Agreement, Guaranty and Settlement Agreement; and (c) the Claimant's fair and reasonable attorneys' fees, incurred and to be incurred in connection with the enforcement, collection and satisfaction of the indebtedness of the Debtor to the Claimant described in this paragraph in an amount not less than $77,214.18.

4.    A duplicate of the writings upon which this claim is founded is attached hereto as Exhibit A (the Note), Exhibit B (the Stock Purchase Agreement), Exhibit C (the Guaranty) and Exhibit D (the Settlement Agreement).

5.    No judgment has been rendered on this claim.

6.    The amount of all payments on this claim as of June 1, 1993 has been credited and deducted for the purpose of making this proof of claim. Payments received by the Claimant subsequent to June 1, 1993 will be credited upon receipt of same.

7.    This claim is not subject to any setoff or counterclaim.

8.    The Claimant holds a security interest for this claim wherein Claimant's collateral consists of 166.96 shares of the capital stock of the Debtor, which stock certificates representing such shares have been delivered and are being held

2

in escrow in accordance with the terms of that certain Escrow Agreement, dated May 29, 1987, a copy of which is·attached hereto as Exhibit E. Such pledge created a valid, perfected first security interest in such shares of stock in favor of Claimant.

9.    This claim is a general unsecured claim except to the extent provided for in paragraph 8 hereof.

Dated:    New York, New York
          June 1, 1993

                                    William J. Cirillo, as agent
                                    for himself, the Estate of
                                    Constance Cirillo, Robert
                                    Cirillo, Jacquelyn Cirillo
                                    and William J. Cirillo and
                                    Barbara Cirillo as Trustees
                                    for Janice Cirillo

3

Doc 789129

## GENERAL POWER OF ATTORNEY

To the law firm of Kaye, Scholer, Fierman, Hays & Handler, 425 Park Avenue, New York, New York 10002, and to any member or associate thereof; or his or her designated representative:

The undersigned claimant hereby authorizes you, or any of you, as attorney in fact for the undersigned and with full power of substitution, to vote on any question that may be lawfully submitted to creditors of the Debtor in the case of In re Cibro Terminals, Inc., to vote for a trustee or trustees of the estate of the Debtor and for a committee of creditors; to receive dividends; and in general to perform any act not constituting the practice of law for the undersigned in all matters arising in this case.

Dated: New York, New York
June 1, 1993

_____
William J. Cirillo, as agent
for himself, the Estate of
Constance Cirillo, Robert
Cirillo, Jacquelyn Cirillo
and William J. Cirillo and
Barbara Cirillo as Trustees
for Janice Cirillo

STATE OF NEW YORK      )
                       ss.:
COUNTY OF NEW YORK     )

On the 1st day of June, 1993 before me personally came William J. Cirillo to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public

Doc 789112

TERRI HUPART ALTAMURA
NOTARY PUBLIC, State of New York
No. 41-4854816
Qualified in Westchester County
Commission Expires 2/24/94

# Exhibit A

# SECURED NOTE

**$1,438,312.00**

**May 29, 1987**

FOR VALUE RECEIVED, CIBRO TERMINALS, INC., a New York corporation (the "Company"), DOES HEREBY PROMISE to pay to William J. Cirillo ("Cirillo"), as agent for himself, Janice Cirillo, the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively, the "Sellers"), at 701 South Columbus Avenue, Mt. Vernon, New York 10550, or at such other address as may be designated in writing by Cirillo, the principal sum of One Million Four Hundred Thirty Eight Thousand Three Hundred Twelve Dollars ($1,438,312.00), together with interest at the rate of seven and one-quarter (7 1/4%) per cent per annum, in lawful money of the United States of America, such principal and interest to be payable in thirty-one consecutive quarter annual installments of $50,250.00 each, such Installments to be payable on August 31, November 30, February 28 and May 31 of each year commencing August 31, 1987 and one final installment of $452,249.98, to be payable on May 31, 1995 (the thirty-one quarter annual installments and the final installment being referred to herein, collectively, as the "Installments" or, individually, as an "Installment").

1. _Security._  In order to secure the payment of this Note, the Company hereby grants to Cirillo a security interest in 234.23231 shares of its capital stock (the "Pledged Stock") and, as of the date hereof, delivers stock certificates (the "Certificates") representing such shares to Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the Americas, New York, New York 10105 as escrow agent (the "Escrow Agent") to be held in escrow in accordance with the terms of that certain Escrow Agreement of even date herewith among certain parties including Cirillo, the Company and the Escrow Agent.  Such pledge shall create a valid perfected first security interest in the Pledged Stock in favor of Cirillo, and Cirillo shall be entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York with respect to the Pledged Stock.  Said security interest is simultaneously being assigned to Manufacturers Hanover Trust Company ("MHT"), individually, and as agent for Citibank, N.A. ("Citibank"), National Westminster Bank USA ("NatWest") and The Chase Manhattan Bank, N.A. ("Chase") pursuant to and in accordance with the terms of that certain Letter Agreement dated May 29, 1987 among Sellers, Escrow Agent and MHT as agent for itself, Citibank, NatWest and Chase.

2. __Default.__   If one or more of the following events shall have occurred:

(a)   The Company defaults in the payment of any Installment, or

(b)   The combined net worth of the Company and each of the other corporations (the "Other Corporations") listed on the attached Schedule I falls below an amount that is equal to 300% of the sum of (i) the aggregate outstanding principal balance of this note and notes of even date herewith made by the Other Corporations in favor of Cirillo and (ii) the aggregate Prepayment Fees on such notes which would be applicable at the time of the event, or

(c)   The Company's "principal lender" declares a default and makes formal written demand for payment pursuant to the terms of such lender's agreement with the Company, and the period of times, if any, for curing such default shall have expired.  As used herein "principal lender" shall mean (i) an individual lender or any consortium of lenders with outstanding loans in favor of the Company together with the Other Corporations of $10,000,000 or more and (ii) MHT individually, and as agent for Citibank, NatWest and Chase (the "Banks") in connection with loans made by them pursuant to that certain Third Restructure and Amended and Restated Credit Agreement and Guarantee dated as of December 20, 1985 among the Banks and the Company and/or certain of the Other Corporations;

then Cirillo may, by written notice to the Company, declare a default, and the Company shall have five days from receipt of such notice to cure the default, or the entire outstanding principal balance of this Note, together with all interest accrued hereon shall become immediately due and payable.  In the event of a default under the agreement referred to in subsection (c)(ii) of this paragraph with the Banks, payments on this Note and notes of even date herewith made by the Other Corporations in favor of Cirillo shall be suspended until such default has been cured or waived.

3. __Financial Statements.__   The Company shall during the term of this Note deliver to Cirillo copies of the Company's unaudited statement of finances covering the first six months of each fiscal year and its annual audited statement of finances, such statements to be delivered as and when available.

4. __Prepayment.__   The Company may, at any time, prepay any Installment, in whole or in part.  In the event of a prepayment, whether voluntary, by reason of default and acceleration, or otherwise, the Company shall, at the time

of such prepayment, be required to simultaneously pay to Cirillo a prepayment fee ("Prepayment Fee"). In the event that the entire principal amount hereof is prepaid on or before the date in which the initial Installment is due, the Prepayment Fee shall be $225,575.00. The Prepayment Fee applicable for subsequent Installments shall be as set forth on Schedule II hereof. There shall be an equitable adjustment in the amount of Prepayment Fees due in the event of partial prepayments hereunder.

5. **Notices; Costs of Collection.** The Company hereby waives demand for payment, notice of nonpayment, presentment, notice of dishonor, protest, notice of protest and any other notice and diligence in collection or bringing suit, and the holder hereof may accept partial payment without discharging or releasing the Company. The Company hereby promises to pay all costs of collection when incurred, including, without limitation, reasonable attorneys' fees and expenses and court costs in case of a default in payment of this Note.

6. **Transfer of Note.** Cirillo may transfer this Note at any time on an unsecured basis only and upon such transfer, Cirillo's security interest in the Pledged Shares will be released and the certificates will be delivered by the Escrow Agent to the Company for cancellation, in accordance with the terms of the Escrow Agreement.

7. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of New York.

CIBRO TERMINALS, INC.

By: _William V. Cirillo_

    Name: William V. Cirillo
    Title: Vice President

## SCHEDULE I

Cibro Sales Corp.
Oceana Terminal Corp.
Cibro Gasoline Corp.
Cibro Petroleum/Westchester, Inc.
Cibro Petroleum/Bklyn., Inc.

Cibro Petroleum Inc.
Lanimret Terminals Inc.
Cibro Syracuse Property Corp.
Cirillo Bros. Chatterton Inc.
Cibro South Shore Terminal Corp.
C. & J. Cirillo Corp.
Cirillo Bros. Land Corp.
Winimo Realty Corp.
Forsee Realty Corp.
Blackrock Avenue Realty Corp.
Jacon Realty Inc.
Cibro Lindenhurst Property Corp.
Montauk Oil Transportation Corp.

## SCHEDULE II

CIBRO TERMINALS, INC.

| PREPAYMENT AFTER INSTALLMENT NUMBER | PREPAYMENT FEE |
|:---:|---:|
| 1 | 216,145.88 |
| 2 | 206,817.32 |
| 3 | 197,586.31 |
| 4 | 188,486.75 |
| 5 | 179,493.44 |
| 6 | 170,621.29 |
| 7 | 161,875.36 |
| 8 | 153,260.78 |
| 9 | 144,782.87 |
| 10 | 136,446.99 |
| 11 | 128,258.70 |
| 12 | 120,223.65 |
| 13 | 112,347.64 |
| 14 | 104,636.60 |
| 15 | 97,096.59 |
| 16 | 89,733.82 |
| 17 | 82,554.64 |
| 18 | 75,565.56 |
| 19 | 68,773.22 |
| 20 | 62,184.41 |
| 21 | 55,806.10 |
| 22 | 49,645.40 |
| 23 | 43,709.59 |
| 24 | 38,006.10 |
| 25 | 32,542.55 |
| 26 | 27,326.72 |
| 27 | 22,366.56 |
| 28 | 17,670.22 |
| 29 | 13,246.01 |
| 30 | 9,102.44 |
| 31 | 5,248.19 |
| 32 | 0.17 |

# Exhibit B

## STOCK PURCHASE AGREEMENT

STOCK PURCHASE AGREEMENT, dated May 29, 1987 by and among WILLIAM J. CIRILLO ("William J."), THE ESTATE OF CONSTANCE CIRILLO (the "Estate"), JACQUELYN CIRILLO ("Jacquelyn"), ROBERT CIRILLO ("Robert"), WILLIAM J. CIRILLO AND BARBARA CIRILLO AS TRUSTEES FOR JANICE R. CIRILLO ("Janice", William J., the Estate, Jacquelyn, Robert and Janice being referred to herein collectively as "Sellers" and individually, a "Seller"), WILLIAM J. as Agent for the Sellers (sometimes referred to herein as "Sellers' Agent"), BILCON ASSOCIATES, a New York Limited Partnership ("Bilcon"), the corporations listed on the annexed Schedule I (such corporations and Bilcon being referred to herein collectively as the "Buyers" and individually as a "Buyer") and CIBRO TERMINALS INC. as agent for the Buyers (sometimes referred to herein as "Buyers' Agent").

## W I T N E S S E T H

WHEREAS, each Seller is the owner of the number of shares of capital stock issued by each of the Buyers as set forth on the annexed Schedule II (all of the shares of stock owned by the Sellers being referred to herein as the "Stock"; each Buyer also being referred to herein as the "Issuer" with respect to the shares of Stock issued by it);

WHEREAS, William J. is the owner of the Bilcon Interest (as hereinafter defined);

WHEREAS, the Buyers desire to purchase and the Sellers desire to sell the Stock and the Bilcon Interest on the terms and subject to the conditions hereinafter set forth; and

WHEREAS, the Buyers and Sellers desire to enter into certain other agreements on the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

*Does not say that bankruptcy or default accelerates. But the P.N.'s presumably do.*

1. **Sale and Transfer of Stock and Other Assets.**

(a) **Transfer of Stock.** On the terms and subject to the conditions of this Agreement, each Seller shall, at the Closing (as hereinafter defined), sell, transfer and assign the shares of Stock owned by him to the Issuer thereof, and shall deliver to such Issuer certificates evidencing such shares with accompanying stock-powers duly executed. Any stock transfer taxes payable in connection with such sale shall be borne by Buyers.

(b) **Bilcon Associates.** On the terms and subject to the conditions of this Agreement, William J. shall, at the Closing (as hereinafter defined), sell, transfer and assign his entire limited partnership interest (the "Bilcon Interest") in Bilcon to Bilcon.

2. **Consideration.**

(a) **Purchase Price for Stock.** The aggregate purchase price for the Stock and the Bilcon Interest shall be $2,161,077 (the "Purchase Price"). Of the Purchase Price, $62.00 shall be payable at the Closing, with the balance payable, together with interest at the rate of seven and one-quarter (7 1/4%) percent per annum, over eight years in thirty-one consecutive (quarter) annual installments of $75,500 each and one final quarter annual installment of $679,500 (the "Installment Payments"). The first installment shall be payable on August 31, 1987.  + Nov. 30
Feb. 28
May 31

(b) **Allocation Among Buyers; Cross Guaranty.** Each of the Buyers shall pay that portion of the Purchase Price which is allocable to the shares of Stock (or, in the case of Bilcon, the Bilcon Interest) being purchased by such Buyer, as set forth on the annexed Schedule III. The obligation of each Buyer to pay its allocable share of the Purchase Price shall be guaranteed by all Buyers other than Bilcon. Such guaranty shall be in the form annexed hereto as Exhibit A (the "Guaranty").   See Sched III

(c) **Promissory Note.** The obligation of each Buyer to pay its allocable share of the Purchase Price shall be evidenced by a promissory note made by such Buyer and payable to Sellers' Agent, in substantially the form annexed hereto as Exhibit B (such promissory notes referred to collectively as the "Notes" and individually as a "Note"), provided, however, that each of the Buyers listed on the annexed Schedule IV shall pay its allocable share of the Purchase Price at the Closing and accordingly, shall not be required to execute a Note.

-2-

(d) Underline{Sale of Assets; Merger; Sale of Stock.} (i) If, at any time, the Buyers (collectively, the "Group") sell or otherwise dispose of a majority or more of the assets of the Group to any person or entity other than (x) one or more of the members of the Group, or (y) an entity, or entities controlled by shareholders of the Group (the "Permitted Assignees"), then the Buyers shall be obligated to prepay the outstanding principal balance of the Notes to the extent of 17.50% of the aggregate net cash proceeds received by the Group in consideration of such disposition of assets after the setting aside by the Group of an appropriate reserve for satisfaction of the then outstanding indebtedness of the Group, or any member thereof, to third party creditors.

(ii) If, at any time, any Buyer is merged into or consolidated with any person or entity other than a Permitted Assignee or any Buyer's stock is purchased or acquired by any person or entity other than a Permitted Assignee and, in either event, such Buyer's shareholders at any time and from time to time receive cash in consideration for their shares in the Buyer, then the Buyer shall be obligated to prepay the outstanding principal balance of the Note made by it, or, in the case of the Buyers listed on the annexed Schedule IV, one or more of the Notes made by the other Buyers, to the extent of 17.50% of the aggregate net cash proceeds received by such Buyer's shareholders at any time and from time to time in consideration of such merger or consolidation or sale or transfer of stock. In the case of the Buyers listed on the annexed Schedule IV, Buyers' Agent may allocate such proceeds among the Notes in its discretion. Such prepayments shall be made by Buyers as received by Buyers' shareholders.

3. Underline{Security.} As security for payment of the Purchase Price and for the performance of the Guaranty, each Buyer other than Bilcon, shall, at the Closing, deliver the shares of Stock such Buyer is purchasing from each Seller (the "Pledged Shares"), to the law firm of Carro, Spanbock, Kaster & Cuiffo ("Escrow Agent") to be held in pledge for the benefit of each Seller. The Escrow Agent shall hold the Pledged Shares in accordance with the terms of an escrow agreement (the "Escrow Agreement") to be executed by Buyers and Sellers at the Closing, which Escrow Agreement shall be in substantially the form annexed hereto as Exhibit C. Sellers and Buyers acknowledge that the security interest in the Pledged Shares (other than the Pledged Shares issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) shall, simultaneously with its creation, be assigned to the Banks (as hereinafter defined) and that the Banks shall retain an interest in such security interest for so long as any of the obligations (the "Obligations") of the Buyers under the Third Restructure and Amended and Restated Credit

-3-

Agreement and Guarantee dated as of December 20, 1985 (the "Credit Agreement") remain outstanding. Following the fulfillment or release of the Obligations, the Banks shall reassign their interest in the security interest to Sellers. Sellers and Buyers further acknowledge that, in the event Sellers assign one or more of the Notes, the security interest in the Pledged Shares securing such Note(s) shall terminate and the assignee(s) of such Notes shall have no interest in the Pledged Shares.

4. **Closing.** The closing of the transactions contemplated by Section 1 hereof (the "Closing") shall take place at the offices of Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the Americas, New York, New York, or at such other place as may be mutually agreed upon by Sellers and Buyers, at such time and on such date as may be mutually agreed upon by Sellers and Buyers, provided that the Closing shall take place only after (i) Congress Financial Corporation ("Congress") and (ii) Manufacturers Hanover Trust Company, Citibank, N.A., National Westminster Bank USA and The Chase Manhattan Bank, N.A. (collectively, the "Banks") have consented to the transactions contemplated by this Agreement. Such consent shall be in form acceptable to counsel for Buyers and Sellers.

5. **Additional Undertakings.**

(a) **The Williams Company.** The parties to this Agreement acknowledge that, simultaneously with the execution and delivery of this Agreement, Cibro Petroleum/Bx., Inc., William J. and The Williams Company, a New York corporation ("TWC") are entering into an agreement of even date herewith (the "TWC Agreement") in substantially the form annexed hereto as Exhibit D, and that the closing of the TWC Agreement immediately prior to the Closing shall be a condition to the Closing.

(b) **Subchapter S Election.** Buyers and William J. acknowledge that certain of the Buyers have previously authorized William J. to file revocation notices with the Internal Revenue Service which would revoke the "Subchapter S" elections made by such Buyers on December 31, 1986, and that Shareholders of such Buyers have previously delivered to William J. consents to such revocation notices. William J. represents and warrants that he has not filed with the Internal Revenue Service such revocation notices or consents, and agrees that, at the Closing, he will deliver to Buyers' Agent all such revocation notices and consents in his possession.

-4-

(c) <u>Legal Fees of Bank Counsel.</u> (i) Sellers agree to pay all legal fees and expenses of counsel to the Banks incurred in connection with obtaining the Banks' consent to this Agreement.

(ii) Buyers may pay the legal fees and expenses referred to in the preceding subparagraph and the amounts so paid may be applied or set off against the amounts due on the Notes.

6. <u>Representations and Warranties.</u>

(a) Each Seller represents and warrants to Buyers as follows:

(i) This Agreement constitutes and each other instrument required to be executed by such Seller pursuant to this Agreement will, when executed constitute the legal, valid and binding obligation of such Seller, enforceable in accordance with their respective terms. Such Seller has the full right, power, legal capacity and authority to enter into and perform this Agreement and the other instruments referred to herein, to sell and deliver to Buyers the shares of Stock held by such Seller, and, in the case of William J., the Bilcon Interest and to consummate the other transactions contemplated under this Agreement and the other instruments referred to herein. Except for existing agreements with the Banks, the execution, delivery or performance of this Agreement or the other instruments referred to herein is not prohibited by and does not violate or conflict with any agreement to which such Seller is a party or by which such Seller is bound, or any judgment, order, writ, injunction or decree of any court or governmental body.

(ii) No consent, authorization, order or approval of, or filing or registration with, any federal, state, municipal or other local governmental authority or any licensing authority is required in connection with the execution and delivery of this Agreement by such Seller or the consummation of the transactions contemplated hereby.

(iii) Such Seller is the true and lawful owner, of record and beneficially, of and has good and marketable title to the shares of Stock as set forth on Schedule II annexed hereto, free and clear of any and all liens, charges, encumbrances and claims of others of any nature except for the restrictions placed on the Stock by that certain shareholders' agreement dated Janury 1, 1974 among the Sellers, certain of the Buyers and certain other parties signatory thereto (such agreement as amended is referred to herein as the "Shareholders Agreement").

-5-

(iv) Such Seller, on his own behalf or through Sellers' Agent, has had the opportunity to review the financial, corporate, operational and other records of the Buyers, has had full access to all books, records, documents and other relevant information regarding the Buyers and has had the opportunity to ask questions of and receive answers from the officers of the Buyers regarding the business, operations and financial condition of the Buyers. Such Seller on his own behalf, or through Sellers' Agent, is fully satisfied based on his investigation and review with respect to all matters pertaining to his sale of shares of the Stock and, in the case of William J., the Bilcon Interest, and the other transactions contemplated hereby, including the Purchase Price. Without limiting the foregoing, each Seller acknowledges that the current book value for his shares of Stock as reflected in the books and records of the respective Buyers is in excess of twice the Purchase Price and that, in the opinion of the management of the respective Buyers, the fair market value for the assets of the respective Buyers, were they to be sold currently as a going concern, could be in excess of the book value for such assets.

(v) The shares of Stock, and in the case of William J., the Bilcon Interest, being sold by such Seller to the Buyers constitute all of the shares, partnership or other interests owned, of record or beneficially, by such Seller in any of the Buyers or any corporation, partnership or other entity affiliated with one or more of the Buyers, their shareholders or partners. Notwithstanding the foregoing, it is understood that Robert, Janice, Jacquelyn and the Estate may continue to hold interests in John Cirillo, Special and/or William V. Cirillo, Special.

(b) William J. represents and warrants that he has no agreements, contracts or understandings with any of the Buyers, or any corporation, partnership or other entity affiliated with one or more of the Buyers, their shareholders or partners which will survive the Closing.

(c) Each Buyer represents and warrants to Sellers as follows:

(i) Such Buyer is a corporation (or in the case of Bilcon, a limited partnership) duly organized and existing in good standing under the laws of the state of its organization.

(ii) Such Buyer has the corporate power, (or, in the case of Bilcon, the partnership power) to enter into this Agreement and, subject to the limitations contained in the New York Business Corporation Law, (or, in the

-6-

case of Cibro Petroleum, Inc. ("CPI"), the Pennsylvania Business Corporation Law (the "Pa. BCL"); and in the case of Montauk Oil Transportation Corporation ("Montauk"), the New Jersey Business Corporation Act (the "N.J. BCA")), to perform all of its obligations under this Agreement and the other instruments referred to herein. The execution and delivery by such Buyer and the consummation by it of the transactions contemplated by this Agreement and the other instruments referred to herein have been duly authorized by all necessary corporate (or in the case of Bilcon, partnership) action on its part.

(iii). This Agreement and the other instruments to be executed by such Buyer pursuant to this Agreement constitute the legal, valid and binding obligations of such Buyer and are, or will be when executed, enforceable in accordance with their terms, subject to the limitations contained in the New York Business Corporation Law (or, in the case of CPI, the Pa. BCL; and in the case of Montauk, the N.J. BCA). Such Buyer has the full right, power, legal capacity and authority to enter into this Agreement and the other instruments referred to herein, to purchase the shares of Stock issued by it, and, in the case of Bilcon, the Bilcon Interest and to consummate the other transactions contemplated under this Agreement and the other instruments referred to herein. Except for existing agreements with Congress and the Banks, the execution, delivery or performance of this Agreement or the other instruments referred to herein is not prohibited by and does not violate or conflict with any judgment, order, writ, injunction or decree of any court or governmental body or any agreement to which such Buyer is a party or by which such Buyer is bound.

(iv) No consent, authorization, order or approval of, or filing or registration with, any Federal, state, municipal or other local governmental authority or any licensing authority is required in connection with the execution and delivery of this Agreement by such Buyer or the consummation of the transactions contemplated hereby.

(d) All of the representations and warranties of the parties hereto shall survive the Closing.

7. Covenants.

(a) Noncompetition. (1) Each Seller agrees that for a period of 10 years after the date of the Closing, he or she will not, directly or indirectly, whether for his or her own account, or as an officer, director, shareholder, joint venturer, partner, employee, agent or in any other capacity whatsoever on behalf of or in conjunction with any

-7-

business, individual, partnership, firm, association or corporation:

(i) Engage in, or be connected in any manner with the ownership, management, operation, or control of any business engaged, within the Restricted Area (as hereinafter defined), in the wholesale or retail fuel oil business or the oil barge transportation business (collectively, the "Business"). As used in this Section 7(a), the term "Restricted Area" shall mean the following areas within the State of New York: the counties of Nassau, Suffolk, Queens, Kings, Bronx, New York, Richmond, and Westchester, as well as the City of Albany and all points in the State of New York situated north of a line running due east and due west of the southerly city limits of the City of Albany; or

(ii) solicit, divert, disclose, take away, interfere with, or attempt to solicit, divert, disclose, take away, or interfere with any of the Business.

Buyers acknowledge that Jacquelyn, Robert and Janice currently participate in and/or conduct the business of Coastal Petroleum New York, Inc. ("Coastal"). Notwithstanding the foregoing covenant not to compete, Jacquelyn, Robert and Janice may continue to participate in and/or conduct the business of Coastal in accordance with the terms of the Option Agreement annexed hereto as Exhibit E.

Buyers further acknowledge that William J. is a shareholder, officer and director of TWC and that TWC may, after the Closing, continue to conduct business in accordance with the terms of the TWC Agreement annexed hereto as Exhibit D, and Buyers further acknowledge that, so long as TWC is conducting business in compliance with the TWC Agreement, William J's participation in such business, in his capacities as shareholder, officer and director of TWC, will not violate the foregoing covenant not to compete.

(2) Sellers acknowledge that in the event of any Seller's actual or threatened breach of the provisions of this section, the remedy at law would be inadequate and that Buyers shall be entitled to an injunction restraining such breach immediately upon the commencement of any suit therefor by Buyers without notice, in addition to monetary damages and any other remedy provided by law. Buyers shall not request injunctive relief which would be broader in scope than the covenant not to compete contained in this Section 7(a). Buyers and Sellers agree and acknowledge that the duration, scope and geographic areas applicable to the covenant not to compete described in this Section 7(a) are fair, reasonable and necessary, and that

-8-

these obligations do not prevent Sellers from engaging in profitable business activities. If, however, for any reason any court determines that the restrictions in this Section 7(a) are not reasonable, or that Sellers have been prevented from engaging in profitable business activities, such restrictions shall be interpreted, modified or rewritten to include as much of the duration, scope and geographic area identified in this Section 7(a) as will render such restrictions valid and enforceable.

(3) In the event of a breach by Buyers of their obligations to make Installment Payments when due, and the same is continuing beyond any relevant time periods for curing such breach provided for in the Notes, the Guaranty, the Escrow Agreement or hereunder, the covenant not to compete contained in this Section 7(a) shall terminate as of the date on which all such time periods for curing the breach have elapsed.

(b) Confidentiality. (1) Sellers acknowledge that (i) in the course of the negotiation and preparation of this Agreement and the other instruments referred to herein, (ii) in their positions as shareholders of one or more of the Buyers (or, in the case of William J., as partner in Bilcon), (iii) in the case of William J., in his former capacity as a director, officer and/or employee of one or more of the Buyers, (iv) in the course of participating in litigation with one or more of the Buyers, the Buyers' shareholders, officers and directors, and (v) in the course of their long-term relationship with one or more of the Buyers, the Buyers' shareholders, officers, and directors, Sellers have become familiar with certain confidential and proprietary business information (the "Confidential Information") which is the property of the Buyers, including, without limitation:

(A) Lists, identities and relationships of all suppliers, customers, firms, co-venturers or other persons or entities with whom one or more of the Buyers does business;

(B) Financial information and data including, without limitation, information regarding the Buyers' assets, liabilities, purchases, sales, pricing, financing arrangements and other financial matters, and further including any and all financial information which Sellers shall hereafter obtain pursuant to the terms of this Agreement or any instrument referred to herein;

(C) The Buyers' business practices, procedures, methods of operation, trade secrets, ideas, plans, techniques, concepts, and discoveries;

          (D)  Past,  pending  or  threatened litigation and asserted and unasserted claims by or against one or more of the Buyers, the Buyers' shareholders, offi- cers or directors; and

          (E)  All other matters involving the products, services and business of the Buyers.

          Sellers further acknowledge that the Confidential Information is of significant value to the Buyers and that it is of vital importance to Buyers that the confidentiality of the Confidential Information be protected and preserved.

          (2)  Accordingly, Sellers agree that they shall keep secret the Confidential Information and that they shall not, directly or indirectly, now or at any time here- after, use, disseminate, disclose or otherwise divulge any of the Confidential Information in any way to any person, firm, corporation, association or other entity for any pur- pose whatsoever unless required by law to do so, and that such Confidential Information shall remain confidential and be held in trust by Sellers solely for the benefit of the Buyers, their affiliates, successors and assigns, except that Sellers may use the knowledge of the retail and whole- sale fuel oil business which they have developed in the course of their association with Buyers, for the purpose of conducting or participating in the conduct of a retail or wholesale fuel oil business for their own benefit outside the Restricted Area as such term is defined in Section 7(a) hereof.  Without limiting the foregoing, Sellers agree that they will not participate in, cooperate in or support any action at law or in equity brought by any person, firm, cor- poration, association or other entity against any Buyer or any shareholder, officer or director thereof arising out of events or omissions which occurred prior to the date of this Agreement, or otherwise provide information concerning the Buyers which would enable or aid any person, firm, corpora- tion, association or other entity to bring such an action, unless under subpoena.

          (3)  The Sellers agree that any and all memoranda, notes, plans, files, papers, documents, materi- als, records, notebooks or other tangible items of Confi- dential Information in their possession or that of their agents, including, without limitation, their legal counsel, accountants, financial or other advisors, business partners or associates, at the time of the Closing or discovered thereafter, shall be destroyed or returned to Buyers promptly after payment by Buyers of the final Installment Payment.

(4) The Sellers further agree and acknowledge that in the event of any Seller's actual or threatened breach of the provisions of this Section 7(b), the remedy at law would be inadequate and that Buyers shall be entitled to an injunction restraining such breach immediately upon the commencement of any suit therefor by Buyers without notice, in addition to monetary damages and any other remedy provided by law.

(5) In the event of a breach by Buyers of their obligations to make Installment Payments when due, and the same is continuing beyond any relevant time periods for curing such breach provided for in the Notes, the Guaranty, the Escrow Agreement or hereunder, the covenant of confidentiality contained in this Section 7(b) shall terminate as of the date on which all such time periods for curing the breach have elapsed.

(c) __Statutory Right to Petition for Dissolution.__ Each of the Buyers listed on the annexed Schedule V agrees that if, following a default under the terms of the Note made by such Buyer pursuant to Section 2(c) hereof, the Sellers reacquire, in accordance with the terms of such Note and the Escrow Agreement, less than all of the Pledged Shares issued by such Buyer, Sellers shall be deemed to have reacquired all of the Pledged Shares issued by such Buyer for the sole purpose of exercising the statutory right to petition for judicial dissolution enumerated in Section 1104-a of the Business Corporation law of the State of New York, provided, however, that this Section 7(d) shall apply only to the extent permitted by applicable law.

(d) __Stipulations of Discontinuance.__ Buyers and Sellers agree that, at Closing they will cause to be executed stipulation of discontinuance (the "Stipulations") in substantially the form annexed hereto as Exhibit K with respect to each of the actions listed on the annexed Schedule VIII. The Stipulations shall be delivered at Closing to the law firm of Carro, Spanbock, Kaster & Cuiffo, and shall be filed as soon as practicable following the Closing. Buyers and Sellers further agree to take all such further actions and prepare, execute and deliver for filing all such further instruments as may be necessary to discontinue with prejudice each of the actions listed on the annexed Schedule VIII. Without limiting the foregoing, Buyers and Sellers agree that, with respect to any action listed on the annexed Schedule VIII, the discontinuance of which requires court approval, they will prepare, execute and deliver for filing, affidavits, memoranda of settlement or other appropriate instruments necessary to obtain such court approval.

8. Conditions Precedent to Closing.

(a) Conditions to Buyers' Obligations. The obligations of the Buyers to purchase the Stock and the Bilcon Interest are subject to the fulfillment to the reasonable satisfaction of Buyers at or prior to the Closing of the following conditions:

(i) Buyers' Agent shall have received general releases executed by each of the persons or entities listed on the annexed Schedule VI and from each shareholder of the corporations listed on Schedule VI, in favor of each person or entity listed on the annexed Schedule VII, the respective shareholders, officers and directors of the corporations listed on Schedule VII, and the respective partners of the partnerships listed on Schedule VII. Such general releases, if executed by an individual shall be in the form annexed hereto as Exhibit F, and if executed by a corporation shall be in the form annexed hereto as Exhibit G.

(ii) Buyers' Agent shall have received the revocation notices and consents referred to in Section 5(b) hereof.

(b) Conditions to Sellers' Obligations. The obligations of the Sellers to sell the Stock and the Bilcon Interest is subject to the fulfillment to the reasonable satisfaction of Sellers at or prior to the Closing of the following conditions:

(i) Sellers' Agent shall have received general releases executed by each of the persons or entities listed on the annexed Schedule VII, from each shareholder of the corporations listed on Schedule VII and from each partner of the partnerships listed on Schedule VII, in favor of each person or entity listed on the annexed Schedule VI and the respective shareholders, officers and directors of the corporations listed on Schedule VI. Such general releases, if executed by an individual shall be in the form annexed hereto as Exhibit H, if executed by a corporation, shall be in the form annexed hereto as Exhibit I, and if executed by a partnership, shall be in the form annexed hereto as Exhibit J.

(ii) Sellers' Agent shall have received all instruments and payments described in Sections 1, 2 and 3 hereof to be delivered at the Closing.

(iii) Seller's Agent shall have received from each shareholder of each Buyer which is a party to the Shareholder's Agreement, a waiver of all rights conferred

upon them by the Shareholders' Agreement with respect to the sale of the Stock and the other transactions contemplated hereby.

(c) **Coastal Agreement.** It shall be a condition to the Closing that Coastal have executed an option agreement in substantially the form annexed hereto as Exhibit E, pursuant to which Coastal shall grant to Cibro Petroleum/Bx., Inc. an option to purchase substantially all of the assets of Coastal.

(d) **Bank Consents.** It shall be a condition to the Closing that Buyers shall have received the consents to the transactions contemplated hereby of (i) the Banks and (ii) Congress, such consents to be in form acceptable to counsel for Buyers and Sellers.

(e) **Escrow.** It shall be a condition to the Closing that Buyers, Sellers and Escrow Agent shall have entered into the Escrow Agreement in substantially the form annexed hereto as Exhibit C, and that the Pledged Shares shall have been delivered to the Escrow Agent, pursuant to the provisions of Section 3 hereof.

(f) **Stipulations of Discontinuance.** It shall be a condition to the Closing that the Stipulations shall have been signed by Counsel to Buyers and Sellers. Such Stipulations shall be delivered to the law firm of Carro, Spanbock, Kaster & Cuiffo.

9. **Waiver of Provisions of Shareholders' Agreement.** Buyers and Sellers waive all of the rights conferred upon them by the Shareholders Agreement.

10. **Sellers' Agent.** (a) Jacquelyn, Robert, Janice and the Estate appoint William J. to act and William J. agrees to serve as their agent ("Sellers' Agent") with respect to this Agreement, including, without limitation, for the purposes of giving and receiving notices and executing certificates required under this Agreement, and receiving the Installment Payments. Additionally, Jacquelyn, Robert, Janice and the Estate appoint William J. to act and William J. agrees to serve as their purchaser representative for the purpose of evaluating the transactions contemplated hereby, including, without limitation, conducting the review of records and making the inquiries described in Section 6(a)(iv) hereof. Jacquelyn, Robert, Janice, the Estate and William J. acknowledge that William J. has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the transactions contemplated hereby.

-13-

(b)  In the event of the death or incapacity of Wiliam J., Barbara A. Cirillo shall serve as Seller's Agent.  Seller's Agent may at any time resign and appoint a successor agent by the giving of notice to Buyer's Agent in conformity with Paragraph 12.

11.  Buyers' Agent.  Each of the Buyers appoints Cibro Terminals Inc. to act as its agent with respect to this Agreement, including, without limitation, for the purposes of giving and receiving notices and executing certificates required under this Agreement, and making the Installment Payments.

12.  Notices.  All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, given by prepaid telegram, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Sellers' Agent to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

With a copy to:

LaPenna and Tuckman
271 North Avenue
New Rochelle, New York 10801
Attn: Michael LaPenna, Esq. or
      Warren Gould, Esq.

If to Buyers' Agent, to:

Cibro Terminals Inc.
1066 Zerega Avenue
Bronx, New York 10462
Attn:  P. James Massa, President

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn:  Marshall N. Lester, Esq.

The persons and addresses to which mailing must be made may be changed from time to time by a notice given in the same manner.  All notices shall be deemed to have been given as of the date of personal delivery or transmittal of the telegram or as of the date three days after mailing thereof.

13. **Further Assurances.** Sellers will, at any time, execute and deliver to Buyers such other instruments and take such other steps as may reasonably be requested by Buyers to effectively convey, transfer and vest in Buyers full and complete ownership of the Stock and the Bilcon Interest and to otherwise ensure compliance with all of the terms and provisions of this Agreement.

14. **Expenses.** Each of the parties hereto shall pay the fees and expenses of their respective counsel, accountants and other experts, and all other expenses incurred by such party incident to the negotiation, preparation and execution of this Agreement.

15. **Entire Agreement.** This Agreement and the Schedules and Exhibits annexed hereto set forth the entire understanding and agreement between the parties hereto with reference to the subject matter hereof and supercede any and all other agreements, understandings and representations heretofore made with respect to the subject matter hereof. This Agreement may not be modified, amended or terminated nor may any term be waived except by a written instrument executed by all parties.

16. **Benefits.** This Agreement shall bind and inure solely to the benefit of the parties hereto and their respective heirs, personal representatives, executors, representatives and successors and shall not inure to the benefit of any third party.

17. **Severability.** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

18. **Governing Law.** This Agreement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the laws of the State of New York.

19. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20. **Captions.** The section headings contained in this Agreement are for reference purposes only and shall not

affect in any way the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day first above written.

SELLERS:

_____
William J. Cirillo

_____
William J. Cirillo, Executor of the Estate of Constance Cirillo

_____
Jacquelyn Cirillo Roeckle

_____
Robert Cirillo

_____
Janice R. Cirillo

_____
William J. Cirillo, Trustee f/b/o Janice R. Cirillo

_____
Barbara A. Cirillo, Trustee f/b/o Janice R. Cirillo

-16-

**BUYERS**

C. & J. CIRILLO CORP.
CIBRO GASOLINE CORP.
CIBRO PETROLEUM/BRKLYN., INC.
CIBRO PETROLEUM/BX., INC.
CIBRO PETROLEUM INC.
CIBRO PETROLEUM/L.I., INC.
CIBRO PETROLEUM/WESTCHESTER, INC.
CIBRO SALES CORP.
CIBRO SOUTH SHORE TERMINAL CORP.
CIBRO SYRACUSE PROPERTY, CORP.
CIBRO TERMINALS, INC.
CIRILLO BROS. CHATTERTON, INC.
CIRILLO BROS. LAND CORP.
FORSEE REALTY CORP.
LANIMRET TERMINAL INC.
OCEANA TERMINAL CORP.
WINIMO REALTY CORP.

By: _William V. Cirillo_
    William V. Cirillo, Vice
    President of each of the
    above-named corporations.


BLACKROCK AVENUE REALTY CORP.
CIBRO LINDENHURST PROPERTY CORP.
WATSON AVENUE REALTY INC.
JACON REALTY INC.

By: _William V. Cirillo_
    William V. Cirillo, President
    of each of the above-named
    corporations


MONTAUK OIL TRANSPORTATION CORP.

By: _William V. Cirillo_
    William V. Cirillo,
    Vice President


BILCON ASSOCIATES

By: Cibro-700 Transportation
    Corporation, General Partner

By: _____
    Vincent Bippa, Vice President


-17-

## LIST OF SCHEDULES

Schedule I        -    List of Cibro Corporations party to Stock Purchase Agreement.

Schedule II       -    List of shares owned by Sellers.

Schedule III      -    Purchase Price to be paid by each Cibro Corporation and Bilcon.

Schedule IV       -    List of Cibro Corporations who will pay their allocable shares of Purchase Price at Closing.

Schedule V        -    List of Buyers granting Sellers statutory right to petition for dissolution.

Schedule VI       -    List of Sellers and related persons or entities to execute and receive general releases.

Schedule VII      -    List of Buyers and related persons or entities to execute and receive general releases.

Schedule VIII     -    List of actions to be discontinued.

## LIST OF EXHIBITS

Exhibit A    -    Form of Guaranty

Exhibit B    -    Form of Promissory Note

Exhibit C    -    Form of Escrow Agreement

Exhibit D    -    Form of Agreement among Buyers, William J. and TWC

Exhibit E    -    Form of Option Agreement

Exhibit F    -    Form of General Release to be executed by Sellers and related individuals.

Exhibit G    -    Form of General Release to be executed by corporations associated with Sellers.

Exhibit H    -    Form of General Release to be executed by shareholders or partners of Buyers and related individuals.

Exhibit I    -    Form of General Release to be executed by Buyers and associated corporations.

Exhibit J    -    Form of General Release to be executed by Bilcon and other partnerships associated with Buyers.

Exhibit K    -    Form of Stipulation of Discontinuance.

## SCHEDULE I

Blackrock Avenue Realty Corp.
C.&J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

## SCHEDULE II

| Corporation | William J. Cirillo | Estate of Constance Cirillo | Jacquelyn Cirillo Roeckle | Robert Cirillo | William J. & Barbara Cirillo as Trustees for Janice R. Cirillo |
|---|---|---|---|---|---|
| Blackrock Avenue Realty Corp. | 20 | – | – | – | – |
| C.&.J. Cirillo Corp. | 166.667 | – | – | – | – |
| Cibro Gasoline Corp. | 4 | – | – | – | – |
| Cibro Lindenhurst Property Corp. | – | 5 | 5 | 5 | 5 |
| Cibro Petroleum/ Bklyn., Inc. | 34.82735 | 5.56 | 5.56 | 5.56 | 5.56 |
| Cibro Petroleum/ Bx., Inc. | 136.633 | – | – | – | – |
| Cibro Petroleum, Inc. | – | 1 | 1 | 1 | 1 |
| Cibro Petroleum/ L.I., Inc. | – | 5 | 5 | 5 | 5 |
| Cibro Petroleum/ Westchester, Inc. | – | 5 | 5 | 5 | 5 |
| Cibro Sales Corp. | 15 | – | – | – | – |
| Cibro South Shore Terminal Corp. | – | 5 | 5 | 5 | 5 |
| Cibro Syracuse Property, Corp. | 20 | – | – | – | – |
| Cibro Terminals, Inc. | 217.14615 | 4.27154 | 4.27154 | 4.27154 | 4.27154 |
| Cirillo Bros. Chatterton, Inc. | 20 | – | – | – | – |
| Cirillo Bros. Land Corp. | 333.334 | – | – | – | – |

| | | | | | |
|---|---|---|---|---|---|
| Forsee Realty Corp. | 254.667 | 3 | 3 | 3 | 3 |
| Jacon Realty Inc. | 15 | - | - | - | - |
| Lanimret Terminal Inc. | 4 | - | - | - | - |
| Montauk Oil Transportation Corp. | 60.02853 | 5.82642 | 5.82642 | 5.82642 | 5.82642 |
| Oceana Terminal Corp. | 15 | - | - | - | - |
| Watson Avenue Realty Inc. | 20 | - | - | - | - |
| Winimo Realty Corp. | 37.5315 | - | - | - | - |

| Corporation | Purchase Price Allocable To Each Buyer |
|---|---|
| Bilcon Associates | $2 |
| Blackrock Avenue Realty Corp. | $7,246 |
| C.&J. Cirillo Corp. | $22,975 |
| Cibro Gasoline Corp. | $21,938 |
| Cibro Lindenhurst Property Corp. | $975 |
| Cibro Petroleum/Bx., Inc. | $20 |
| Cibro Petroleum/Bklyn., Inc. | $131,979 |
| Cibro Petroleum Inc. | $74,885 |
| Cibro Petroleum/L.I., Inc. | $20 |
| Cibro Petroleum/Westchester, Inc. | $87,929 |
| Cibro Sales Corp. | $70,230 |
| Cibro South Shore Terminal Corp. | $43,460 |
| ▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓ 42,749 |
| Cibro Terminals ▓▓▓▓▓ | ▓▓▓▓,▓▓▓ 1,438,312 |
| Cirillo Bros. Chatterton, Inc. | $9,249 |
| Cirillo Bros. Land Corp. | $18,578 |
| Forsee Realty Corp. | $21,098 |
| Jacon Realty Inc. | $14,032 |
| ▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓ 16,779 |
| Montauk Oil Transportation Corp. | $26,937 |
| ▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓ 72,137 |
| Watson Avenue Realty Inc. | $20 |
| ▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓ 39,527 |

*Sold*

▓▓▓▓▓▓▓▓▓

*Leased to Rathmadison*

### Buyers Paying Allocable Share of Purchase Price At Closing

Bilcon Associates

Cibro Petroleum/Bx., Inc.

Cibro Petroleum/L.I., Inc.

Watson Avenue Realty Inc.

### List of Buyers Granting To Sellers Statutory Right to Petition for Dissolution - Section 7(d)

Blackrock Avenue Realty Corp.

Cibro Gasoline Corp.

Cibro Lindenhurst Property Corp.

Cibro Petroleum Inc.

Cibro Petroleum/L.I., Inc.

Cibro Petroleum/Westchester, Inc.

Cibro South Shore Terminal Corp.

Cibro Syracuse Property, Corp.

Cirillo Bros. Chatterton, Inc.

Lanimret Terminal Inc.

Watson Avenue Realty Inc.

## SCHEDULE VI

William J. Cirillo

Janice D. Cirillo

William J. Cirillo and Barbara A. Cirillo as
  Trustees for Janice D. Cirillo

Estate of Constance Cirillo, William J. Cirillo
  as Executor

Robert Cirillo

Jacquelyn Cirillo Roeckle

John Marchetti

Albert Gregory

The Williams Company

Petroleum Marketers Inc.

Bilcon Associates
Blackrock Avenue Realty Corp.
C.&J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.
Theall Road Realty Corp.
Rye Land Associates

Cibro Petroleum Products, Inc.

Cibro Bethlehem Land Corp.
William V. Cirillo, Special
John Cirillo, Special

Nicholas W. Cirillo

John Cirillo

William V. Cirillo

Maria D. Cirillo

Joan J. Cirillo

Diana C. Cirillo

Patricia N. Cirillo

Peter Cirillo

Frank Cirillo

Donna Maria Wright

Gregory P. Cirillo

Nicholas W. Cirillo, Jr.

Paul C. Cirillo

William V. Cirillo and Marguerite DiIorio as
  Trustees f/b/o Jennifer M. Cirillo

William V. Cirillo and Marguerite DiIorio as
  Trustees f/b/o Ann Marie Cirillo

Angelina Cirillo

Nancy Cirillo

P. James Massa

# SCHEDULE VIII

## List of actions to be discontinued

(1) SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

WILLIAM J. CIRILLO, individually and
as trustee for Janice D. Cirillo and
Robert Cirillo,

Index No. 00429/84

                              Plaintiff,

        -against-

FRANK CIRILLO, JOHN CIRILLO,
NICHOLAS W. CIRILLO, THEALL ROAD
REALTY CORP., RYE LAND ASSOCIATES,
BILCON ASSOCIATES, RAIN ASSOCIATES,
CIBRO PETROLEUM PRODUCTS, INC.,
CIBRO PETROLEUM/BRONX, INC., OCEANA
TERMINAL CORP., CIBRO SALES CORP.,
MONTAUK OIL TRANSPORTATION CORP.,
C&J REALTY CORP., CIRILLO BROS. LAND
CORP., WINIMO REALTY CORP., CIBRO
TERMINALS, INC., CIBRO SOUTH SHORE
TERMINAL CORP., LANIMRET TERMINAL, INC.,
CIBRO PETROLEUM/BROOKLYN, INC.,
CIBRO PETROLEUM/LONG ISLAND, INC.,
CIRILLO   BROS. CHATTERTON, INC.,
ZEREGA TRUCKING, INC., CIRILLO BROS.
TRANSPORT CORP., CIBRO GASOLINE CORP.,
FORSEE REALTY CORP., CIBRO SYRACUSE
PROPERTY CORP., CIBRO PETROLEUM, INC.,
JACON REALTY CORP., WATSON AVENUE
REALTY CORP., BLACKROCK AVENUE REALTY
CORP., CIBRO FORT ORANGE, INC., CIBRO
LINDENHURST PROPERTY CORP., WILLIAM V.
CIRILLO, SPECIAL, JOHN CIRILLO,
SPECIAL and CIBRO PETROLEUM/WESTCHESTER,
INC.,

                              Defendants.

(2) SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

WILLIAM J. CIRILLO, individually and
as trustee for Janice D. Cirillo and
Robert Cirillo, JACQUELYN CIRILLO
ROECKLE, and CONSTANCE CIRILLO,

Index No. 00497/84

                                    Plaintiffs,

              -against-

JOHN CIRILLO, NICHOLAS W. CIRILLO,
PETER CIRILLO, WILLIAM V. CIRILLO,
P. JAMES MASSA, CIBRO TERMINALS,
INC., OCEANA TERMINAL CORP., C&J
CIRILLO CORP., WINIMO REALTY CORP.,
CIRILLO BROS. CHATTERTON, INC.,
CIBRO PETROLEUM/BX., INC., CIRILLO
BROS. LAND CORP., CIBRO PETROLEUM/
BKLYN., INC., CIBRO PETROLEUM PRODUCTS,
INC., CIBRO SALES CORP., FORSEE REALTY
CORP., LANIMRET TERMINAL, INC., CIBRO
SYRACUSE PROPERTY CORP., CIBRO GASOLINE
CORP., CIBRO PETROLEUM/WESTCHESTER,
INC., CIBRO PETROLEUM/L.I., INC.,
CIBRO SOUTH SHORE TERMINAL CORP.,
CIBRO STEAMSHIP CORP., CIBRO BETHLEHEM
LAND CORP., MONTAUK OIL TRANSPORTATION
CORP., CIBRO LINDENHURST PROPERTY
CORP., WATSON AVENUE REALTY CORP.,
BLACKROCK AVENUE REALTY CORP., CIBRO
PETROLEUM, INC., and JACON REALTY
CORP.,

                                    Defendants.

(3) SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

CIBRO PETROLEUM/BX., INC., CIBRO          Index No. 14118/85
PETROLEUM/BKLYN., INC. and CIBRO
PETROLEUM/L.I., INC.,

                              Plaintiffs,

          -against-

THE WILLIAMS COMPANY, PETROLEUM
MARKETERS INC., WILLIAM J. CIRILLO,
JOHN MARCHETTI and ALBERT GREGORY,

                              Defendants.


(4) SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

WILLIAM J. CIRILLO, WILLIAM J. CIRILLO     Index No. 14666/86
and BARBARA A. CIRILLO as Trustees for
JANICE CIRILLO, JACQUELYN ROECKLE,
ROBERT N. CIRILLO, and WILLIAM J.
CIRILLO as Executor of the Estate of
CONSTANCE CIRILLO,

                              Plaintiffs,

          -against-

CIBRO SOUTH SHORE TERMINAL CORP., CIBRO
LINDENHURST PROPERTY CORP., CIBRO
PETROLEUM/WESTCHESTER, INC., CIBRO
PETROLEUM/BKLYN., INC., CIBRO PETROLEUM/
L.I., INC., CIBRO PETROLEUM INC.,
CIBRO TERMINALS, INC., FORSEE REALTY CORP.,
CIBRO SYRACUSE PROPERTY CORP., C&J
CIRILLO CORP., CIRILLO BROS. CHATTERTON,
INC., CIRILLO BROS. LAND CORP., CIBRO
GASOLINE CORP., CIBRO PETROLEUM/BX., INC.,
CIBRO SALES CORP., LANIMRET TERMINAL
INC., OCEANA TERMINAL CORP., WINIMO
REALTY CORP., WATSON AVENUE REALTY, INC.,
BLACKROCK AVENUE REALTY CORP., JACON
REALTY, INC., MONTAUK OIL TRANSPORTATION
CORP., ZEREGA TRUCKING, INC. and CIRILLO
BROS. TRANSPORTATION, INC.,

                              Respondents.

                    -3-

## GUARANTY

GUARANTY, dated as of _____, 1987 among the corporations listed on the annexed Schedule I (collectively, the "Guarantors") in favor of William J. Cirillo ("Cirillo") as agent for himself, William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo, the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively, the "Sellers").

### W I T N E S S E T H

WHEREAS, pursuant to the terms of that certain Stock Purchase Agreement dated May 29, 1987 by and among the Sellers, the Guarantors and certain other parties signatory thereto (capitalized terms unless otherwise defined shall have the meaning set forth in such Stock Purchase Agreement), the Sellers are selling the Stock to the Guarantors and receiving promissory notes (the "Notes") from certain of the Guarantors as partial payment for the Stock;

WHEREAS, in connection with the purchase and sale of the Stock, including the shares of Stock issued by the Guarantors, the Sellers desire that the Guarantors guarantee payment of the Notes when due, and

WHEREAS, the Guarantors have determined that it is in their best interests to guarantee payment of the Notes when due.

NOW, THEREFORE, the parties hereby agree as follows:

1. **Guarantee.** Each of the Guarantors hereby guarantees the full and prompt payment of the principal of and interest on the Notes and each installment thereof, as and when the same shall be due and payable, whether in accordance with the stated schedule of payments, by reason of acceleration or otherwise.

2. **Joint Liability.** This Guaranty may be enforced against any one of the Guarantors separately or against any or all Guarantors jointly.

3. **Security.** In order to secure the performance of the Guarantors in accordance with the terms of this Guaranty, each Guarantor hereby grants to Cirillo a security interest in the shares of Stock issued by it (the "Pledged

Stock") as set forth on the annexed Schedule II and, as of the date hereof, delivers stock certificates representing such shares to the Escrow Agent to be held in escrow in accordance with the terms of that certain Escrow Agreement of even date herewith among certain parties including Cirillo, the Guarantors and the Escrow Agent. Such pledge shall create a valid perfected security interest in the Pledged Stock in favor of Cirillo, and Cirillo shall be entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York with respect to the Pledged Stock. The security interest in the Pledged Stock (other than the Pledged Stock issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) is simultaneously being assigned to the Banks.

4. **Guarantor's Merger, Sale of Stock.** In the event a Guarantor is merged into or consolidated with any person or entity or in the event the stock of a Guarantor is acquired by a non-affiliated person or entity, such Guarantor's obligations under this Guaranty shall terminate and the security interest created hereby shall terminate with respect to the shares of Pledged Stock issued by such Guarantor.

5. **Term of Guaranty.** Subject to the provisions of Section 4 hereof, this Guaranty shall remain in full force and effect until each of the Notes has been paid in full, whether by the maker thereof or the Guarantors.

6. **Assignment.** In the event that Cirillo assigns one or more of the Notes, the rights of the Sellers hereunder shall be deemed to be assigned with respect to such Note(s) on an unsecured basis only and the assignee(s) of such Note(s) and of such rights hereunder will have no security interest or other right, interest or claim to the Pledged Stock.

7. **Extension of Time.** The Guarantors' liability hereunder shall not be affected by reason of any extension of time for payment of any installment granted by Sellers to one or more of the makers of the Notes.

8. **Waiver.** The Guarantors hereby waive notice of acceptance, non-performance, presentment, dishonor, protest, or default and any other notice and diligence in collection or bringing suit and the holder of the notes may accept partial payment without discharging the Guarantors from their obligations hereunder.

9. **Subrogation.** Until the Notes are paid in full, the Guarantors shall not enforce their rights of sub-rogation or otherwise become entitled to any payment by the

-2-

makers of the Notes or to any property of the makers of the Notes by virtue of any payment or performance by the Guarantors hereunder.

10. **Notices.** All notices, demands or other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Cirillo, or the Sellers, to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

with a copy to:

La Penna and Tuckman
271 North Avenue
New Rochelle, New York 10801
Attn: Michael La Penna, Esq. or
        Warren Gould, Esq.

If to Guarantors, to:

Cibro Terminals Inc.
1066 Zerega Avenue
Bronx, New York 10462
Attn: P. James Massa, President

with a copy to:

Carro, Spanbock, Raster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

11. **Governing Law.** This Guaranty shall be governed by and construed in accordance with the laws of the State of New York.

12. **Counterparts.** This Guaranty may be executed in any number of counterparts, each of which shall be deemed

an original, and all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Guaranty as of the date first above written.

C. & J. CIRILLO CORP.
CIBRO GASOLINE CORP.
CIBRO PETROLEUM/BKLYN., INC.
CIBRO PETROLEUM/BX., INC.
CIBRO PETROLEUM INC.
CIBRO PETROLEUM/L.I., INC.
CIBRO PETROLEUM/WESTCHESTER, INC.
CIBRO SALES CORP.
CIBRO SOUTH SHORE TERMINAL CORP.
CIBRO SYRACUSE PROPERTY, CORP.
CIBRO TERMINALS, INC.
CIRILLO BROS. CHATTERTON, INC.
CIRILLO BROS. LAND CORP.
FORSEE REALTY CORP.
LANIMRET TERMINAL INC.
OCEANA TERMINAL CORP.
WINIMO REALTY CORP.

By:_____
    William V. Cirillo, Vice
    President of each of the
    above-named corporations.

BLACKROCK AVENUE REALTY CORP.
CIBRO LINDENHURST PROPERTY CORP.
WATSON AVENUE REALTY INC.
JACON REALTY INC.

By:_____
    William V. Cirillo, President
    of each of the above-named
    corporations

MONTAUK OIL TRANSPORTATION CORP.

By:_____
    William V. Cirillo,
    Vice President

-4-

SCHEDULE I

Blackrock Avenue Realty Corp.
C. & J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

SCHEDULE II

| Name of Corporation | Number of Pledged Shares |
|---|---|
| Blackrock Avenue Realty Corp. | 20 |
| C. & J. Cirillo Corp. | 166.67 |
| Cibro Gasoline Corp. | 4 |
| Cibro Lindenhurst Property Corp. | 20 |
| Cibro Petroleum/Bklyn., Inc. | 57.06735 |
| Cibro Petroleum/Bx., Inc. | 136.633 |
| Cibro Petroleum Inc. | 4 |
| Cibro Petroleum/L.I., Inc. | 20 |
| Cibro Petroleum/Westchester, Inc. | 20 |
| Cibro Sales Corp. | 15 |
| Cibro South Shore Terminal Corp. | 20 |
| Cibro Syracuse Property, Corp. | 20 |
| Cibro Terminals, Inc. | 234.23231 |
| Cirillo Bros. Chatterton, Inc. | 20 |
| Cirillo Bros. Land Corp. | 333.334 |
| Forsee Realty Corp. | 266.667 |
| Jacon Realty Inc. | 15 |
| Lanimret Terminal Inc. | 4 |
| Montauk Oil Transportation Corp. | 83.33421 |
| Oceana Terminal Corp. | 15 |
| Watson Avenue Realty Inc. | 20 |
| Winimo Realty Corp. | 37.5315 |

SECURED NOTE

$_____                                   May 29, 1987

     FOR VALUE RECEIVED, [Insert corporation], a
_____ corporation (the "Company"), DOES HEREBY PRO-
MISE to pay to William J. Cirillo ("Cirillo"), as agent for
himself, Janice Cirillo, the Estate of Constance Cirillo,
Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively,
the "Sellers"), at 701 South Columbus Avenue, Mt. Vernon,
New York 10550, or at such other address as may be desig-
nated in writing by Cirillo, the principal sum of
($_____), together with interest at the rate of seven
and one-quarter (7 1/4%) per cent per annum, in lawful money
of the United States of America, such principal and interest
to be payable in thirty-one consecutive quarter annual in-
stallments of $_____ each, such Installments to be payable
on August 31, November 30, February 28 and May 31 of each
year commencing August 31, 1987 and one final installment of
$_____, to be payable on May 31, 1995 (the thirty-one
quarter annual installments and the final installment being
referred to herein, collectively, as the "Installments" or,
individually, as an "Installment").

     1. <u>Security</u>.  In order to secure the payment of
this Note, the Company hereby grants to Cirillo a security
interest in _____ shares of its capital stock (the "Pledged
Stock") and, as of the date hereof, delivers stock certifi-
cates (the "Certificates") representing such shares to
Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the
Americas, New York, New York 10105 as escrow agent (the
"Escrow Agent") to be held in escrow in accordance with the
terms of that certain Escrow Agreement of even date herewith
among certain parties including Cirillo, the Company and the
Escrow Agent.  Such pledge shall create a valid perfected
first security interest in the Pledged Stock in favor of
Cirillo, and Cirillo shall be entitled to all the rights and
remedies of a secured party under the Uniform Commercial
Code of the State of New York with respect to the Pledged
Stock.  Said security interest is simultaneously being
assigned to Manufacturers Hanover Trust Company ("MHT"), in-
dividually, and as agent for Citibank, N.A. ("Citibank"),
National Westminster Bank USA ("NatWest") and The Chase
Manhattan Bank, N.A. ("Chase") pursuant to and in accordance
with the terms of that certain Letter Agreement dated May
29, 1987 among Sellers, Escrow Agent and MHT as agent for
itself, Citibank, NatWest and Chase.

2. <u>Default</u>.  If one or more of the following events shall have occurred:

(a)  The Company defaults in the payment of any Installment, or

(b)  The combined net worth of the Company and each of the other corporations (the "Other Corporations") listed on the attached Schedule I falls below an amount that is equal to 300% of the aggregate outstanding principal balance of this note and notes of even date herewith made by the Other Corporations in favor of Cirillo, or

(c)  The Company's "principal lender" declares a default and makes formal written demand for payment pursuant to the terms of such lender's agreement with the Company, and the period of times, if any, for curing such default shall have expired.  As used herein "principal lender" shall mean (i) an individual lender or any consortium of lenders with outstanding loans in favor of the Company together with the Other Corporations of $10,000,000 or more and (ii) MHT individually, and as agent for Citibank, NatWest and Chase (the "Banks") in connection with loans made by them pursuant to that certain Third Restructure and Amended and Restated Credit Agreement and Guarantee dated as of December 20, 1985 among the Banks and the Company and/or certain of the Other Corporations;

then Cirillo may, by written notice to the Company, declare a default, and the Company shall have five days from receipt of such notice to cure the default, or the entire outstanding principal balance of this Note, together with all interest accrued hereon shall become immediately due and payable.  In the event of a default under the agreement referred to in subsection (c)(ii) of this paragraph with the Banks, payments on this Note and notes of even date herewith made by the Other Corporations in favor of Cirillo shall be suspended until such default has been cured or waived.

3. <u>Financial Statements</u>.  The Company shall during the term of this Note deliver to Cirillo copies of the Company's unaudited statement of finances covering the first six months of each fiscal year and its annual audited statement of finances, such statements to be delivered as and when available.

4. <u>Prepayment</u>.  The Company may, at any time, prepay any Installment, in whole or in part.  In the event of a prepayment, whether voluntary, by reason of default and acceleration, or otherwise, the Company shall, at the time

of such prepayment, be required to simultaneously pay to Cirillo a prepayment fee ("Prepayment Fee"). In the event that the entire principal amount hereof is prepaid on or before the date in which the initial Installment is due, the Prepayment Fee shall be $ _____. The Prepayment Fee applicable for subsequent Installments shall be as set forth on Schedule II hereof. There shall be an equitable adjustment in the amount of Prepayment Fees due in the event of partial prepayments hereunder.

5. **Notices; Costs of Collection.** The Company hereby waives demand for payment, notice of nonpayment, presentment, notice of dishonor, protest, notice of protest and any other notice and diligence in collection or bringing suit, and the holder hereof may accept partial payment without discharging or releasing the Company. The Company hereby promises to pay all costs of collection when incurred, including, without limitation, reasonable attorneys' fees and expenses and court costs in case of a default in payment of this Note.

6. **Transfer of Note.** Cirillo may transfer this Note at any time on an unsecured basis only and upon such transfer, Cirillo's security interest in the Pledged Shares will be released and the certificates will be delivered by the Escrow Agent to the Company for cancellation, in accordance with the terms of the Escrow Agreement.

7. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of New York.

[COMPANY]

By: _____

Name: 
Title:

-3-

Exhibit·C

## ESCROW AGREEMENT

ESCROW AGREEMENT (the "Escrow Agreement") made as of the _____ day of _____, 19__, by and among the corporations listed on the annexed Schedule I ("Buyers"), CIBRO TERMINALS INC. as agent for the Buyers (sometimes referred to as "Buyers' Agent"), THE ESTATE OF CONSTANCE CIRILLO, JACQUELYN CIRILLO, ROBERT CIRILLO, WILLIAM J. CIRILLO AND BARBARA CIRILLO AS TRUSTEES FOR JANICE R. CIRILLO and WILLIAM J. CIRILLO, individually ("Sellers") and as agent for the Sellers (in such capacity, referred to as "Sellers' Agent"), and Carro, Spanbock, Kaster & Cuiffo (the "Escrow Agent").

WHEREAS, pursuant to that certain Stock Purchase Agreement (the "Purchase Agreement") of even date herewith by and among Buyers, Sellers and certain other parties signatory thereto, Buyers are purchasing from Sellers the Stock (as defined in the Purchase Agreement);

WHEREAS, pursuant to the Purchase Agreement, certain of the Buyers are executing promissory notes (the "Notes"; each Buyer also being referred to herein as a "Maker" with respect to the Note executed by it) payable to Sellers' Agent in the aggregate principal amount of $2,161,015;

WHEREAS, pursuant to the Purchase Agreement and a certain Guaranty (the "Guaranty") of even date herewith each of the Buyers has guaranteed payment when due of each of the Notes (each Buyer being referred to herein as a "Guarantor" with respect to such obligations under the Guaranty);

WHEREAS, pursuant to the Purchase Agreement and the Guaranty, Buyers are to deposit the Stock in escrow as collateral security to secure the payment of the Notes and the performance of the Guaranty; and

WHEREAS, Sellers and Buyers desire that the Stock be held in escrow by the Escrow Agent on the terms and conditions set forth herein;

NOW, THEREFORE, the parties hereto hereby agree as follows:

1. Escrow Agent. Sellers and Buyers hereby appoint the law firm of Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the Americas, counsel for Buyers, New York, New York 10105 as the Escrow Agent for the purposes set forth herein and the Escrow Agent hereby accepts such appointment.

**2. Deposit of Shares.** Each Buyer hereby pledges to Sellers' Agent as collateral security for the payment of such Buyer's Note, if any, and its payment obligations under the Guaranty, the number of shares of such Buyer's capital stock listed on said Schedule I. Each Buyer hereby delivers to the Escrow Agent to hold for the benefit of Sellers' Agent, the stock certificates listed on the annexed Schedule I evidencing such shares together with duly executed stock powers endorsed in blank by each Buyer.

**3. Default.** If, at any time, payments of any installment of principal and/or interest under any one or more of the Notes shall not have been made in full when due, whether in accordance with its stated payment schedule, by reason of acceleration or otherwise, by the Maker(s) thereof and the time to cure such failure to make payment shall have expired and payment is not made within 10 days thereafter by one or more of the Guarantors Sellers' Agent shall have the right to have all the shares of Stock then held by the Escrow Agent delivered to him. The Escrow Agent shall, 10 days after receipt of a written demand by Sellers' Agent, together with evidence that a copy of the demand had been given to Buyers' Agent, deliver to Sellers' Agent the shares of Stock then held by the Escrow Agent, provided, however, that if, during such 10 day period, Buyers' Agent notifies the Escrow Agent in writing to withhold delivery of such shares of Stock, then the Escrow Agent shall not deliver such shares of Stock until the controversy is settled either by an agreement between Buyers and Sellers, or by a final judgment of a court of competent jurisdiction.

**4. Release of Shares from Escrow.** Subject to the provisions of Section 3 hereof, the Escrow Agent shall, not less than 45 days following each of the first seven anniversary dates of this Escrow Agreement, release to each Buyer 10% of the shares of Stock delivered into escrow by such Buyer, with the balance of the shares of stock to be released to the respective Buyers not less than 45 days following the eighth anniversary date of this Escrow Agreement. If the final Installment Payment (as defined in the Notes) on a Note is made by certified or bank check, the balance of the shares of stock to be released to the respective Buyer may be released immediately upon delivery to Sellers' Agent of such certified or bank check. Certificates evidencing the Stock so released shall be cancelled immediately upon receipt by Buyers and evidence that the certificates have been released shall be forwarded promptly to the Banks' Agent (as hereinafter defined).

**5. Termination of Escrow.** The escrow under this Escrow Agreement shall terminate upon delivery of all of the shares of Stock held by Escrow Agent in accordance with the provisions of this Escrow Agreement.

-2-

6. **Stockholders' Rights.** Provided the shares of Stock have not been released to Sellers' Agent in accordance with the provisions of Section 3 hereof, all rights in connection with or incident to the ownership of such shares of Stock shall be vested solely in the Buyers.

7. **Duties and Liabilities Limited.** The Escrow Agent is not a party to and shall not be bound by any agreements among the Buyers and Sellers. The Escrow Agent shall act as a depository only and shall not be required to take notice of any event or occurrence among Buyers and Sellers unless notified in writing as provided herein. The Escrow Agent shall be liable only for its own gross negligence or misconduct.

8. **No Liability for Documents.** The Escrow Agent is not responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any instrument or for the identity, authority or rights of any person executing it.

9. **Reliance.** The Escrow Agent may act in reliance upon any writing or instrument or signature which it, in good faith, believes to be genuine, may assume the validity and accuracy of any statement or assertion contained in such writing or instrument and may assume that any person purporting to give any writing, notice, advice or instructions in connection with the provisions hereof has been duly authorized to do so.

10. **Disputes.** In the event of any disagreement among Buyers and Sellers resulting in adverse demands being made in connection with this deposit in escrow, the Escrow Agent shall be entitled, at its option, to refuse to comply with any such claim or demand so long as the disagreement shall continue, and in so doing the Escrow Agent shall not become liable in any way to any person for its failure or refusal to comply with such conflicting or adverse claims until the rights of the claimants have been finally adjudicated or the differences adjusted among Buyers and Sellers, and the Escrow Agent.

11. **Counsel for Escrow Agent.** The Escrow Agent may consult legal counsel in the event of a dispute or as to its duties hereunder, and shall incur no liability and shall be fully protected in acting in accordance with the opinion of counsel.

12. **Assignment of Security Interest.** Contemporaneously with the execution and delivery of this Escrow Agreement, Sellers and the Escrow Agent entered into a letter agreement, dated of even date herewith (the "Letter Agreement"), with Manufacturers Hanover Trust Company as

agent (the "Banks' Agent") for itself, Citibank N.A. and National Westminster Bank USA (collectively, the "Banks") pursuant to which, among other things, (a) Sellers assigned to the Banks' Agent their security interest in the Stock (other than the shares of Stock issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) and (b) Sellers and the Escrow Agent agreed that, so long as any of Buyers' obligations to the Banks were outstanding under the Third Restructure and Amended and Restated Credit Agreement dated as of December 20, 1985 among certain of the Buyers and the Banks, if any to the extent that the Escrow Agent is required under the terms of this Escrow Agreement to deliver any certificates evidencing the Stock to Sellers' Agent, such certificates shall instead be delivered to the Banks' Agent. The parties hereto hereby agree and acknowledge that said Letter Agreement is and is intended to be a supplement to and a modification of this Escrow Agreement. As used herein the term Escrow Agreement shall mean this Escrow Agreement, as supplemented and modified by said Letter Agreement, and the escrow is subject to the terms of said Letter Agreement.

13. <u>Notices</u>. All notices and communications hereundershall be in writing and shall be deemed to be duly given if deposited in the United States mail, registered or certified mail, return receipt requested, postage prepaid:

If to Sellers' Agent, to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

With a copy to:

LaPenna and Tuckman
271 North Avenue
New Rochelle, New York 10801

Attn: Michael LaPenna, Esq. or
Warren Gould, Esq.

If to Buyers' Agent, to:

Cibro Terminals Inc.
1066 Zerega Avenue
Bronx, New York 10462

Attn: P. James Massa, President

-4-

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

If to Escrow Agent, to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

Any party may change the designated address by giving written notice to the other parties.

14. **Applicable Law.** This Escrow Agreement shall be construed and enforced in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties have executed this Escrow Agreement as of the date first above written.

<u>SELLERS</u>:

_____
William J. Cirillo

_____
William J. Cirillo, Executor of
the Estate of Constance Cirillo

_____
Jacquelyn Cirillo Roeckle

_____
Robert Cirillo

_____
Janice R. Cirillo

_____
William J. Cirillo, Trustee
f/b/o Janice R. Cirillo

-5-

Barbara A. Cirillo, Trustee
f/b/o Janice R. Cirillo

BUYERS

C. & J. CIRILLO CORP.
CIBRO GASOLINE CORP.
CIBRO PETROLEUM/BKLYN., INC.
CIBRO PETROLEUM/BX., INC.
CIBRO PETROLEUM INC.
CIBRO PETROLEUM/L.I., INC.
CIBRO PETROLEUM/WESTCHESTER, INC.
CIBRO SALES CORP.
CIBRO SOUTH SHORE TERMINAL CORP.
CIBRO SYRACUSE PROPERTY, CORP.
CIBRO TERMINALS, INC.
CIRILLO BROS. CHATTERTON, INC.
CIRILLO BROS. LAND CORP.
FORSEE REALTY CORP.
LANIMRET TERMINAL INC.
OCEANA TERMINAL CORP.
WINIMO REALTY CORP.

By: _____
    William V. Cirillo, Vice
    President each of the
    above-named corporations.


BLACKROCK AVENUE REALTY CORP.
CIBRO LINDENHURST PROPERTY CORP.
WATSON AVENUE REALTY INC.
JACON REALTY INC.

By: _____
    William V. Cirillo, President
    of each of the above-named
    corporations


MONTAUK OIL TRANSPORTATION CORP.

By: _____
    William V. Cirillo,
    Vice President


ESCROW AGENT:

_____
Carro, Spanbock, Kaster & Cuiffo

-6-

Blackrock Avenue Realty Corp.
C. & J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

# AGREEMENT

AGREEMENT, dated May 29, 1987 by and among THE WILLIAMS COMPANY/PETROLEUM MARKETERS, INC., a New York corporation ("TWC"), WILLIAMS MASPETH TERMINALS INC., a New York corporation ("WMT"), WILLIAM J. CIRILLO, as Agent for TWC and WMT ("William J.") and CIBRO PETROLEUM/ BX., INC., a New York corporation (the "Corporation").

## W I T N E S S E T H:

WHEREAS, William J. and the Corporation are parties to a Stock Purchase Agreement of even date herewith (the "Purchase Agreement") pursuant to which the Corporation and certain affiliated corporations (collectively, "Buyers") are purchasing from William J. and certain other persons (collectively, "Sellers") shares of stock issued by Buyers; and

WHEREAS, in order to induce the Buyers to enter into the Purchase Agreement and consummate the transactions contemplated thereby, TWC, WMT and William J. have agreed to enter into certain agreements with the Corporation respecting TWC and WMT on the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. **Non-competition.**

(a) TWC and WMT agree that for a period of 10 years after the date of the Closing, (as hereinafter defined), it will not, directly or indirectly, whether for its own account, or as a shareholder, joint venturer, partner, agent or in any other capacity whatsoever on behalf of or in conjunction with any business, individual, partnership, firm, assocation or corporation:

(i) Engage in, or be connected in any manner with the ownership, management, operation, or control of any business engaged, within the Restricted Area (as hereinafter defined), in the wholesale or retail fuel oil

business or the oil barge transportation business (collectively, the "Business"). As used in this Section 1, the term "Restricted Area" shall mean the following areas within the State of New York: the counties of Nassau, Suffolk, Queens, Kings, Bronx, New York, Richmond, and Westchester, as well as the City of Albany and all points in the State of New York situated directly west or east of the City of Albany and all points north of that line; or

(ii) solicit, divert, disclose, take away, interfere with, or attempt to solicit, divert, disclose, take away, or interfere with any of the Business.

(b) The Corporation acknowledges that TWC and WMT shall be permitted to (i) dispose of current inventories and take such other actions as are necessary to conclude their involvement in the wholesale or retail fuel oil business and (ii) lease or sell the Maspeth Terminal (as hereinafter defined) in accordance with the provisions of Section 2 below and such activities shall not violate the foregoing covenant not to compete.

(c) The Corporation further acknowledges that Harvey Wiles ("Wiles"), a shareholder, officer and director of TWC and WMT, either individually or through one or more corporations or other entities other than TWC and WMT, will continue to engage in the sale of retail fuel oil to commercial, industrial and institutional customers of TWC and WMT, and in connection therewith, will utilize the trade name "The Williams Company." Such activities shall not violate the foregoing covenant not to compete.

(d) The Corporation further acknowledges that Wiles, either individually or through one or more corporations or other entities other than TWC and WMT, will engage in the sale of wholesale fuel oil and that such activities shall not violate the foregoing covenant not to compete, provided that, in connection therewith, Wiles will not utilize the names "The Williams Company" or Williams Maspeth Terminals Inc.

(e) TWC and WMT acknowledge that in the event of any actual or threatened breach of the provisions of this section by either of them, the remedy at law would be inadequate and that the Corporation shall be entitled to an injunction restraining such breach immediately upon the commencement of any suit therefor by the Corporation without notice, in addition to monetary damages and any other remedy provided by law. The Corporation shall not request injunctive relief which would be broader in scope than the coven-

ant not to compete contained in this Section 1. The Corporation, TWC and WMT agree and acknowledge that the duration, scope and geographic areas applicable to the covenant not to compete described in this Section 1 are fair, reasonable and necessary. If, however, for any reason any court determines that the restrictions in this Section 1 are not reasonable, such restrictions shall be interpreted, modified or rewritten to include as much of the duration, scope and geographic area identified in this Section 1 as will render such restrictions valid and enforceable.

## 2. The Maspeth Terminal.

(a) Commencing from the date hereof, TWC and WMT undertake to use reasonable efforts to sell the oil terminal located at 46-73 Metropolitan Avenue, Maspeth, Queens, New York (the "Maspeth Terminal"). TWC and WMT have engaged, and shall continue to use the services of Kaplon-Bellow Associates Inc. and Greiner-Maltz Co., Inc., real estate brokers, in connection with their efforts to sell the Maspeth Terminal. During the period that TWC and WMT are seeking to locate a buyer for the Maspeth Terminal, TWC and WMT shall not be restricted from leasing the Maspeth Terminal, or parts thereof, on a day to day or month to month basis, whether to affiliates or nonaffiliates of TWC and WMT, for any use, including a use related to the petroleum business. After the Closing, TWC and WMT shall not, under any circumstances, sell fuel oil products from the Maspeth Terminal (other than for the purpose of disposing of current inventories as of the Closing) for their own accounts during the period of the covenant not to compete continued in Section 1 hereof.

(b) In the event TWC or WMT locates a buyer for the Maspeth Terminal at any time, TWC or WMT will offer the Corporation a right of first refusal to purchase the Maspeth Terminal on the same terms and conditions offered by such buyer. Such right must be exercised within 20 days of the Corporation's receipt of notice of the offer from TWC or WMT, such notice to be accompanied by a true and complete copy of the offer. In the event the Corporation exercises its right of first refusal, it agrees to reimburse the prospective buyer up to a maximum of $5,000 for costs and expenses incured by such buyer which are directly attributable to such buyer's efforts to purchase the Maspeth Terminal. In the event the Corporation does not exercise its right of first refusal and TWC and WMT fail, for whatever reason, to close with the prospective buyer on the terms set forth in the original offer, the Corporation's right of first refusal hereunder shall be reinstated.

(c) The Corporation may, within 180 days after the date of the Closing, and provided the Maspeth Terminal has not been sold, locate a prospective buyer for the Maspeth Terminal on behalf of TWC and WMT, provided, however, that any lessee of the Maspeth Terminal who is then occupying or who then has the right to occupy the Maspeth Terminal for one year or longer shall be offered a right of first refusal to purchase the Maspeth Terminal on the same terms and conditions offered to the prospective buyer. In the event such a prospective buyer offers to purchase the Maspeth Terminal as is for a price in excess of $2,500,000, payable in cash, net of any brokerage commission, New York City real property transfer tax and New York State capital gains tax, TWC and WMT shall be required to accept such offer and to consummate the sale of the Maspeth Terminal to such prospective buyer.

(d) TWC and WMT may lease the Maspeth Terminal to an unaffiliated third party for a period of one year or longer, provided, however, that TWC and WMT shall offer the Corporation a right of first refusal with respect to such a lease, which right must be exercised within 20 days of the Corporation's receipt of notice of the offer from TWC or WMT, such notice to be accompanied by a true and complete copy of the proposed lease. In the event the Corporation exercises its right of first refusal, it agrees to reimburse the prospective lessee up to a maximum of $5,000 for costs and expenses incurred by such prospective lessee which are directly attributable to its efforts to lease the Maspeth Terminal. In the event the Corporation does not exercise its right of first refusal and TWC and WMT fail, for whatever reason, to close with the prospective lessee on the terms set forth in the original proposed lease, the Corporation's right of first refusal hereunder shall be reinstated. In the event the Corporation exercises such right, the Corporation may, at the conclusion of the lease term, renew the lease for an additional term equal in length to the original lease term. In the event the Corporation does not exercise such right of renewal, the Corporation shall, at its cost, within 120 days after the conclusion of the lease term, remove all tanks and piping from the real property underlying the Maspeth Terminal. Such work will be performed in accordance with all applicable federal, state and local laws and regulations. The Corporation agrees that it will indemnify TWC and WMT against all liabilities arising from such work.

3. <u>Payment by the Corporation</u>.

In consideration for the covenants, undertakings and agreements of TWC and WMT contained herein, the

-4-

Corporation agrees to pay to TWC at Closing (as hereinafter defined) the sum of $500,000, by certified or bank check.

4. **Closing.** The closing of the transactions contemplated hereby (the "Closing") shall take place at the offices of Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the Americas, New York, New York, or at such other place as may be mutually agreed upon by the parties hereto, on the same date and immediately prior to the closing of the Purchase Agreement. The parties hereto acknowledge that the Closing is a condition precedent to the closing of the Purchase Agreement.

5. <u>Representations and Warranties.</u>

(a) Both TWC and WMT represent and warrant to the Corporation as follows:

(i) It is a corporation duly organized and existing in good standing under the laws of the state of New York.

(ii) It has the corporate power to enter into and perform all of its obligations under this Agreement. The execution, delivery and the consummation by it of the transactions contemplated hereby have been duly authorized by all necessary corporate action on its part.

(iii) This Agreement constitutes its legal, valid and binding obligation, enforceable in accordance with its terms. It has the full right, power, legal capacity and authority to enter into this Agreement and to consummate the transactions contemplated hereunder. The execution, delivery or performance of this Agreement is not prohibited by and does not violate or conflict with any agreement to which it is a party or by which it is bound, or any judgment, order, writ, injunction or decree of any court or governmental body.

(b) The Corporation represents and warrants to TWC and WMT as follows:

(i) The Corporation is a corporation duly organized and existing in good standing under the laws of the state of New York.

(ii) The Corporation has the corporate power to enter into this Agreement and, subject to the limitations contained in the New York Business Corporation Law, to perform all of its obligations under this Agree-

ment. The execution and delivery by the Corporation and the consummation by it of the transactions contemplated by this Agreement have been duly authorized by all necessary corporate action on its part.

(iii) This Agreement constitutes the legal, valid and binding obligations of the Corporation and is enforceable in accordance with its terms, subject to the limitations contained in the New York Business Corporation Law. The Corporation has the full right, power, legal capacity and authority to enter into this Agreement and to consummate the transactions contemplated under this Agreement. Except for existing agreements with (A) Congress Financial Corporation and (B) Manufacturers Hanover Trust Company, individually, and as agent for Citibank, N.A., National Westminister Bank USA and The Chase Manhattan Bank, N.A., the execution, delivery or performance of this Agreement is not prohibited by and does not violate or conflict with any judgment, order, writ, injunction or decree of any court or governmental body or any agreement to which the Corporation is a party or by which the Corporation is bound.

(c) All of the representations and warranties of the parties hereto shall survive the Closing.

6. Condition Precedent to Closing. It shall be condition to the Closing that the Purchase Agreement have closed prior to or simultaneously with the Agreement.

7. Notices. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, given by prepaid telegram, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to TWC, WMT or William J. to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

With copies to:

LaPenna and Tuckman
271 North Avenue
New Rochelle, New York 10801
Attn: Michael LaPenna, Esq. or
Warren Gould, Esq.

-6-

and

Harvey Wiles
701 South Columbus Avenue
Mt. Vernon, New York

and

Cohen, Shapiro & Polisher
12 South 12th Street
Philadelphia, Pennsylvania 19107
Attn: Phil Shiekman, Esq.

If to the Corporation to:

Cibro Petroleum/Bx., Inc.
1066 Zerega Avenue
Bronx, New York 10462
Attn: P. James Massa, President

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

The persons and addresses to which mailing must be made may
be changed from time to time by a notice given in the same
manner. All notices shall be deemed to have been given as
of the date of personal delivery or transmittal of the tele-
gram or as of the date three days after mailing thereof.

8. **Further Assurances.** TWC and WMT will, at any
time, execute and deliver to the Corporation such other
instruments and take such other steps as may reasonably be
requested by the Corporation to ensure compliance with all
of the terms and provisions of this Agreement.

9. **Expenses.** Each of the parties hereto shall
pay the fees and expenses of their respective counsel,
accountants and other experts, and all other expenses in-
curred by such party incident to the negotiation, prepara-
tion and execution of this Agreement.

10. **Entire Agreement.** This Agreement sets forth
the entire understanding and agreement between the parties
hereto with reference to the subject matter hereof and
supercede any and all other agreements, understandings and

-7-

representations heretofore made with respect to the subject matter hereof. This Agreement may not be modified, amended or terminated nor may any term be waived except by a written instrument executed by all parties.

11. **Benefits**. This Agreement shall bind and inure solely to the benefit of the parties hereto and their respective heirs, personal representatives, executors, representatives and successors and shall not inure to the benefit of any third party.

12. **Severability**. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

13. **Governing Law**. This Agreement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the laws of the State of New York.

14. **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. __Captions__.  The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day first above written.

CIBRO PETROLEUM/BX., INC.

By: _____
    Name:  William V. Cirillo
    Title: Vice President


THE WILLIAMS COMPANY/PETROLEUM MARKETERS, INC.

By: _____
    Name:
    Title:


WILLIAMS MASPETH TERMINALS INC.

By: _____
    Name:
    Title:


_____
    William J. Cirillo

## Option Agreement

AGREEMENT dated as of May 29, 1987 by and between COASTAL PETROLEUM NEW YORK INC., a New York corporation ("Seller"), having its principal place of business at 2463 Westchester Avenue, Bronx, New York 10461, and CIBRO PETROLEUM/BX., INC., a New York corporation ("Purchaser"), having its principal place of business at 1066 Zerega Avenue, Bronx, New York 10462.

W I T N E S S E T H :

WHEREAS, Seller is engaged in the business of selling and distributing retail #2 fuel oil in the Counties of Bronx, New York and Westchester, State of New York, and is the owner of a customer list comprising all of its retail #2 fuel oil customers in the Counties of Bronx, New York and Westchester, State of New York;

WHEREAS, Seller is the owner of certain rolling stock;

WHEREAS, it is a condition to the purchase and sale of certain stock pursuant to that certain stock purchase agreement dated of even date herewith among Purchaser, certain affiliates of Purchaser, the shareholders of Seller and certain other persons related to the shareholders of Seller that Purchaser and Seller enter into this Agreement; and

WHEREAS, on the terms and conditions hereinafter set forth, Seller desires to grant to Purchaser, and Purchaser desires to acquire from Seller, an option to buy Seller's retail #2 fuel oil customer list as well as Seller's rolling stock.

NOW, THEREFORE, it is agreed as follows:

Section 1.    The Option.

(a)  Seller hereby grants to Purchaser an irrevocable option (the "Option") to extend the Option to purchase and to purchase, on the terms and subject to the conditions contained in the form of purchase agreement annexed hereto as Exhibit A (the "Purchase Agreement"), (i) all of Seller's right, title and interest in and to the list (the "Customer List") comprising all of Seller's "Customers" (as such term

is hereinafter defined in Section 1(c) and (ii) the rolling stock listed on the annexed Schedule I (the "Rolling Stock"; the Customer List and Rolling Stock are hereinafter sometimes collectively referred to as the "Assets").

(b) _Term and Exercise._ Purchaser may, at any time on or before January 15, 1988, exercise the Option by giving written notice (the "Exercise Notice") to Seller in accordance with Section 6(b) of this Agreement. The Purchase Agreement shall be dated as of the date the Exercise Notice is given and Seller and Purchaser shall each execute and deliver the Purchase Agreement within five (5) days after such date.

(c) For purposes of this Agreement, the term "Customers" shall mean delivery points located within Bronx, New York and Westchester Counties, State of New York where retail #2 fuel oil has been sold and delivered by Seller within the one year period (the "Year") commencing on April 1, 1987 and ending on March 31, 1988 and the term "Existing Customers" shall mean delivery points located within Bronx, New York and Westchester Counties, State of New York where retail #2 fuel oil has been sold and delivered by Seller within the one year period commencing on March 1, 1986 and ending on February 28, 1987 (the "Base Period").

Section 2. _Representations and Warranties of Seller._ Seller hereby represents and warrants to Purchaser as follows:

(a) Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has full power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

(b) Seller has all requisite power and authority to execute and deliver this Agreement and the Purchase Agreement and to consumate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement and the Purchase Agreement and the transactions contemplated hereby and thereby will not, with or without the giving of notice and/or the passage of time, violate (i) any provision of law, the certificate of incorporation or by-laws of Seller, or any order or decree of any governmental authority by which Seller or any of its property or assets is bound or (ii) any indenture, agreement or other instrument to which Seller is a party or by which Seller or the property or assets of Seller is bound or constitute a default under any such indenture, agreement or

-2-

other instrument or result in the creation of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Seller. The execution, delivery and performance of this Agreement and the Purchase Agreement and the consummation of the transactions contemplated hereby and thereby by Seller have been duly and validly authorized by all requisite corporate action on behalf of Seller. This Agreement is, and when duly executed and delivered the Purchase Agreement will be, the legal, valid and binding obligation of Seller, enforceable in accordance with their respective terms.

(c) Seller is the owner of, and has good and marketable title to, the Existing Customer List, free and clear of any liens, charges, encumbrances, licenses and claims of third parties except as set forth on Schedule II annexed hereto, and has unrestricted power to sell, convey, assign, transfer and deliver to Purchaser the Existing Customer List. Seller has not made any prior sale of, or granted any licenses or other rights with respect to, all or any part of the Existing Customer List or the Customer List.

(d) Seller is the sole and exclusive legal and equitable owner of all right, title and interest in, and has good and marketable title to, the Rolling Stock, free and clear of any lien, claim, charge or encumbrance. All Rolling Stock is properly licensed and registered in accordance with applicable law. The Rolling Stock is in operating condition and repair, subject to normal wear and tear, and is adequate and suitable to meet all present requirements of the Seller's business as currently conducted.

(e) The execution and delivery of this Agreement and the Purchase Agreement by Seller and any other agreement, document or instrument contemplated hereby and thereby and the performance of its obligations hereunder or thereunder do not require any consent by or approval of, or action or filing with, or notice to, any person, corporation, firm, or governmental department, commission, board, bureau, agency or instrumentality.

(f) With respect to the customers on the Existing Customer List:

(i) All sales taxes have been paid and those not yet due will be paid by Seller when due; and

(ii) No such customer is a customer for a fixed price.

-3-

(g) No litigation, proceeding or governmental investigation is pending or, to the best of Seller's knowledge, threatened against Seller which would adversely affect the consummation of the transactions contemplated hereby or by the Purchase Agreement or Seller's rights in and to the Existing Customer List or the Assets.

(h) During the Base Period, Seller sold an aggregate of approximately 1,550,000 gallons of retail #2 fuel oil to Existing Customers.

Section 3. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

(a) Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has full power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

(b) Purchaser has all requisite power and authority to execute and deliver this Agreement and the Purchase Agreement and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement and the Purchase Agreement and the transactions contemplated hereby and thereby will not, with or without the giving of notice and/or the passage of time, violate (i) any provision of law, the certificate of incorporation or bylaws of Purchaser, or any order or decree of any court or other governmental authority by which Purchaser or any of its property of assets is bound or (ii) any indenture, agreement or other instrument to which Purchaser is a party or by which it is bound or constitute a default under any such indenture, agreement or other instrument. The execution, delivery and performance of this Agreement and the Purchase Agreement and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all requisite corporate action on behalf of Purchaser. This Agreement is, and when duly executed and delivered the Purchase Agreement will be, the legal, valid and binding obligation of Purchaser, enforceable in accordance with their respective terms.

(c) No litigation, proceeding or governmental investigation is pending or, to the best of Purchaser's knowledge, threatened against Purchaser which would adversely affect the consummation of this transactions contemplated hereby.

-4-

Section 4.  Covenants.

(a)  Between the date hereof and either (x) if Purchaser fails for any reason whatever to exercise the Option herein provided for timely, the date on which the Option shall expire or (y) the closing under the Purchase Agreement, whichever first occurs, (i) Seller shall use its best efforts to maintain and preserve its present business organization intact, to operate its business only in the usual, customary and ordinary manner and to maintain and preserve its relationship with Existing Customers, (ii) Seller shall not sell any product other than retail #2 fuel oil, (iii) Seller shall not expand its area of operations outside of the Counties of Bronx, New York and Westchester, State of New York, (iv) Seller shall not knowingly solicit or attempt to solicit or knowingly accept orders from or make deliveries to any customers of Purchaser and its affi- liates as they may exist from time to time, (v) Seller shall purchase from Cibro Terminals, Inc. ("CTI") 750,000 gallons of retail #2 fuel oil, (vi) Seller shall use its reasonable efforts to keep the Rolling Stock in operating condition and repair, subject to normal wear and tear, provided, however, that Seller shall not be obligated to incur any substantial expense in connection therewith, and (vii) Seller shall not sell, assign, transfer, pledge, hypothecate, grant a security interest in or otherwise encumber or dispose of any of its right, title and interest in and to the Existing Customer List or the Assets nor shall Seller permit any of the foregoing events to occur.

(b)  Between the date hereof and either (x) if Purchaser fails for any reason whatever to exercise the Option herein provided for timely, the date on which the Option shall expire or (y) the closing under the Purchase Agreement, whichever first occurs, Purchaser shall use its reasonable efforts to keep confidential, and to cause its officers, directors, employees, agents and representatives to keep confidential, the grant to Purchaser by Seller of the Option herein provided for, the terms and conditions of this Agreement and the terms and conditions of the Purchase Agreement, except that it is expressly understood and agreed that Purchaser may disclose the grant of the Option and the terms thereof, and provide copies of this Agreement and the Purchase Agreement to, such of its officers, directors, employees, representatives and agents who need to know the information for purposes of evaluating the transaction and to third parties from whom consents to the transaction are required.

(c)  Between the date hereof and either (x) if Purchaser fails for any reason whatever to exercise the Option herein provided for timely, the date on which the

-5-

Option shall expire or (y) the closing under the Puchase Agreement, Purchaser shall not knowingly solicit or attempt to solicit or knowingly accept orders from or make deliveries to customers of Seller as they may exist from time to time.

Section 5.  **Survival of Representations and Warranties**.  The representations and warranties of Seller and Purchaser contained in Sections 2 and 3 of this Agreement, respectively, shall survive the date hereof for a period of one and one-half years following the consummation of the transactions contemplated by the Purchase Agreement.  Purchaser is entitled to rely on the representations and warranties made by Seller herein, notwithstanding any examinations made by Purchaser.

Section 6.  **Miscellaneous**.

(a)  Any failure of Seller, on the one hand, and Purchaser, on the other hand, to comply with any obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

(b)  All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by telex or telecopy, on the date of delivery, or if mailed by registered or certified mail (return receipt requested), postage prepaid, three days after deposit in the U.S. mails, to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(i) if to Seller, to

Coastal Petroleum New York Inc.
2463 Westchester Avenue
Bronx, New York 10461
Attn:  Robert N. Cirillo

with a copy to

LaPenna & Tuckman, P.C.
271 North Avenue
New Rochelle, New York  10801
Attn:  Michael LaPenna, Esq.

(ii) if to Purchaser, to

Cibro Petroleum/Bx., Inc.
1066 Zerega Avenue
Bronx, New York
Attn:  P. James Massa, President

-6-

with a copy to

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York  10105
Attn:  Marshall N. Lester, Esq.

Any notice delivered personally or by telex or telecopy shall be followed within five days by written notice sent via certified mail, return receipt requested.

(c)  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Neither party may assign this Agreement or its rights hereunder except that Purchaser may assign this Agreement and its rights hereunder to any of the corporations listed on the annexed Schedule III.  This Agreement is not intended to confer upon any other person except the parties hereto any right or remedies hereunder.

(d)  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof, as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

(e)  The parties hereto agree that monetary damages are an inadequate remedy for the breach of this Agreement because of the difficulty of ascertaining the amount of damages that Purchaser will suffer in the event this Agreement is breached by Seller.  Therefore, Seller agrees that Purchaser may obtain specific enforcement of this Agreement.

(f)  This Agreement may be executed in two counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

(g)  The section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties andd shall not affect in any way the meaning or interpretation of this Agreement.

(h)  This Agreement, including the exhibits hereto and the documents and instruments referred to herein, embodies the entire agreement and understanding of the parties

hereto in respect of the subject matter contained herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

COASTAL PETROLEUM NEW YORK
  INC.

By: _____
      Name:
      Title:

CIBRO PETROLEUM/BX.,
  INC.

By: _____
      Name:
      Title:

<u>SCHEDULE I</u>

to Option Agreement made by

and between

COASTAL PETROLEUM/NEW YORK, INC. and CIBRO PETROLEUM/BX., INC.

<u>ROLLING STOCK</u>

| <u>Vehicle #</u> | <u>License Plate</u> | <u>V.I.N.</u> | <u>Make & Year</u> |
|---|---|---|---|
| Truck 1 | 56919 GM | 74559 | White 1972 |
| Truck 3 | 74813 GP | AAF3SBB818687 | White 1974 |
| Truck 7 | 56915 GM | 708288 | White 1968 |
| Truck 15 | 56914 GM | 695634 | White 1968 |
| Truck 11 | (no plate) | 450A5485 | White 1960 |
| Van 6 | 29748 GJ | 1FTDE14Y9EHA26372 | Ford 1984 |
| Van 8 | 29750 GJ | 1FTDE14Y5EHA28801 | Ford 1984 |
| Van 10 | 29749 GJ | 1FTDE14Y7EHA26371 | Ford 1984 |

SCHEDULE II

[Liens]

Lien on the Customer List in favor of Helen Ciccerone securing indebtedness in the outstanding principal amount of $125,162.52.

[Permitted Assignees]

Cibro Gasoline Corp.

Cibro Petroleum/Bklyn., Inc.

Cibro Petroluem Inc.

Cibro Petroleum/L.I., Inc.

Cibro Petroleum Products Inc.

Cibro Petroleum/Westchester, Inc.

Cibro Sales Corp.

Cibro South Shore Terminal Corp.

Cibro Terminals, Inc.

Lanimret Terminal Inc.

Oceana Terminal Corp.

OPTION AND
PURCHASE AGREEMENT

AGREEMENT dated as of _____, 1988 by and
between COASTAL PETROLEUM NEW YORK INC., a New York corpora-
tion ("Seller"), having its principal place of business at
2463 Westchester Avenue, Bronx, New York 10461, and CIBRO
PETROLEUM/BX., INC., a New York corporation ("Purchaser"),
having its principal place of business at 1066 Zerega
Avenue, Bronx, New York 10462.

W I T N E S S E T H :

WHEREAS, Seller is engaged in the business of selling
and distributing retail #2 fuel oil in the Counties of
Bronx, New York and Westchester, State of New York, and is
the owner of a customer list comprising all of its retail #2
fuel oil customers in the Counties of Bronx, New York and
Westchester, State of New York;

WHEREAS, Seller is the owner of certain rolling stock;

WHEREAS, pursuant to that certain option agreement,
dated as of May 29, 1987 (the "Option Agreement"), between
Purchaser and Seller, Seller granted to Purchaser an
irrevocable option (the "Option") to purchase Seller's re-
tail #2 fuel oil customer list as well as Seller's rolling
stock, which Option was exercisable at any time commencing
on the date of the Option Agreement and ending on January
15, 1988 (the "Option Period"); and

WHEREAS, the parties desire to (a) extend the Option
Period and (b) set forth the terms and conditions of the
purchase and sale of Seller's retail #2 fuel oil customer
lists and rolling stock.

NOW, THEREFORE, it is agreed as follows:

Section 1. Option; Sale and Purchase of Assets.

(a) Subject to the terms and conditions herein-
after set forth, Seller hereby (i) reaffirms its grant to
Purchaser of the Option to purchase (A) all of Seller's
right, title and interest in and to the list (the "Customer
List") comprising all of Seller's "Customers" (as such term
is hereinafter defined in subsection (c) below) and (B) the

rolling stock listed on the annexed Schedule I (the "Rolling Stock"; the Customer List and the Rolling Stock are hereinafter sometimes collectively referred to as the "Assets") and (ii) agrees that the Option Period be extended through the "Closing Date" (as such term is hereinafter defined in Section 5). Purchaser may, at any time on or before the expiration of the Option Period, in its sole and absolute discretion, exercise the Option by giving written notice (the "Exercise Notice") to Seller in accordance with Section 12(b) of this Agreement.

(b) If Purchase shall give the Exercise Notice pursuant to Section 1(a) of this Agreement, then, subject to the terms and conditions set forth in this Agreement, at the "Closing" (as such term is hereinafter defined in Section 5), Seller shall sell, transfer and assign to Purchaser, and Purchaser shall buy from Seller, the Assets.

(c) The term "Customers" as used in this Agreement shall mean delivery points located within Bronx, New York and Westchester Counties, State of New York where retail #2 fuel oil has been sold and delivered by Seller within the one year period commencing on April 1, 1987 and ending on March 31, 1988 (the "Year").

Section 2. Purchase Price and Manner of Payment.

(a) The purchase price (the "Purchase Price") payable by Purchaser for the Assets shall be an amount equal to the sum of (i) $125,000 plus (ii) the product of (x) $.50 multiplied by (y) the number of gallons of retail #2 fuel oil sold by Seller during the Year.

(b) The Purchase Price shall be payable by Purchaser to Seller, by certified check, at the Closing.

(c) The Purchase Price for the Assets shall be allocated as follows:

| | |
|---|---|
| Customer Lists | 95% |
| Rolling Stock | 5% |

Section 3. Representations and Warranties of Seller. Seller hereby represents and warrants to Purchaser as follows:

(a) Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has full power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

-2-

(b) Seller has all requisite power and authority to execute and deliver this Agreement and to consumate the transactions contemplated hereby. The execution, delivery and performance of this Agreement and the transactions contemplated hereby will not, with or without the giving of notice and/or the passage of time, violate (i) any provision of law, the certificate of incorporation or by-laws of Seller, or any order or decree of any governmental authority by which Seller or any of its property or assets is bound or (ii) any indenture, agreement or other instrument to which Seller is a party or by which Seller or the property or assets of Seller is bound or constitute a default under any such indenture, agreement or other instrument or result in the creation of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Seller. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Seller have been duly and validly authorized by all requisite corporate action on behalf of Seller. This Agreement is the legal, valid and binding obligation of Seller, enforceable in accordance with its terms.

(c) Except as set forth on Schedule II annexed hereto, Seller is the owner of, and has good and marketable title to, the Customer List, free and clear of any lien, charge, encumbrance, license or claim of a third party, and Seller has the unrestricted right, power and authority to sell, convey, assign, transfer and deliver to Purchaser the Customer List. Seller has not made any prior sale of, or granted any licenses or other rights with respect to, all or any part of the Customer List.

(d) Seller is the sole and exclusive legal and equitable owner of all right, title and interest in, and has good and marketable title to, the Rolling Stock, free and clear of any lien, charge, encumbrance or claim of a third party. All Rolling Stock is properly licensed and register-ed in accordance with applicable law. The Rolling Stock is in operating condition and repair, subject to normal wear and tear, and is adequate and suitable to meet all present requirements of the Seller's business as presently conducted.

(e) The execution and delivery of this Agreement by Seller and any other agreement, document or instrument contemplated hereby and the performance of its obligations hereunder or thereunder do not require any consent by or approval of, or action or filing with, or notice to, any person, corporation, firm, or governmental department, com-mission, board, bureau, agency or instrumentality.

(f)  With respect to the Customers:

(i)  All sales taxes have been paid and those not yet due will be paid by Seller when due; and

(ii)  No Customer is a customer for a fixed price.

(g)  No litigation, proceeding or governmental investigation is pending or, to the best of Seller's knowledge, threatened against Seller which would adversely affect the consummation of the transactions contemplated hereby or Seller's rights in and to the Assets.

(h)  Seller has simultaneously herewith delivered to Purchaser true and complete copies of all service contracts between Seller and each of the Customers.  Seller has no other agreements, arrangements or commitments, whether written or oral, with any of the Customers.

(i)  Seller has no reason to believe that any Customer has or intends to terminate its customer relationship with Seller or that any Customer will not deal with or accept fuel oil deliveries from Purchaser.

(j)  Seller has no reason to believe that, after the Closing Date, Peter Randazzo and Valerie Storch will not accept employment with Purchaser.

Section 4.  Representations and Warranties of Purchaser.  Purchaser represents and warrants to Seller as follows:

(a)  Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has full power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

(b)  Purchaser has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance of this Agreement and the transactions contemplated hereby will not, with or without the giving of notice and/or the passage of time, violate (i) any provision of law, the certificate of incorporation or bylaws of Purchaser, or any order or decree of any court or other governmental authority by which Purchaser is bound or (ii) any indenture, agreement or other instrument to which Purchaser is a party or by which Purchaser is bound or constitute a default under any such indenture, agreement or other instru-

-4-

ment. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all requisite corporate action on behalf of Purchaser. This Agreement is the legal, valid and binding obligation of Purchaser, enforceable in accordance with its terms.

(c) No litigation, proceeding or governmental investigation is pending or, to the best of Purchaser's knowledge, threatened against Purchaser which would adversely affect the consummation of this transaction.

Section 5. Closing. If Purchaser shall give the Exercise Notice pursuant to Section 1(a) of this Agreement, then the consummation of the sale, assignment and transfer to Purchaser of the Assets (the "Closing") shall take place at the offices of Carro, Spanbock, Kaster & Cuiffo, counsel for Purchaser, 1345 Avenue of the Americas, New York, New York 10105, on April 15, 1988 or, if the parties mutually agree on another date, on such other date (the "Closing Date").

Section 6. Conditions Precedent.

(a) The obligation of Purchaser to purchase the Assets is subject to the fulfillment to the reasonable satisfaction of Purchaser on or before the Closing Date of the following conditions:

(i) Purchaser shall have given the Exercise Notice to Seller pursuant to Section 1(a) of this Agreement.

(ii) The representations and warranties made by Seller in this Agreement shall be true and complete in all material respects at the date made and at and as of the Closing Date as if made at and as of the Closing Date.

(iii) Seller shall have performed or complied with all agreements and covenants required by this Agreement to be performed or complied with by it at or prior to Closing.

(iv) At the Closing, Seller shall deliver to Purchaser:

(A) Duly executed instruments of assignment respecting the Customer List and the "Service Contracts" (as such term is hereinafter defined in Section 10(b)) all in form and substance satisfactory to counsel for Purchaser.

-5-

(B) Duly executed bills of sale respecting the Rolling Stock, all in form and substance satisfactory to counsel for Purchaser.

(C) Originals or true and complete copies of the following documentation with respect to the Customers:

(1) The Customer List with all normal operating information relating to the Customers,

(2) One Year's Service Records for each Customer set forth on the Customer List,

(3) One Year's Gallonage and Payment Records for each Customer set forth on the Customer List,

(4) Credit and Ownership Records for each Customer set forth on the Customer List,

(5) Computer Tape with all normal operating information relating to the Customers, and

(6) All Service Contracts respecting the Customers.

(D) Certificates of Title, registration or other evidence of ownership of the Rolling Stock with appropriate endorsement or other action necessary to transfer ownership to Purchaser.

(E) Certified copies of the resolutions duly adopted by the Board of Directors and shareholders of Seller authorizing the execution, delivery and performance of this Agreement.

(F) A certificate of the President of Seller to the effect that the conditions contained in subsection (ii) and (iii) above have been satisfied.

(G) Evidence of satisfaction of certain indebtedness owed to Helen Ciccerone and acknowledgment copies of termination statements or releases on Form UCC-3 respecting any liens on the Assets.

(b) The obligation of Seller to sell the Assets is subject to the fulfillment to the reasonable satisfaction of Seller on or before the Closing Date of the following conditions:

-6-

(i)   Seller shall have received the Exercise Notice pursuant to Section 1(a) of this Agreement.

(ii)   The representations and warranties made by Purchaser in this Agreement shall be true and complete in all material respects at the date of this Agreement and at and as of the Closing Date as if made at and as of the Closing Date.

(iii)   Purchaser shall have performed or complied with all agreements and covenants required by this Agreement to be performed or complied with by it at or prior to Closing.

(iv)   At the Closing, Purchaser shall deliver to Seller:

(A)   Cash or a certified check in the amount of the Purchase Price.

(B)   An instrument of assumption with respect to the Service Contracts, in form and substance satisfactory to counsel for Seller.

(C)   Certified copies of the resolutions duly adopted by the Board of Directors of Purchaser authorizing the execution, delivery and performance of this Agreement.

(D)   A certificate of the President of Purchaser to the effect that the conditions contained in subsections (ii) and (iii) above has been satisified.

Section 7.   Accounts Receivable.

(a)   It is agreed that none of the accounts receivable of Seller's Customers shall be sold or transferred to Purchaser; provided, however, Purchaser agrees to diligently assist in the collection of said accounts receivable on behalf of Seller.  In no event, however, shall Purchaser be obligated to institute any legal action to collect same.  All amounts received from Seller's Customers shall first be applied to any amounts said Customers owe to Seller, and only after the full amount owed to Seller has been satisfied may Purchaser retain any payments made by any such Customer, except if the terms of checks received include specific reference to a Purchaser invoice, in which event, Purchaser may retain that portion of the payments so specifically referenced and, in such case, Purchaser shall advise Seller as to the amount of such payment to Purchaser and the amount

still owed Seller by such Customer. Purchaser will return to the Customer any check marked "paid in full" if such check does not cover amounts owed to Seller.

(b) Payment of amounts owed by Customers to Seller and received by Purchaser shall be made as follows:

(i) if the Customer pays the amount owed to Seller in cash, Purchaser shall deposit the amount so received by it in a bank account to be designated by Seller:

(ii) if the Customer makes payment by delivering a check payable to the order of Seller or to the order of Purchaser and the check is either equal to or less the amount then owed by such Customer to Seller and does not include amounts owed to Purchaser, Purchaser shall deposit such check in a bank account to be designated by Seller and, in the case where a check is made payable to the order of Purchaser, Purchaser shall first endorse such check without recourse; and

(iii) if the Customer makes payment by delivering a check payable to the order of Purchaser and such check is an amount which includes payments owing to Seller, Purchaser shall make payment to Seller by delivering to Seller a check drawn on a Purchaser account in the amount owed to Seller and included in the Customer's check if and only after the Customer's check has cleared.

All deposits shall be made by Purchaser no later than two business days after the funds, whether in the form of cash or checks, are received by Purchaser. Upon Seller's reasonable request, which shall be made no more than weekly, Purchaser shall provide Seller with a list of deposits made by Purchaser to Seller's account pursuant to this Section.

(c) Notwithstanding the foregoing, if Purchaser fails to collect any account receivable within ninety (90) days of the Closing Date or if Purchaser receives a written communication from the Customer contesting the amount due, then Purchaser shall have no further obligations to pursue collection. Purchaser shall notify Seller of such failure and Seller shall have the right to take whatever action it, in its sole and absolute discretion may determine, necessary to collect the accounts of said Customers.

Section 8. Covenants.

(a) From the date of this Agreement through the Closing Date, Seller will furnish Purchaser with such

information regarding the Customer List, including, without limitation, gallonage, payment and credit histories for each Customer on the Customer List, as Purchaser may reasonably request and Purchaser shall have the right, on reasonable notice during weekends and after regular business hours on business days to examine Seller's books and records with respect thereto and to make copies thereof or extracts therefrom, it being expressly understood and agreed that, prior to the Closing, Seller is not required to identify by name or delivery point any Customer on the Customer List or to provide Purchaser with any written material which identifies any Customer by name or delivery point. Purchaser agrees to keep all such information confidential until the Closing, unless, in the opinion of its counsel, Purchaser is required by law to disclose same, and, if the transactions contemplated by this Agreement are not consummated, to return any materials delivered to Purchaser pursuant to this Section 8(a).

(b) From the date of this Agreement through the Closing Date, (i) Seller shall use its best efforts to maintain and preserve its business as currently conducted and to maintain and preserve its relationship with the Customers and (ii) Seller shall keep the Rolling Stock in operating condition and repair, subject to normal wear and tear.

(c) After the Closing, Purchaser may contact Peter Randazzo and Valerie Storch with respect to prospective employment with Purchaser.

(d) Each of Purchaser and Seller agree to use its best efforts to fulfill the conditions to the obligations of the other party under this Agreement.

(e) Seller covenants and agrees that, from and after the Closing, Seller shall not disclose and shall retain as confidential and secret the identity of the Customers and their addresses.

(f) Seller agrees that for a period of 10 years after the Closing Date, it will not, directly or indirectly, whether for its own account, or as a shareholder, joint venturer, partner, agent or in any other capacity whatsoever on behalf of or in conjunction with any business, individual, partnership, firm, association or corporation:

(i) Engage in, or be connected in any manner with the ownership, management, operation, or control of any business engaged, within the "Restricted Area" (as such term is hereinafter defined), in the wholesale or retail fuel oil

-9-

business or the oil barge transportation business (collectively, the "Business"). As used in this Section 8(b), the term "Restricted Area" shall mean the following areas within the State of New York: the counties of Bronx, New York and Westchester; or

(ii) solicit, divert, disclose, take away, interfere with, or attempt to solicit, divert, disclose, take away, or interfer with any of the Business.

Seller agrees that Purchaser would not have an adequate remedy at law for the breach or threatened breach of this restrictive covenant and agrees that Purchaser may, in addition to any other remedies which may be available hereunder or under law, in the case of any such breach or threatened breach, file a suit in equity to enjoin Seller from such breach or threatened breach, and agrees that the court having jurisdiction over such proceedings may enter a temporary restraining order and/or a permanent restraining order enjoining Seller from such breach or threatened breach.

If any provision of this Section 8(f) is held to be unenforceable because of the scope, duration or area of its applicability, the court making such determination shall have the power to modify such scope, duration or applicability, or all of them, and such provisions as modified shall remain in full force and effect.

(g) At the Closing, the Service Contracts assumed by Purchaser pursuant to Section 10(b) hereof shall be adjusted on a pro rata basis based upon the number of months remaining under the term of said contracts.

(h) As soon as practicable after the Closing, Seller shall deliver to each Customer a letter in the form annexed hereto as Schedule II and Purchaser shall deliver to each Customer a letter in the form of Schedule III.

(i) For the period commencing on the Closing Date and ending on December 31, 1988, by his signature below, Robert N. Cirillo agrees to assist Purchaser in handling relationships with the Customers, it being understood that Mr. Cirillo need only be available by phone and Purchaser shall request assistance from Mr. Cirillo only on an occassional basis when reasonably required.

Section 9. **Survival of Representations and Warranties.** The representations and warranties of Seller and Purchaser contained in this Agreement shall survive the date hereof for a period of one and one-half years. Purchaser is entitled to rely on the representations and warranties made by Seller herein, notwithstanding any examinations made by Purchaser.

Section 10. **Indemnification.**

(a) Except as provided in subsection (b) below, Purchaser does not assume or agree to assume any liability or obligation of any kind or nature of Seller, direct or indirect, contingent or otherwise.

(b) Purchaser hereby agrees to assume and to discharge all of Seller's obligations under Seller's customer service contracts (collectively, the "Service Contracts") with Customers, adjusted pursuant to Section 8(g) hereof, except warranties or guarantees not covered by such service contracts.

(c) Seller agrees to indemnify and hold Purchaser harmless from and against any and all claims, demands, actions, obligations and liabilities arising out of or relating to sales tax obligations of Seller with respect to sales to Customers prior to the Closing.

(d) Seller agrees to indemnify and hold Purchaser harmless from and against any and all claims, demands, actions, obligations and liabilities arising out of or relating to sales tax imposed on the transactions contemplated hereby.

(e) Subject to the provisions of this Agreement, Seller and Purchaser shall each indemnify the other and hold it harmless from and against, and shall be obligated to pay or reimburse the other in respect of, any and all liabilities, losses, claims, costs and damages (including reasonable attorney's fees and court costs) resulting from any misrepresentation or breach of representation and warranty contained in this Agreement or in any agreement, document, certificate or other writing delivered pursuant to this Agreement or non-fulfillment of any undertaking, covenant or agreement on the part of such indemnifying party hereunder.

(f) The party seeking indemnification under subsection (c), (d) or (e) above shall give the other party prompt notice of any claims which may give rise to liability for indemnification hereunder and the other party shall have

-11-

the right to control the defense of any action or proceeding at its sole cost and expense. Should the party against which indemnification is being sought fail to defend any such action, then, in addition to any other remedies, the party seeking indemnification hereunder may settle (provided that before accepting a settlement it shall give the other party not less than fifteen (15) days' prior notice of the terms thereof and the right to reject the same and, instead, to undertake such defense) or defend such action or proceeding through legal counsel of its own choosing.

Section 11. <u>Bulk Sales Requirements</u>. Seller and Purchaser hereby waive the requirements of Article Six of the Uniform Commercial Code, as may be applicable. Seller agrees to indemnify Purchaser and hold Purchaser harmless from and against any claims of creditors resulting from such noncompliance with the bulk sales notification provisions imposed by Article Six of the New York Uniform Commercial Code.

Section 12. <u>Miscellaneous</u>.

(a) Any failure of Seller, on the one hand, and Purchaser, on the other hand, to comply with any obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

(b) All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by telex or telecopy, on the date of delivery, or if mailed by registered or certified mail (return receipt requested), postage prepaid three days after deposit in the U.S. mails, to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(i) if to Seller, to

Coastal Petroleum New
York Inc.
2463 Westchester Avenue
Bronx, New York 10461
Attn: Robert Cirillo

with a copy to

LePenna & Tuckman, P.C.
271 North Avenue
New Rochelle, New York 10801
Attn: Michael LaPenna, Esq.

-12-

(ii) if to Purchaser, to

Cibro Petroleum/Bx., Inc.
1066 Zerega Avenue
Bronx, New York
Attn: P. James Massa, President

with a copy to

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

Any notice delivered personally or by telex or telecopy shall be followed within five days by written notice sent via certified mail, return receipt requested.

(c) This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement is not intended to confer upon any other person (other than affiliates of Purchaser with respect to the covenant contained in Section 8(f) of this Agreement) except the parties hereto any right or remedies hereunder.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof, as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

(e) This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

(f) The section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties and shall not affect in any way the meaning or interpretation of this Agreement.

(g) This Agreement, including the schedules hereto and the documents and instruments referred to herein, embodies the entire agreement and understanding of the parties

-13-

hereto in respect of the subject matter contained herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

COASTAL PETROLEUM NEW YORK INC.

By: _____
    Name:
    Title:

CIBRO PETROLEUM/BX.,
    INC.

By: _____
    Name:
    Title:


Accepted and Agreed
to with respect to Section 8(i):


_____
Robert N. Cirillo

<u>SCHEDULE I</u>

to Option Agreement made by

and between

COASTAL PETROLEUM/NEW YORK, INC. and CIBRO PETROLEUM/BX., INC.

<u>ROLLING STOCK</u>

| <u>Vehicle #</u> | <u>License Plate</u> | <u>V.I.N.</u> | <u>Make & Year</u> |
|---|---|---|---|
| Truck 1 | 56919 GM | 74559 | White 1972 |
| Truck 3 | 74813 GP | AAF3SBB818687 | White 1974 |
| Truck 7 | 56915 GM | 708288 | White 1968 |
| Truck 15 | 56914 GM | 695634 | White 1968 |
| Truck 11 | (no plate) | 450A5485 | White 1960 |
| Van 6 | 29748 GJ | 1FTDE14Y9EHA26372 | Ford 1984 |
| Van 8 | 29750 GJ | 1FTDE14Y5EHA28801 | Ford 1984 |
| Van 10 | 29749 GJ | 1FTDE14Y7EHA26371 | Ford 1984 |

[Seller's Letter to Customers]


Dear Customer:

    We are pleased to announce that COASTAL PETROLEUM NEW YORK INC. ("Coastal") has transferred its fuel oil business to CIBRO PETROLEUM/BX., INC. ("Cibro"), one of the largest wholesale and retail fuel companies in the Metropolitan and Westchester areas.

    Coastal has for some time purchased its fuel oil requirements from Cibro. You can be assured that you will continue to receive the personal and efficient service that we have always provided in the past.

    We would appreciate your noting a change of telephone number to 212-824-5000 and entering same into your telephone book for future reference.

    Service contracts will continue to be honored. Deliveries and service will continue as in the past. We would appreciate your making all future payments for deliveries and/or services to CIBRO PETROLEUM/BX., INC.

                              Very truly yours,

                              COASTAL PETROLEUM NEW
                               YORK INC.

                              By:_____

SCHEDULE III

[Purchaser's Letter to Customers]


Dear Coastal Customer:

On behalf of all of us at Cibro Petroleum/Bx., Inc. ("Cibro"), we take pride in welcoming you to our oil heating family. By now you should have received a letter from Coastal Petroleum New York Inc. indicating that it has transferred its fuel oil business to Cibro.

For over 60 years, Cibro has dedicated itself to the retailing of petroleum products in the New York area combining both individual service with competitive prices for quality fuel oil.

We take pride in the fact that our fuel oil is delivered in our own fleet of trucks thereby assuring you both quality and quantity. We maintain our own service department on a full 7 days per week basis in the winter months and 6 days per week in the summer months. Our service department is fully equipped to service all grades of oil.

Within the next few weeks we hope to contact you and personally welcome you. In the interim, should you have any quesitons or desire any additional information, please feel free to call the undersigned. In the future when calling for fuel oil or service please call 212-824-5000. In the future all outstanding invoices are to be paid to Cibro Petroleum/Bx., Inc.

Again, on behalf of Cibro and all our employees, we welcome you and look forward to serving you.

                              Very truly yours,

                              CIBRO PETROLEUM/BX., Inc.


                              William V. Cirillo
                              Vice President

## Exhibit F

**TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT** [Sellers], [Shareholders of TWC, Petroleum Marketing, Inc.], [Marchetti, Gregory] as RELEASOR, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration received from the persons, corporations and partnerships listed on the annexed Schedule I as RELEASEES, receipt whereof is hereby acknowledged, releases and discharges the RELEASEES, RELEASEES' officers, directors, shareholders, partners, heirs, executors, administrators, successors and assigns (as applicable) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, including but not limited to all claims or counterclaims asserted in the actions listed on the attached Schedule II and all claims or counterclaims which could have been asserted based upon the facts alleged in such actions.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

**IN WITNESS WHEREOF,** the RELEASOR has hereunto set RELEASOR'S hand on the _____ day of _____, 19___

**IN THE PRESENCE OF:**

_____L.S.

STATE OF                )  
                             :   ss.:  
COUNTY OF             )

         On _____, 19____ before me personally came _____ to me known, and known to me to be the individual(s) described in, and who executed the foregoing RELEASE, and duly acknowledged to me that he executed the same.


                                 _____

## Exhibit G

**TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT** [The Williams Company], [Petroleum Marketers, Inc.] A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration received from the persons, corporations and partnerships listed on the annexed Schedule I, as RELEASEES, receipt whereof is hereby acknowledged, releases and discharges the RELEASEES, RELEASEES' officers, directors, shareholders, partners, heirs, executors, administrators, successors and assigns (as applicable) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, including but not limited to all claims or counterclaims asserted in the actions listed on the attached Schedule II and all claims or counterclaims which could have been asserted based upon the facts alleged in such actions.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

**IN WITNESS WHEREOF,** the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on _____, 19____.

**IN PRESENCE OF:**

_____

By:_____

STATE OF                )

                         : ss.:

COUNTY OF             )

        On _____, 19 ____ before me personally came _____ to me known, who, by me duly sworn, did depose and say that deponent resides at _____ _____, that deponent is the _____ _____ of _____ the corporation described in, and which executed the foregoing RELEASE, that deponent knows the seal of the corporation, that the seal affixed to the RELEASE is the corporate seal, that it was affixed by order of the board of the corporation; and that deponent signed deponent's name by like order.

                                _____

### Exhibit H

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT [Shareholders or Partners of Buyers], [Massa] as RELEASOR, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration received from the persons and corporations listed on the annexed Schedule I as RELEASEES, receipt whereof is hereby acknowledged, releases and discharges the RELEASEES, RELEASEES' officers, directors, shareholders, heirs, executors, administrators, successors and assigns (as applicable) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, including but not limited to all claims or counterclaims asserted in the actions listed on the attached Schedule II and all claims or counterclaims which could have been asserted based upon the facts alleged in such actions.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

IN WITNESS WHEREOF, the RELEASOR has hereunto set RELEASOR'S hand on the _____ day of _____, 19___.

IN PRESENCE OF:

_____ L.S.

STATE OF                )
                             : ss.:

COUNTY OF            )

         On _____, 19\_\_\_\_ before me personally came _____ to me known, and known to me to be the individual(s) described in, and who executed the foregoing RELEASE, and duly acknowledged to me that he executed the same.

                                  _____

Exhibit I

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT [Buyers and other corporations - e.g. CPPI, Steamship, Theall Road] A corporation organized under the laws of the State of [New York] [other state], as RELEASOR, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration received from the persons and corporations listed on the annexed Schedule I, as RELEASEES, receipt whereof is hereby acknowledged, releases and discharges the RELEASEES, RELEASEES' officers, directors, shareholders, partners, heirs, executors, administrators, successors and assigns (as applicable) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, including but not limited to all claims or counterclaims asserted in the actions listed on the attached Schedule II and all claims or counterclaims which could have been asserted based upon the facts alleged in such actions.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

IN WITNESS WHEREOF, the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on _____ , 19____.

_____

By: _____

# Exhibit C

## GUARANTY

GUARANTY, dated as of May 29 , 1987 among the corporations listed on the annexed Schedule I (collectively, the "Guarantors") in favor of William J. Cirillo ("Cirillo") as agent for himself, William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo, the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively, the "Sellers").

### W I T N E S S E T H

WHEREAS, pursuant to the terms of that certain Stock Purchase Agreement dated May 29, 1987 by and among the Sellers, the Guarantors and certain other parties signatory thereto (capitalized terms unless otherwise defined shall have the meaning set forth in such Stock Purchase Agreement), the Sellers are selling the Stock to the Guarantors and receiving promissory notes (the "Notes") from certain of the Guarantors as partial payment for the Stock;

WHEREAS, in connection with the purchase and sale of the Stock, including the shares of Stock issued by the Guarantors, the Sellers desire that the Guarantors guarantee payment of the Notes when due, and

WHEREAS, the Guarantors have determined that it is in their best interests to guarantee payment of the Notes when due.

NOW, THEREFORE, the parties hereby agree as follows:

1. **Guarantee.** Each of the Guarantors hereby guarantees the full and prompt payment of the principal of and interest on the Notes and each installment thereof, as and when the same shall be due and payable, whether in accordance with the stated schedule of payments, by reason of acceleration or otherwise.

2. **Joint Liability.** This Guaranty may be enforced against any one of the Guarantors separately or against any or all Guarantors jointly.

3. **Security.** In order to secure the performance of the Guarantors in accordance with the terms of this Guaranty, each Guarantor hereby grants to Cirillo a security interest in the shares of Stock issued by it (the "Pledged

Stock") as set forth on the annexed Schedule II and, as of the date hereof, delivers stock certificates representing such shares to the Escrow Agent to be held in escrow in accordance with the terms of that certain Escrow Agreement of even date herewith among certain parties including Cirillo, the Guarantors and the Escrow Agent.  Such pledge shall create a valid perfected security interest in the Pledged Stock in favor of Cirillo, and Cirillo shall be entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York with respect to the Pledged Stock.  The security interest in the Pledged Stock (other than the Pledged Stock issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) is simultaneously being assigned to the Banks.

4. <u>Guarantor's Merger, Sale of Stock</u>.  In the event a Guarantor is merged into or consolidated with any person or entity or in the event the stock of a Guarantor is acquired by a non-affiliated person or entity, such Guarantor's obligations under this Guaranty shall terminate and the security interest created hereby shall terminate with respect to the shares of Pledged Stock issued by such Guarantor.

5. <u>Term of Guaranty</u>.  Subject to the provisions of Section 4 hereof, this Guaranty shall remain in full force and effect until each of the Notes has been paid in full, whether by the maker thereof or the Guarantors.

6. <u>Assignment</u>.  In the event that Cirillo assigns one or more of the Notes, the rights of the Sellers hereunder shall be deemed to be assigned with respect to such Note(s) on an unsecured basis only and the assignee(s) of such Note(s) and of such rights hereunder will have no security interest or other right, interest or claim to the Pledged Stock.

7. <u>Extension of Time</u>.  The Guarantors' liability hereunder shall not be affected by reason of any extension of time for payment of any installment granted by Sellers to one or more of the makers of the Notes.

8. <u>Waiver</u>.  The Guarantors hereby waive notice of acceptance, non-performance, presentment, dishonor, protest, or default and any other notice and diligence in collection or bringing suit and the holder of the notes may accept partial payment without discharging the Guarantors from their obligations hereunder.

9. <u>Subrogation</u>.  Until the Notes are paid in full, the Guarantors shall not enforce their rights of subrogation or otherwise become entitled to any payment by the

makers of the Notes or to any property of the makers of the Notes by virtue of any payment or performance by the Guarantors hereunder.

10. _Notices_. All notices, demands or other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Cirillo, or the Sellers, to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

with a copy to:

La Penna and Tuckman
271 North Avenue
New Rochelle, New York  10801
Attn:  Michael La Penna, Esq. or
       Warren Gould, Esq.

If to Guarantors, to:

Cibro Terminals Inc.
1066 Zerega Avenue
Bronx, New York  10462
Attn:  P. James Massa, President

with a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn:  Marshall N. Lester, Esq.

11. _Governing Law_.  This Guaranty shall be governed by and construed in accordance with the laws of the State of New York.

12. _Counterparts_.  This Guaranty may be executed in any number of counterparts, each of which shall be deemed

-3-

an original, and all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Guaranty as of the date first above written.

> C. & J. CIRILLO CORP.
> CIBRO GASOLINE CORP.
> CIBRO PETROLEUM/BKLYN., INC.
> CIBRO PETROLEUM/BX., INC.
> CIBRO PETROLEUM INC.
> CIBRO PETROLEUM/L.I., INC.
> CIBRO PETROLEUM/WESTCHESTER, INC.
> CIBRO SALES CORP.
> CIBRO SOUTH SHORE TERMINAL CORP.
> CIBRO SYRACUSE PROPERTY, CORP.
> CIBRO TERMINALS, INC.
> CIRILLO BROS. CHATTERTON, INC.
> CIRILLO BROS. LAND CORP.
> FORSEE REALTY CORP.
> LANIMRET TERMINAL INC.
> OCEANA TERMINAL CORP.
> WINIMO REALTY CORP.

By: _____
William V. Cirillo, Vice President of each of the above-named corporations.

> BLACKROCK AVENUE REALTY CORP.
> CIBRO LINDENHURST PROPERTY CORP.
> WATSON AVENUE REALTY INC.
> JACON REALTY INC.

By: _____
William V. Cirillo, President of each of the above-named corporations

> MONTAUK OIL TRANSPORTATION CORP.

By: _____
William V. Cirillo, Vice President

-4-

— Blackrock Avenue Realty Corp.
C. & J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

SCHEDULE II

| Name of Corporation | Number of Pledged Shares |
|---|---|
| Blackrock Avenue Realty Corp. | 20 |
| C. & J. Cirillo Corp. | 166.67 |
| Cibro Gasoline Corp. | 4 |
| Cibro Lindenhurst Property Corp. | 20 |
| Cibro Petroleum/Bklyn., Inc. | 57.06735 |
| Cibro Petroleum/Bx., Inc. | 136.633 |
| Cibro Petroleum Inc. | 4 |
| Cibro Petroleum/L.I., Inc. | 20 |
| Cibro Petroleum/Westchester, Inc. | 20 |
| Cibro Sales Corp. | 15 |
| Cibro South Shore Terminal Corp. | 20 |
| Cibro Syracuse Property, Corp. | 20 |
| Cibro Terminals, Inc. | 234.23231 |
| Cirillo Bros. Chatterton, Inc. | 20 |
| Cirillo Bros. Land Corp. | 333.334 |
| Forsee Realty Corp. | 266.667 |
| Jacon Realty Inc. | 15 |
| Lanimret Terminal Inc. | 4 |
| Montauk Oil Transportation Corp. | 83.33421 |
| Oceana Terminal Corp. | 15 |
| Watson Avenue Realty Inc. | 20 |
| Winimo Realty Corp. | 37.5315 |

# Exhibit D

Agreement made this 5th day of March, 1993 by and between William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo ("Plaintiff"; William J. Cirillo in his capacity as agent being referred to herein as "Agent") and Montauk Oil Transportation Corp. ("Montauk").

## W I T N E S S E T H

WHEREAS:

A.    Montauk is a party to a certain Guaranty dated as of May 29, 1987 in favor of Plaintiff ("Guaranty");

B.    A certain Stock Purchase Agreement, dated May 29, 1987 ("Stock Purchase Agreement"), was executed by and among Plaintiff, the Agent, Montauk and certain sister corporations and partnerships of Montauk (collectively, the "Cibro Entities");

C.    Montauk is and has been in default of the Stock Purchase Agreement and Guaranty;

D.    The Cibro Entities are and have been in default under the Stock Purchase Agreement and their respective guaranties which were executed in favor of Plaintiff.

E.    Plaintiff has commenced a lawsuit against Montauk in the Supreme Court of the State of New York, County of Bronx,

DOC 0725043

Index No.: 04569/92 ("Action") in respect of amounts claimed to be owing under the Guaranty;

F.    The parties acknowledge that as of February 28, 1993, the then outstanding principal balance of the Notes (as defined in the Guaranty) is and was $1,378,481.23, that the applicable prepayment fee on the Notes as of the date hereof is $64,889.52 (the "Prepayment Fee"; the outstanding principal balance plus the Prepayment Fee, a total of $1,443,370.75, is referred to herein, collectively, as the "Principal Balance"); and that interest on the Notes for the period December 1, 1991 through March 5, 1993 is $126,312.92 ("Accrued Interest");

G.    The parties acknowledge that due to the Cibro Entities' failure to pay interest currently since November 30, 1991, Plaintiff was deprived of the use of such interest payments, and that Plaintiff should be entitled to receive, and hereby is granted, the sum of $9,157.69 in respect thereof (the "Additional Interest").

H.    Montauk holds claims and/or rights against The Steamship Mutual Underwriting Association (Bermuda) Ltd. in connection with losses suffered by Montauk arising out of the explosion of the barge owned by Montauk known as the "Cibro Savannah" (the "London Insurance Claim"); and

I.    The parties desire to settle the Action on the basis hereinafter set forth.

NOW THEREFORE, it is agreed as follows:

1.    <u>Settlement of Action.</u>

(a)  The parties shall, simultaneously with the execution of this Agreement, enter into a stipulation to discontinue the Action with prejudice, such stipulation to be in the form annexed hereto as Exhibit A.  The parties shall cooperate fully with one another and shall execute such further documents as may be necessary and proper to effectuate the discontinuance of the Action.

(b)  Plaintiff shall, simultaneously with the execution of this Agreement, deliver to Montauk a release in the form annexed hereto as Exhibit B.

(c)  Plaintiff acknowledges that Montauk's undertakings herein are being given in complete satisfaction and extinguishment of Montauk's obligations under the Guaranty and related instruments.  In that regard, the parties hereby agree that effective as of the date hereof, Montauk shall be, and hereby is, released from, and shall have no further obligation whatsoever to Plaintiff under the Stock Purchase Agreement, the Guaranty, and a certain Escrow Agreement, dated May 27, 1987, among Plaintiff, Montauk, the Cibro Entities and Carro, Spanbock, Kaster & Cuiffo as Escrow Agent.  In connection with the foregoing, Plaintiff hereby releases its security interest in and to (a) any and all shares of Montauk stock currently held by the Escrow Agent as security under the terms of the Guaranty; and (b) 28.72% of the number of shares of common stock of each of the Cibro Entities which shares currently are held by the Escrow Agent as security under the terms of the Guaranty.

## 2. Consideration for Settlement.

(a)  Simultaneously herewith and in partial settlement of the action, Montauk shall deliver to Plaintiff the sum of $550,000, which amount shall be applied first against all Accrued Interest, then to the Additional Interest, then to the Prepayment Fee, and finally to the balance of the Principal Balance. It is understood that the balance of the Principal Balance after the foregoing application of the funds is $1,028,841.35 (the "Adjusted Principal Balance"). Payment shall be allocated pro rata among all outstanding Notes. Notwithstanding anything stated in the Notes, it is agreed that interest shall hereafter accrue on the Adjusted Principal Balance at the rate of 4% per annum. Plaintiff agrees that the Cibro Entities shall be treated as third party beneficiaries of the foregoing agreement relating only to the Principal Balance and the adjusted interest rate, and Plaintiff agrees to accept an amendment to the Notes to reflect a reduction in interest rate should the Cibro Entities at any time thereafter request.

(b)  Until such time as all principal, prepayment fees and interest in respect of the Notes have been paid in full, Montauk further agrees that if, as and when it shall hereafter receive cash proceeds for its account from the "Secured Assets," as such term is defined in the Security Agreement, a copy of which is annexed hereto as Exhibit C, it shall promptly pay such proceeds to Plaintiff (net of Montauk's direct tax obligations and its shareholders' subchapter S tax obligations which may

arise from the receipt or recovery of proceeds from the Secured
Assets) for application against the Notes. Such sums will be
allocated pro rata among the outstanding Notes and will be
applied first to interest accrued thereon through the date of
such payments and then to the principal balance and prepayment
fees then outstanding. Montauk's obligations under this Section
2(b) shall cease at such time as (i) all principal, prepayment
fees and interest under the Notes have been paid in full, and
(ii) all obligations, if any, pursuant to Section 8(b) have been
paid in full.

(c) Except for its obligation to apply to the
reduction of principal, prepayment fees and interest under the
Notes all cash proceeds derived from the Secured Assets, and its
potential reimbursement obligation pursuant to Section 8(b),
Montauk shall have no other obligation whatsoever with respect to
the Notes. It is understood that upon Plaintiff's receipt of
cash proceeds derived from the Secured Assets, Plaintiff shall
release the equivalent pro rata amount of the number of shares of
common stock of each of the Cibro Entities which shares then are
being held by the Escrow Agent as security under the terms of the
Guaranty. There shall be a proportionate release of shares from
escrow with respect to any Cibro Entity which may hereafter pay
down all or a portion of its Note.

3.  Security.

(a)  In order to secure its obligation to make the payments provided for in Section 2(b), Montauk is simultaneously herewith delivering to Plaintiff a Security Agreement in the form annexed hereto as Exhibit C, granting to Plaintiff a security interest in certain assets of Montauk, all as more fully set forth in the Security Agreement.

(b)  Montauk agrees that Plaintiff should be included on the service lists of all counsel who in any way represent Montauk's interests in the Secured Assets, and agrees to so instruct all such counsel.  In addition, such counsel (currently William Losquadro of Connell, Losquadro & Zerbo) shall be instructed to make themselves available to Plaintiff on a quarterly basis for verbal updates and progress reports.

4.  Application of Available Funds.

(a)  As used herein, the term "Available Funds" shall mean all funds derived from sources other than Secured Assets.  Until such time as Montauk's obligations under Section 2(b) have been satisfied in full, Montauk agrees that Available Funds shall be used solely in connection with "Claims Related Activities" and "Ordinary Course Activities."

(b)  The term "Claims Related Activities" shall include all activity undertaken by Montauk in respect of claims (whether governmental or private) asserted either by or against Montauk, including all claims which presently exist, whether known or unknown and whether liquidated or unliquidated, as well

as all claims which may hereafter arise. Claims Related Activities may take the form of litigation, arbitration, negotiation or otherwise. Available Funds may be used for any purpose whatsoever in connection with a Claims Related Activity, including without limitation payments in settlement or other disposition of claims as well as payments of expenses incurred in connection with the prosecution, defense and/or disposition of any claim. Except as expressly provided in the Security Agreement, Montauk shall have complete control and full decision-making authority with respect to the prosecution, defense and disposition of, and all other matters relating to, each and every such claim. Montauk will provide the Agent with written reports no less often than quarterly on the status of such claims, including funds expended in connection therewith. As used herein, the term "Claims" shall include without limitation all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands, whether in law, admiralty or equity. Montauk shall not settle the London Insurance Claim for an amount less than the amount then owing to Plaintiff under this Agreement without the consent of Plaintiff, provided that if the consent is not granted, Montauk will have the right to assign over the London Insurance Claim to Plaintiff in exchange for a credit under this Agreement equal to the amount of the proposed settlement. Montauk agrees to use good faith efforts to

prosecute the London Insurance Claim and recognizes Plaintiff's status as the direct beneficiary of any recovery in respect of the London Insurance Claim. Montauk shall not dismiss, discontinue and/or adjourn the London Insurance Claim without first consulting with Plaintiff of its intention to take any of such actions, it being understood that Plaintiff's consent is not required.

(c) The term "Ordinary Course Activities" shall include those types of activity, whether operational, administrative or otherwise, in which Montauk historically has been engaged and/or in which a corporation in liquidation reasonably would be anticipated to engage. Attached as Exhibit D is an expense budget for calendar year 1993 reflecting anticipated expenses in respect of Ordinary Course Activities. The expense budget in future years may be increased only to reflect increases in fees and costs charged to Montauk by third parties for services performed or goods sold (e.g., an increase in accounting fees for service in preparation of Montauk's tax returns). If expenditures in any given year exceed the amount budgeted for that year by more than 15%, then the consent of the Agent will be required in order to incur such expenditure, which consent may not be unreasonably withheld. The foregoing notwithstanding, it is expressly understood that taxes, with respect to income or otherwise and whether federal, state or local, are not part of the budget, that Montauk shall have the absolute right to pay any and all taxes as same fall due, including payments to share-

holders to cover subchapter S taxes, and that Montauk may pay out of the Secured Assets only those direct tax obligations of Montauk and subchapter S tax obligations of its shareholders which may arise from the receipt or recovery of proceeds from the Secured Assets.

(d)  During the term of this Agreement, absent the prior written consent of the Agent, Montauk will not pay salaries, dividends or bonuses to shareholders or their family members, whether same is paid to them in their capacities as shareholders, directors or officers of Montauk or otherwise.  The foregoing will not prohibit payments to cover taxes imposed on shareholders by virtue of Montauk's "subchapter S" status. Monthly payments of $1,000 to Paul Cirillo for services rendered in connection with on-going litigation are permissible from monies received from sources other than Secured Assets.

5.  Agent.

Unless and until such time as Montauk receives written notice signed by each of the principals (other than William J. Cirillo) on behalf of whom the Agent is serving to the effect that the Agent's authority has been withdrawn, Montauk shall have the absolute right to deal solely with the Agent with respect to all matters pertaining to this Agreement.

6.  Notices.

All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, given by

prepaid telegram, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Plaintiff to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

With a copy to:

Kaye, Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, New York 10022
Attn: Herbert Edelman, Esq.

If to Montauk to:

Montauk Oil Transportation Corp.
1066 Zerega Avenue
Bronx, New York 10462

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

The persons and addresses to which mailing must be made may be changed from time to time by a notice given in the same manner. All notices shall be deemed to have been given as of the date of personal delivery or transmittal of the telegram or as of the date three days after mailing thereof.

7. **Expenses**.

(a) Each of the parties hereto shall pay the fees and expenses of their respective counsel and all other expenses incurred by such party incident to the negotiation, preparation and execution of the Agreement.

(b)  Montauk guarantees reimbursement to Plaintiff
for any and all expenses, legal or otherwise, which Plaintiff may
incur hereinafter arising from or in connection with Montauk's
default under or breach of this Agreement, _except_ _that_, Montauk
is not liable to Plaintiff for such expenses if Plaintiff is
unsuccessful in any action it may bring against Montauk arising
from or in connection with Montauk's alleged default under or
breach of this Agreement.   In the event that Plaintiff is
unsuccessful in any such action, it agrees to reimburse Montauk
for any and all expenses incurred by Montauk in connection with
such action.

8.   Entire Agreement.

This Agreement and the Exhibits annexed hereto set
forth the entire understanding and agreement between the parties
hereto with reference to the subject matter hereof and supersede
any and all other agreements, understandings and representations
heretofore made with respect to the subject matter hereof.  This
Agreement may not be modified, amended or terminated nor may any
term be waived except by a written instrument executed by all
parties.

9.   Benefits.

This Agreement shall bind and inure solely to the
benefit of the parties hereto and their respective heirs,
personal representatives, executors, representatives and
successors and shall not inure to the benefit of any third party.

10. <u>Governing Law</u>.

This Agreement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the internal laws of the State of New York.

11. <u>Counterparts</u>.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12. <u>Captions</u>.

The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day first above written.

William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo

Montauk Oil Transportation Corp.

By: _John Bull_

Its: _V P_

10.  Governing Law.

This Agreement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the internal laws of the State of New York.

11.  Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.  Captions.

The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day first above written.

_____
William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo

Montauk Oil Transportation Corp.

By: _____

Its: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------X
WILLIAM J. CIRILLO, as Agent for
himself the Estate of Constance
Cirillo, Jacquelyn Cirillo, Robert
Cirillo and William J. Cirillo and
Barbara Cirillo as Trustees for
Janice Cirillo,

                Plaintiffs,

     -against-

MONTAUK OIL TRANSPORTATION CORP.,

               Defendant.
------------------------------------X

Index No. 14177/92

STIPULATION
DISCONTINUING ACTION
WITH PREJUDICE

      IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the attorneys of record for all the parties to the above-entitled action, that whereas no party hereto is an infant or an incompetent person for whom a committee or conservatee has been appointed, and no person not a party hereto has an interest in the subject matter of the action, the above-entitled action be, and the same hereby is, discontinued with prejudice and without costs to either party as against the other. This stipulation may be filed without further notice with the Clerk of the Court.

Dated: New York, New York
       March _____, 1993

KAYE, SCHOLER, FIERMAN,
  HAYS & HANDLER
Attorneys for Plaintiffs
425 Park Avenue
New York, New York 10022
(212) 836-8000

CARRO, SPANBOCK, KASTER & CUIFFO
Attorneys for Defendant
1345 Avenue of the Americas
New York, New York 10105-0065
(212) 830-9300

EXHIBIT A

EXHIBIT B

RELEASE

To all to whom those Presents shall come or may Concern, Know That William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo, as RELEASOR, in consideration of the sum of one dollar ($1.00) plus other good and valuable consideration received, receipt whereof is hereby acknowledged, releases and discharges Montauk Oil Transportation Corp., its directors, officers, shareholders, agents, representatives and employees as RELEASEE, the RELEASEE'S successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgements, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the RELEASEE the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or. hereafter can, shall or may have, for, upon, or by reason of any act, omission or event, whether known or unknown, whatsoever, which took place, from the beginning of the world to the day of the date of this RELEASE, relating to (1) causes of action asserted in the action entitled William J. Cirillo, as Agent for himself et al. v. Montauk Oil Transportation Corp., Index No.: 04569/92 in the Supreme Court of the State of New York, County of Bronx and (2) any and all matters arising out of (a) that certain Stock Purchase Agreement dated May 29, 1987 among RELEASOR, RELEASEE, certain sister corporations and partnerships of RELEASEE ("Cibro Entities") and certain other parties identified therein and (b) that certain Guaranty in favor of RELEASOR dated May 29, 1987 among RELEASEE and the Cibro Entities.

This RELEASE expressly does not apply to claims and/or causes of action which hereafter may be asserted by RELEASOR against RELEASEE which may arise out of that certain Agreement, dated March ___, 1993 among RELEASOR and RELEASEE.

This RELEASE may not be changed orally.

This RELEASE is to be governed and construed under the laws of the State of New York without reference to conflict of laws.

IN WITNESS WHEREOF, the RELEASOR has hereunto set RELEASOR'S hand on the _____ day of March, 1993.

In presence of:

_____
William J. Cirillo, as Agent for
himself, the Estate of Constance
Cirillo, Jacquelyn Cirillo, Robert Cirillo
and William J. Cirillo and Barbara Cirillo
as Trustees for Janice Cirillo

DOC #744861

SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the "Security Agreement"), made as of this 5th day of March, 1993, by and between Montauk Oil Transportation Corp., a New Jersey corporation ("Debtor"), and William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo (collectively, the "Secured Party"; William J. Cirillo in his capacity as Agent being sometimes referred to herein as the "Agent").

W I T N E S S E T H:

WHEREAS, Debtor and Secured Party are entering into an agreement of even date herewith (the "Agreement"; capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement) pursuant to which the Action is to be settled on the terms set forth therein; and

WHEREAS, pursuant to the Agreement, Debtor is agreeing to grant to Secured Party a first lien and security interest in certain of Debtor's assets, and Debtor and Secured Party have agreed to enter into this Security Agreement.

NOW, THEREFORE, the parties hereto agreed as follows:

1. <u>Security Interest</u>. Debtor does hereby convey, transfer, assign, set over and grant unto the Secured Party, as

EXHIBIT C

security for Debtor's payment of its obligations to Secured Party under Sections 2(b) and 8(b) of the Agreement, a continuing and unconditional first lien and security interest (the "Security Interest") in and to (a) all of Debtor's right, title and interest in all claims or rights that Debtor holds against The Steamship Mutual Underwriting Association (Bermuda) Ltd. (the "Insurer") in connection with losses suffered by Debtor arising out of the explosion of the barge owned by Debtor known as the "Cibro Savannah" (collectively, the "London Insurance Claim"), and (b) Debtor's trade receivable from Cibro Petroleum Products, Inc. in the amount of $3,341,475 (the "Receivable"). The assets described in the foregoing subsections (a) and (b) are referred to, collectively, as the "Collateral".

2.  Indebtedness Secured. This Security Agreement and the Security Interest created hereby secure the payment by Debtor, when due and payable, of sums payable to Secured Party pursuant to Sections 2(b) and 8(b) of the Agreement (the "Indebtedness").

3.  Financing Statements. Debtor agrees to execute and deliver to Secured Party such Financing Statements or other documents or instruments as are necessary to grant to Secured Party a valid perfected first lien and security interest in the Collateral. Debtor agrees to perform all acts which Secured Party may reasonably request to enable Secured Party to receive and maintain a valid perfected first lien and security interest in the Collateral in order to secure payment of the Indebtedness. Secured Party is

-2-

authorized to file a copy of any such Financing Statements in any jurisdiction(s) as it deems appropriate from time to time in order to perfect the Security Interest.

4. <u>Prosecution and Settlement of Claims</u>.  Debtor will control the prosecution of, and all other matters relating to the London Insurance Claim and the collection of the Receivable, including, without limitation, the expenditure of funds in respect thereof.  Debtor will not settle the London Insurance Claim for an amount less than the amount then owing to Secured Party under the Agreement without the consent of the Secured Party, provided that if the consent is not granted, Debtor will have the right to assign over the London Insurance Claim to the Secured Party in exchange for a credit under the Agreement equal to the amount of the proposed settlement.  Debtor agrees to use good faith efforts to prosecute the London Insurance Claim and recognizes Secured Party's status as direct beneficiary of any recovery in respect of the London Insurance Claim.

5. <u>Events of Default</u>.  Each of the following shall constitute an event of default (an "Event of Default") hereunder:

(a)  Debtor shall fail to pay all or any portion of the Indebtedness when due and payable in accordance with the terms of Sections 2(b) and/or 8(b) of the Agreement; or

(b)  Debtor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator, (ii) make a general assignment for the benefit of creditors, (iii) be adjudi-

-3-

cated a bankrupt or insolvent, or (iv) file a voluntary petition in bankruptcy or petition or file any answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency proceedings; or

(c)   An order, judgment or decree shall be entered approving a petition seeking reorganization of Debtor or appointing a receiver, trustee or liquidator for Debtor for all or substantially all of Debtor's assets, and such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) consecutive days; or

(d)   Any attachment or levy against the Collateral or any other occurrence which inhibits Secured Party's free access to the Collateral.

6.   <u>Remedies</u>.

(a)   Upon the occurrence of an Event of Default hereunder, and the failure by Debtor to cure such Event of Default within ten (10) days after a written demand to cure is issued by the Secured Party, the Secured Party may, at its option, do any one or more of the following:

(i)   Either personally, or by means of a court appointed receiver, take possession of all or any of the Collateral and exclude therefrom Debtor and all others claiming under Debtor, and thereafter exercise all rights and powers of Debtor with respect to the Collateral or any part thereof.   In the event the Secured Party demands, or attempts to take possession of the Col-

lateral in the exercise of any rights under this Security Agreement, Debtor promises and agrees to promptly turn over and deliver complete possession thereof to the Secured Party;

(ii)  Without notice to or demand upon Debtor, make such payments and do such acts as Secured Party may deem necessary to protect its Security Interest in the Collateral;

(iii)  Require  Debtor  to  take  all  actions necessary to deliver the Collateral to the Secured Party, or an agent or representative designated by it;

(iv)  Sell or otherwise dispose of the Collateral at a private or public sale, without having the Collateral at the place of sale, and upon terms and in such manner as the Secured Party may determine.  The Secured Party may be a purchaser at any such sale; and

(v)  Exercise any remedies of a secured party under the Uniform Commercial Code of the State of New York or any other applicable law.

(b)  The  Debtor  agrees  that  any  notice  by  the Secured Party of the sale or disposition of the Collateral or any other intended action hereunder, whether required by the Uniform Commercial Code or otherwise, shall constitute reasonable notice to the Debtor if the notice is mailed by regular or registered mail, postage prepaid, at least seven days before the action to the Debtor's  address  as  specified  in  Section 8  of  this  Security Agreement or to any other address which the Debtor has specified in

-5-

writing to the Secured Party as the address to which notices shall be given to the Debtor.

(c) The proceeds of any sale of the Collateral pursuant this Section shall be applied in accordance with the provisions of Sections 2(b) and 8(b) of the Agreement.

7. <u>Agent</u>.

Unless and until such time as Debtor receives written notice signed by each of the principals (other than William J. Cirillo) on behalf of whom the Agent is serving to the effect that the Agent's authority has been withdrawn, Debtor shall have the absolute right to deal solely with the Agent with respect to all matters pertaining to this Security Agreement.

8. <u>Notices</u>. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, given by prepaid telegram, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Secured Party to:

William J. Cirillo
19 Manager Circle
Pelham Manor, New York 10803

With a copy to:

Kaye Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, New York 10022
Attn: Herbert Edelman, Esq.

-6-

If to Debtor to:

Montauk Oil Transportation Corp.
1066 Zerega Avenue
Bronx, New York 10462

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

The persons and addresses to which mailing must be made may be changed from time to time by a notice given in the same manner. All notices shall be deemed to have been given as of the date of personal delivery or transmittal of the telegram or as of the date three days after mailing thereof.

9. <u>Expenses</u>. Each of the parties hereto shall pay the fees and expense of their respective counsel and all other expenses incurred by such party incident to the negotiation, preparation and execution of the Security Agreement.

10. <u>Entire Agreement</u>. This Security Agreement, the Agreement and the Exhibits annexed to the Agreement set forth the entire understanding and agreement between the parties hereto with reference to the subject matter here of and supersede any and all other agreements, understandings and representations heretofore made with respect to the subject matter hereof. This Security Agreement may not be modified, amended or terminated nor may any term be waived except by a written instrument executed by all parties.

-7-

11.  _Benefits_.  This Security Agreement shall bind and inure solely to the benefit of the parties hereto and their respective heirs, personal representatives, executors, representatives and successors and shall not inure to the benefit of any third party.

12.  _Governing Law_.  This Security Agreement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the internal laws of the State of New York.

13.  _Counterparts_.  This Security Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14. <u>Captions</u>. The section headings contained in this Security Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Security Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Security Agreement on the day first above written.

DEBTOR:

Montauk Oil Transportation Corp.

By:_____

SECURED PARTY:

_____
William J. Cirillo, as Agent for himself, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo and William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo

-9-

Exhibit "D"

MONTAUK OIL TRANSPORTATION CORP.
PROJECTED BUDGET FOR THE
YEAR ENDED DECEMBER 31, 1993

| | |
|---|---|
| INSURANCE EXPENSE | $ 2,500.00 |
| ACCOUNTING | 38,000.00 |
| LEGAL | 30,000.00 |
| COMMISSIONS | 12,000.00 |
| MISCELLANEOUS | 2,500.00 |
| | $85,000.00 |

# Exhibit E

# ESCROW AGREEMENT

ESCROW AGREEMENT (the "Escrow Agreement") made as of the 29th day of May, 1991, by and among the corporations listed on the annexed Schedule I ("Buyers"), CIBRO TERMINALS INC. as agent for the Buyers (sometimes referred to as "Buyers' Agent"), THE ESTATE OF CONSTANCE CIRILLO, JACQUELYN CIRILLO, ROBERT CIRILLO, WILLIAM J. CIRILLO AND BARBARA CIRILLO AS TRUSTEES FOR JANICE R. CIRILLO and WILLIAM J. CIRILLO, individually ("Sellers") and as agent for the Sellers (in such capacity, referred to as "Sellers' Agent"), and Carro, Spanbock, Raster & Cuiffo (the "Escrow Agent").

WHEREAS, pursuant to that certain Stock Purchase Agreement (the "Purchase Agreement") of even date herewith by and among Buyers, Sellers and certain other parties signatory thereto, Buyers are purchasing from Sellers the Stock (as defined in the Purchase Agreement);

WHEREAS, pursuant to the Purchase Agreement, certain of the Buyers are executing promissory notes (the "Notes"; each Buyer also being referred to herein as a "Maker" with respect to the Note executed by it) payable to Sellers' Agent in the aggregate principal amount of $2,161,015;

WHEREAS, pursuant to the Purchase Agreement and a certain Guaranty (the "Guaranty") of even date herewith each of the Buyers has guaranteed payment when due of each of the Notes (each Buyer being referred to herein as a "Guarantor" with respect to such obligations under the Guaranty);

WHEREAS, pursuant to the Purchase Agreement and the Guaranty, Buyers are to deposit the Stock in escrow as collateral security to secure the payment of the Notes and the performance of the Guaranty; and

WHEREAS, Sellers and Buyers desire that the Stock be held in escrow by the Escrow Agent on the terms and conditions set forth herein;

NOW, THEREFORE, the parties hereto hereby agree as follows:

1. **Escrow Agent.** Sellers and Buyers hereby appoint the law firm of Carro, Spanbock, Raster & Cuiffo, 1345 Avenue of the Americas, counsel for Buyers, New York, New York 10105 as the Escrow Agent for the purposes set forth herein and the Escrow Agent hereby accepts such appointment.

2. **Deposit of Shares.** Each Buyer hereby pledges to Sellers' Agent as collateral security for the payment of such Buyer's Note, if any, and its payment obligations under the Guaranty, the number of shares of such Buyer's capital stock listed on said Schedule II. Each Buyer hereby delivers to the Escrow Agent to hold for the benefit of Sellers' Agent, the stock certificates listed on the annexed Schedule II evidencing such shares together with duly executed stock powers endorsed in blank by each Buyer.

3. **Default.** If, at any time, payments of any installment of principal and/or interest under any one or more of the Notes shall not have been made in full when due, whether in accordance with its stated payment schedule, by reason of acceleration or otherwise, by the Maker(s) thereof and the time to cure such failure to make payment shall have expired and payment is not made within 10 days thereafter by one or more of the Guarantors Sellers' Agent shall have the right to have all the shares of Stock then held by the Escrow Agent delivered to him. The Escrow Agent shall, 10 days after receipt of a written demand by Sellers' Agent, together with evidence that a copy of the demand had been given to Buyers' Agent, deliver to Sellers' Agent the shares of Stock then held by the Escrow Agent, provided, however, that if, during such 10 day period, Buyers' Agent notifies the Escrow Agent in writing to withhold delivery of such shares of Stock, then the Escrow Agent shall not deliver such shares of Stock until the controversy is settled either by an agreement between Buyers and Sellers, or by a final judgment of a court of competent jurisdiction.

4. **Release of Shares from Escrow.** Subject to the provisions of Section 3 hereof, the Escrow Agent shall, not less than 45 days following each of the first seven anniversary dates of this Escrow Agreement, release to each Buyer 10% of the shares of Stock delivered into escrow by such Buyer, with the balance of the shares of stock to be released to the respective Buyers not less than 45 days following the eighth anniversary date of this Escrow Agreement. If the final Installment Payment (as defined in the Notes) on a Note is made by certified or bank check, the balance of the shares of stock to be released to the respective Buyer may be released immediately upon delivery to Sellers' Agent of such certified or bank check. Certificates evidencing the Stock so released shall be cancelled immediately upon receipt by Buyers and evidence that the certificates have been released shall be forwarded promptly to the Banks' Agent (as hereinafter defined).

5. **Termination of Escrow.** The escrow under this Escrow Agreement shall terminate upon delivery of all of the shares of Stock held by Escrow Agent in accordance with the provisions of this Escrow Agreement.

-2-

6. **Stockholders' Rights.** Provided the shares of Stock have not been released to Sellers' Agent in accordance with the provisions of Section 3 hereof, all rights in connection with or incident to the ownership of such shares of Stock shall be vested solely in the Buyers.

7. **Duties and Liabilities Limited.** The Escrow Agent is not a party to and shall not be bound by any agreements among the Buyers and Sellers. The Escrow Agent shall act as a depository only and shall not be required to take notice of any event or occurrence among Buyers and Sellers unless notified in writing as provided herein. The Escrow Agent shall be liable only for its own gross negligence or misconduct.

8. **No Liability for Documents.** The Escrow Agent is not responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any instrument or for the identity, authority or rights of any person executing it.

9. **Reliance.** The Escrow Agent may act in reliance upon any writing or instrument or signature which it, in good faith, believes to be genuine, may assume the validity and accuracy of any statement or assertion contained in such writing or instrument and may assume that any person purporting to give any writing, notice, advice or instructions in connection with the provisions hereof has been duly authorized to do so.

10. **Disputes.** In the event of any disagreement among Buyers and Sellers resulting in adverse demands being made in connection with this deposit in escrow, the Escrow Agent shall be entitled, at its option, to refuse to comply with any such claim or demand so long as the disagreement shall continue, and in so doing the Escrow Agent shall not become liable in any way to any person for its failure or refusal to comply with such conflicting or adverse claims until the rights of the claimants have been finally adjudicated or the differences adjusted among Buyers and Sellers, and the Escrow Agent.

11. **Counsel for Escrow Agent.** The Escrow Agent may consult legal counsel in the event of a dispute or as to its duties hereunder, and shall incur no liability and shall be fully protected in acting in accordance with the opinion of counsel.

12. **Assignment of Security Interest.** Contemporaneously with the execution and delivery of this Escrow Agreement, Sellers and the Escrow Agent entered into a letter agreement, dated of even date herewith (the "Letter Agreement"), with Manufacturers Hanover Trust Company as

-3-

agent (the "Banks' Agent") for itself, Citibank N.A. and National Westminster Bank USA (collectively, the "Banks") pursuant to which, among other things, (a) Sellers assigned to the Banks' Agent their security interest in the Stock (other than the shares of Stock issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) and (b) Sellers and the Escrow Agent agreed that, so long as any of Buyers' obligations to the Banks were outstanding under the Third Restructure and Amended and Restated Credit Agreement dated as of December 20, 1985 among certain of the Buyers and the Banks, if any to the extent that the Escrow Agent is required under the terms of this Escrow Agreement to deliver any certificates evidencing the Stock to Sellers' Agent, such certificates shall instead be delivered to the Banks' Agent. The parties hereto agree and acknowledge that said Letter Agreement is and is intended to be a supplement to and a modification of this Escrow Agreement. As used herein the term Escrow Agreement shall mean this Escrow Agreement, as supplemented and modified by said Letter Agreement, and the escrow is subject to the terms of said Letter Agreement.

13. **Notices.** All notices and communications hereundershall be in writing and shall be deemed to be duly given if deposited in the United States mail, registered or certified mail, return receipt requested, postage prepaid:

If to Sellers' Agent, to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

With a copy to:

LaPenna and Tuckman
271 North Avenue
New Rochelle, New York 10801

Attn: Michael LaPenna, Esq. or
      Warren Gould, Esq.

If to Buyers' Agent, to:

Cibro Terminals Inc.
1066 Zerega Avenue
Bronx, New York 10462

Attn: P. James Massa, President

-4-

With a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

If to Escrow Agent, to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn: Marshall N. Lester, Esq.

Any party may change the designated address by giving written notice to the other parties.

14. **Applicable Law.** This Escrow Agreement shall be construed and enforced in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties have executed this Escrow Agreement as of the date first above written.

SELLERS:

_____
William J. Cirillo

_____
William J. Cirillo, Executor of
the Estate of Constance Cirillo

_____
Jacquelyn Cirillo Roeckle

_____
Robert Cirillo

_____
Janice R. Cirillo

_____
William J. Cirillo, Trustee
f/b/o Janice R. Cirillo

-5-

_(signature)_

Barbara A. Cirillo, Trustee
f/b/o Janice R. Cirillo

BUYERS

C. & J. CIRILLO CORP.
CIBRO GASOLINE CORP.
CIBRO PETROLEUM/BKLYN., INC.
CIBRO PETROLEUM/BX., INC.
CIBRO PETROLEUM INC.
CIBRO PETROLEUM/L.I., INC.
CIBRO PETROLEUM/WESTCHESTER, INC.
CIBRO SALES CORP.
CIBRO SOUTH SHORE TERMINAL CORP.
CIBRO SYRACUSE PROPERTY, CORP.
CIBRO TERMINALS, INC.
CIRILLO BROS. CHATTERTON, INC.
CIRILLO BROS. LAND CORP.
FORSEE REALTY CORP.
LANIMRET TERMINAL INC.
OCEANA TERMINAL CORP.
WINIMO REALTY CORP.

By: _(signature)_
William V. Cirillo, Vice
President each of the
above-named corporations.


BLACKROCK AVENUE REALTY CORP.
CIBRO LINDENHURST PROPERTY CORP.
WATSON AVENUE REALTY INC.
JACON REALTY INC.

By: _(signature)_
William V. Cirillo, President
of each of the above-named
corporations


MONTAUK OIL TRANSPORTATION CORP.

By: _(signature)_
William V. Cirillo,
Vice President


ESCROW AGENT:
_(signature)_
Carro, Spanbock, Kaster & Cuiffo

-6-

SCHEDULE I

Blackrock Avenue Realty Corp.
C. & J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

William J. Cirillo

| COMPANY | NO. | VALUE |
|---------|-----|-------|
| Cibro Terminals, Inc. | A6 | 27.875 |
| Forsee Realty Corp. | A18; A24<br>B2 | 188<br>66.667 |
| Cirillo Bros. Transport Corp. | A11; A22; A37;<br>A44; A56 | 30.4 |
| Cibro Syracuse Property Corp. | 1 | 20 |
| C & J Cirillo Corp. | A18<br>B2 | 125<br>41.667 |
| Oceana Terminal Corp. | A1 | 15 |
| Zerega Trucking Inc. | A1; A4<br>B2 | 30<br>10 |
| Cibro Petroleum Bklyn., Inc. | A67; A78 | .685 |
| Cirillo Bros. Land Corp. | A13<br>B2 | 250<br>83.334 |
| Winimo Realty Corp. | A1; A3 | 37.5315 |
| Cirillo Bros. Chatterton Inc. | 1 | 20 |
| Lanimret Terminal Inc. | A1 | 4 |
| Watson Avenue Realty Inc. | 1 | 20 |
| Blackrock Avenue Realty Corp. | 1 | 20 |
| Cirillo Bros. Petroleum<br>of Albany, Inc. | A14 | 48 |
| Cirillo Bros. Petroleum<br>Co., Inc. | A23, A1, A4<br>B2 | 73.333<br>20 |

| COMPANY | NO. | VALUE |
|---|---|---|
| Cirillo Bros. Terminal, Inc. | A4, A5 | 116 |
| | B2 | 7.95835 |
| | B2 | 40 |
| Cirillo Bros. Oil Co., Inc. | A2, A23, A37, A34, A20, A11, A8, A17, A5, A14 | 17 |
| | B2, B11 | 11.04235 |
| Cirillo Bros. Sales Corp. | A1 | 15 |
| Cirillo Bros. Service Corp. | B2 | 33.334 |
| Cirillo Bros. Gasoline Corp. | A3 | 4 |
| Jacon Realty Inc. | A-1 | 15 |
| Montauk Oil Transportation Corp. | A-76 | 16.667 |
| | B-27 | 43.36203 |

## WILLIAM J. CIRILLO & BARBARA A. CIRILLO
## AS TRUSTEES FOR JANICE R. CIRILLO

| COMPANY | NO. | VALUE |
|---|---|---|
| Cirillo Bros. Transp. Corp. | A2 | 1. |
|  | A13 | 1. |
|  | A24 | 1. |
|  | A35 | 10. |
|  | A49 | 4. |
|  | A61 | .4 |
| Cibro So. Shore Terminal Corp. | 9 | 5. |
| Cibro Petrol/Westchester | 7 | 5. |
| Cibro Petrol/B'klyn | A83 | .19 |
|  | A25 | 1. |
|  | A40 | .50 |
|  | A51 | 1.17 |
|  | A59 | .50 |
|  | A72 | .50 |
| Forsee Realty Corp. | A20 | 3. |
| Cirillo Bros. Petrol of Long Island | 17 | 5. |
| Cibro Petroleum, Inc. | 10 | 1. |
| Cibro Lindenhurst Property Corp. | 4 | 5. |
| Montauk Oil Transportation Corp. | B·31 | 5.82642 |

## JACQUELYN CIRILLO

| COMPANY | NO. | VALUE |
| --- | --- | --- |
| Cirillo Bros. Transp. Corp. | A67 | 17.4 |
| Cibro So. Shore Term. | 22 | 5. |
| Cibro Petrol/Westchester | 18 | 5. |
| Cibro Petrol/B'klyn | A90 | 3.86 |
| Forsee Realty Corp. | A32 | 3. |
| Cibro Petroleum/L.I., Inc. | 31 | 5. |
| Cibro Petroleum, Inc. | 19 | 1. |
| Cibro Lindenhurst Property Corp. | 19 | 5. |
| Montauk Oil Transportation Corp. | B-29 | 5.82642 |

## CONSTANCE D. CIRILLO

| COMPANY | NO. | VALUE |
|---|---|---|
| Cirillo Bros. Transp. Corp. | A66 | 17.4 |
| Cibro So. Shore Term. Corp. | 20 | 5. |
| Cibro Petrol/Westchester | 16 | 5. |
| Cibro Petrol/B'klyn | A-88 | 3.86 |
| Forsee Realty Corp. | A-30 | 3. |
| Cibro Petrol./L/I. | 29 | 5. |
| Cibro Petroleum, Inc. | 17 | 1. |
| Cibro Lindenhurst Property Corp. | 17 | 5. |
| Montauk Oil Transportation Corp. | B-28 | 5.82642 |

## Robert N. Cirillo

| Company | No. | Value |
| --- | --- | --- |
| Cirillo Bros. Transportation Corp. | A3, A14, A25,A33 A47, A59 | 17.4 |
| Cibro South Shore Terminal Corp. | 10 | 5.0 |
| Cibro Petroleum/Westchester, Inc. | 8 | 5.0 |
| Cibro Petroleum/B'klyn, Inc. | A70, A81 | .69 |
| Cirillo Bros. Oil Co. Inc. | A60, A52, A41, A26 | 3.17 |
| Forsee Realty Corp. | A21 | 3.0 |
| Cibro Petroleum/L.I., Inc. | 18 | 5.0 |
| Cibro Petroleum Inc. | 9 | 1.0 |
| Cibro Lindenhurst Property Corp. | 20 | 5.0 |
| Montauk Oil Transportation Corp. | B-30 | 5.82642 |

(Official Form 10)
rev. 6/91)

# United States Bankruptcy Court

Southern    District of   New York

# PROOF OF CLAIM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WINIMO REALTY CORP
CASE # 9240026 THROUGH # 9240045
0274

00274

| In re (Name of Debtor) | Case Number |
|---|---|
| Winimo Realty Corp. | 92-B-40026 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor**
*(The person or entity to whom the debtor owes money or property)*
Montauk Oil Transportation Corp.

**Name and Addresses Where Notices Should be Sent**

1066 Zerega Avenue
Bronx, New York 10462

Telephone No. (718) 824-5000

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:   Check here if this claim: ☐ replaces ☐ amends   a previously filed claim, dated: _____

**1. BASIS FOR CLAIM:**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly)
   See Rider 1

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensations (Fill out below)
Your social security number _____
Unpaid compensations for services performed
from _____ (date) to _____ (date)

**2. DATE DEBT WAS INCURRED:**
March 5, 1993

**3. IF COURT JUDGMENT, DATE OBTAINED:**
N/A

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☐ SECURED CLAIM $ _____
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle ☐ Other (Describe briefly)

Amount of arrearage and other charges included in secured claim above, if any $ _____

☒ UNSECURED NONPRIORITY CLAIM $   10,187.00
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $ _____
Specify the priority of your claim.
☐ Wages, salaries, or commissions (up to $2000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan—U.S.C. § 507(a)(4)
☐ Up to $900 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use—11 U.S.C. § 507(a)(6)
☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(7)
☐ Other—11 U.S.C. §§ 507(a)(2), (a)(5)—(Describe briefly)

| 5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: | $ 10,187.00 (Unsecured) | $ -0- (Secured) | $ -0- (Priority) | $ 10,187.00 (Total) |
|---|---|---|---|---|

☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

FILED
JUN - 1 1993
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| 5/26/93 | Montauk Oil Transportation Corp. <br><br> By: *John Wells* |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## RIDER 1

Attached hereto is a certain Guaranty, dated May 29, 1987, by and among Debtor and other corporations listed on Schedule I thereto, and William J. Cirillo as agent for himself, William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillom the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (the "Guaranty"). The Unsecured Non-Priority Claim made hereby represents the amount paid by Creditor in its role under the guaranty as guarantor of Debtor's obligations under a certain promissory note, a copy of which is also attached hereto.

## GUARANTY

GUARANTY, dated as of May 29, 1987 among the corporations listed on the annexed Schedule I (collectively, the "Guarantors") in favor of William J. Cirillo ("Cirillo") as agent for himself, William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo, the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively, the "Sellers").

## W I T N E S S E T H

WHEREAS, pursuant to the terms of that certain Stock Purchase Agreement dated May 29, 1987 by and among the Sellers, the Guarantors and certain other parties signatory thereto (capitalized terms unless otherwise defined shall have the meaning set forth in such Stock Purchase Agreement), the Sellers are selling the Stock to the Guarantors and receiving promissory notes (the "Notes") from certain of the Guarantors as partial payment for the Stock;

WHEREAS, in connection with the purchase and sale of the Stock, including the shares of Stock issued by the Guarantors, the Sellers desire that the Guarantors guarantee payment of the Notes when due, and

WHEREAS, the Guarantors have determined that it is in their best interests to guarantee payment of the Notes when due.

NOW, THEREFORE, the parties hereby agree as follows:

1. <u>Guarantee</u>. Each of the Guarantors hereby guarantees the full and prompt payment of the principal of and interest on the Notes and each installment thereof, as and when the same shall be due and payable, whether in accordance with the stated schedule of payments, by reason of acceleration or otherwise.

2. <u>Joint Liability</u>. This Guaranty may be enforced against any one of the Guarantors separately or against any or all Guarantors jointly.

3. <u>Security</u>. In order to secure the performance of the Guarantors in accordance with the terms of this Guaranty, each Guarantor hereby grants to Cirillo a security interest in the shares of Stock issued by it (the "Pledged

Stock") as set forth on the annexed Schedule II and, as of the date hereof, delivers stock certificates representing such shares to the Escrow Agent to be held in escrow in accordance with the terms of that certain Escrow Agreement of even date herewith among certain parties including Cirillo, the Guarantors and the Escrow Agent. Such pledge shall create a valid perfected security interest in the Pledged Stock in favor of Cirillo, and Cirillo shall be entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York with respect to the Pledged Stock. The security interest in the Pledged Stock (other than the Pledged Stock issued by Montauk Oil Transportation Corp. or Jacon Realty Inc.) is simultaneously being assigned to the Banks.

4. **Guarantor's Merger, Sale of Stock.** In the event a Guarantor is merged into or consolidated with any person or entity or in the event the stock of a Guarantor is acquired by a non-affiliated person or entity, such Guarantor's obligations under this Guaranty shall terminate and the security interest created hereby shall terminate with respect to the shares of Pledged Stock issued by such Guarantor.

5. **Term of Guaranty.** Subject to the provisions of Section 4 hereof, this Guaranty shall remain in full force and effect until each of the Notes has been paid in full, whether by the maker thereof or the Guarantors.

6. **Assignment.** In the event that Cirillo assigns one or more of the Notes, the rights of the Sellers hereunder shall be deemed to be assigned with respect to such Note(s) on an unsecured basis only and the assignee(s) of such Note(s) and of such rights hereunder will have no security interest or other right, interest or claim to the Pledged Stock.

7. **Extension of Time.** The Guarantors' liability hereunder shall not be affected by reason of any extension of time for payment of any installment granted by Sellers to one or more of the makers of the Notes.

8. **Waiver.** The Guarantors hereby waive notice of acceptance, non-performance, presentment, dishonor, protest, or default and any other notice and diligence in collection or bringing suit and the holder of the notes may accept partial payment without discharging the Guarantors from their obligations hereunder.

9. **Subrogation.** Until the Notes are paid in full, the Guarantors shall not enforce their rights of subrogation or otherwise become entitled to any payment by the

-2-

makers of the Notes or to any property of the makers of the Notes by virtue of any payment or performance by the Guarantors hereunder.

10. _Notices_. All notices, demands or other communications required or permitted to be given hereunder shall be in writing and shall be deemed duly given if delivered personally, or mailed first class, postage prepaid, registered or certified mail, return receipt requested, as follows:

If to Cirillo, or the Sellers, to:

William J. Cirillo
19 Manger Circle
Pelham Manor, New York 10803

with a copy to:

La Penna and Tuckman
271 North Avenue
New Rochelle, New York  10801
Attn:  Michael La Penna, Esq. or
       Warren Gould, Esq.

If to Guarantors, to:

Cibro Terminals Inc.
1066 Zereqa Avenue
Bronx, New York  10462
Attn:  P. James Massa, President

with a copy to:

Carro, Spanbock, Kaster & Cuiffo
1345 Avenue of the Americas
New York, New York 10105
Attn:  Marshall N. Lester, Esq.

11. _Governing Law_. This Guaranty shall be governed by and construed in accordance with the laws of the State of New York.

12. _Counterparts_. This Guaranty may be executed in any number of counterparts, each of which shall be deemed

an original, and all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Guaranty as of the date first above written.

C. & J. CIRILLO CORP.
CIBRO GASOLINE CORP.
CIBRO PETROLEUM/BKLYN., INC.
CIBRO PETROLEUM/BX., INC.
CIBRO PETROLEUM INC.
CIBRO PETROLEUM/L.I., INC.
CIBRO PETROLEUM/WESTCHESTER, INC.
CIBRO SALES CORP.
CIBRO SOUTH SHORE TERMINAL CORP.
CIBRO SYRACUSE PROPERTY, CORP.
CIBRO TERMINALS, INC.
CIRILLO BROS. CHATTERTON, INC.
CIRILLO BROS. LAND CORP.
FORSEE REALTY CORP.
LANIMRET TERMINAL INC.
OCEANA TERMINAL CORP.
WINIMO REALTY CORP.

By: _William V. Cirillo_
William V. Cirillo, Vice
President of each of the
above-named corporations.


BLACKROCK AVENUE REALTY CORP.
CIBRO LINDENHURST PROPERTY CORP.
WATSON AVENUE REALTY INC.
JACON REALTY INC.

By: _William V. Cirillo_
William V. Cirillo, President
of each of the above-named
corporations


MONTAUK OIL TRANSPORTATION CORP.

By: _William V. Cirillo_
William V. Cirillo,
Vice President


-4-

SCHEDULE I

Blackrock Avenue Realty Corp.
C. & J. Cirillo Corp.
Cibro Gasoline Corp.
Cibro Lindenhurst Property Corp.
Cibro Petroleum/Bklyn., Inc.
Cibro Petroleum/Bx., Inc.
Cibro Petroleum Inc.
Cibro Petroleum/L.I., Inc.
Cibro Petroleum/Westchester, Inc.
Cibro Sales Corp.
Cibro South Shore Terminal Corp.
Cibro Syracuse Property, Corp.
Cibro Terminals, Inc.
Cirillo Bros. Chatterton, Inc.
Cirillo Bros. Land Corp.
Forsee Realty Corp.
Jacon Realty Inc.
Lanimret Terminal Inc.
Montauk Oil Transportation Corp.
Oceana Terminal Corp.
Watson Avenue Realty Inc.
Winimo Realty Corp.

SCHEDULE II

| Name of Corporation | Number of Pledged Shares |
| --- | --- |
| Blackrock Avenue Realty Corp. | 20 |
| C. & J. Cirillo Corp. | 166.67 |
| Cibro Gasoline Corp. | 4 |
| Cibro Lindenhurst Property Corp. | 20 |
| Cibro Petroleum/Bklyn., Inc. | 57.06735 |
| Cibro Petroleum/Bx., Inc. | 136.633 |
| Cibro Petroleum Inc. | 4 |
| Cibro Petroleum/L.I., Inc. | 20 |
| Cibro Petroleum/Westchester, Inc. | 20 |
| Cibro Sales Corp. | 15 |
| Cibro South Shore Terminal Corp. | 20 |
| Cibro Syracuse Property, Corp. | 20 |
| Cibro Terminals, Inc. | 234.23231 |
| Cirillo Bros. Chatterton, Inc. | 20 |
| Cirillo Bros. Land Corp. | 333.334 |
| Forsee Realty Corp. | 266.667 |
| Jacon Realty Inc. | 15 |
| Lanimret Terminal Inc. | 4 |
| Montauk Oil Transportation Corp. | 83.33421 |
| Oceana Terminal Corp. | 15 |
| Watson Avenue Realty Inc. | 20 |
| Winimo Realty Corp. | 37.5315 |

## SECURED NOTE

$39,527.00                                    May 29, 1987

FOR VALUE RECEIVED, WINIMO REALTY CORP., a New York corporation (the "Company"), DOES HEREBY PROMISE to pay to William J. Cirillo ("Cirillo"), as agent for himself, Janice Cirillo, the Estate of Constance Cirillo, Robert Cirillo and Jacquelyn Cirillo Roeckle (collectively, the "Sellers"), at 701 South Columbus Avenue, Mt. Vernon, New York 10550, or at such other address as may be designated in writing by Cirillo, the principal sum of Thirty Nine Thousand Five Hundred Twenty-Seven Dollars ($39,527.00), together with interest at the rate of seven and one-quarter (7 1/4%) per cent per annum, in lawful money of the United States of America, such principal and interest to be payable in thirty-one consecutive quarter annual installments of $1,380.95 each, such Installments to be payable on August 31, November 30, February 28 and May 31 of each year commencing August 31, 1987 and one final installment of $12,428.52, to be payable on May 31, 1995 (the thirty-one quarter annual installments and the final installment being referred to herein, collectively, as the "Installments" or, individually, as an "Installment").

1. <u>Security</u>.  In order to secure the payment of this Note, the Company hereby grants to Cirillo a security interest in 37.5315 shares of its capital stock (the "Pledged Stock") and, as of the date hereof, delivers stock certificates (the "Certificates") representing such shares to Carro, Spanbock, Kaster & Cuiffo, 1345 Avenue of the Americas, New York, New York 10105 as escrow agent (the "Escrow Agent") to be held in escrow in accordance with the terms of that certain Escrow Agreement of even date herewith among certain parties including Cirillo, the Company and the Escrow Agent.  Such pledge shall create a valid perfected first security interest in the Pledged Stock in favor of Cirillo, and Cirillo shall be entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York with respect to the Pledged Stock.  Said security interest is simultaneously being assigned to Manufacturers Hanover Trust Company ("MHT"), individually, and as agent for Citibank, N.A. ("Citibank"), National Westminster Bank USA ("NatWest") and The Chase Manhattan Bank, N.A. ("Chase") pursuant to and in accordance with the terms of that certain Letter Agreement dated May 29, 1987 among Sellers, Escrow Agent and MHT as agent for itself, Citibank, NatWest and Chase.

2. __Default.__   If  one  or  more  of  the  following
events shall have occurred:

(a)  The  Company  defaults  in  the  payment  of
any Installment, or

(b)  The  combined  net  worth  of  the  Company  and
each of the other corporations (the "Other Corporations")
listed  on  the  attached  Schedule  I  falls  below  an  amount  that
is  equal  to  300%  of  the  sum  of  (i)  the  aggregate  outstanding
principal  balance  of  this  note  and  notes  of  even  date  here-
with  made  by  the  Other  Corporations  in  favor  of  Cirillo  and
(ii)  the  aggregate  Prepayment  Fees  on  such  notes  which  would
be applicable at the time of the event, or

(c)  The  Company's  "principal  lender"  declares
a  default  and  makes  formal  written  demand  for  payment  pur-
suant  to  the  terms  of  such  lender's  agreement  with  the  Com-
pany,  and  the  period  of  times,  if  any,  for  curing  such  de-
fault  shall  have  expired.   As  used  herein  "principal  lender"
shall  mean  (i)  an  individual  lender  or  any  consortium  of
lenders  with  outstanding  loans  in  favor  of  the  Company
together  with  the  Other  Corporations  of  $10,000,000  or  more
and  (ii)  MHT  individually,  and  as  agent  for  Citibank,
NatWest  and  Chase  (the  "Banks")  in  connection  with  loans
made  by  them  pursuant  to  that  certain  Third  Restructure  and
Amended  and  Restated  Credit  Agreement  and  Guarantee  dated  as
of  December  20,  1985  among  the  Banks  and  the  Company  and/or
certain of the Other Corporations;

then  Cirillo  may,  by  written  notice  to  the  Company,  declare
a  default,  and  the  Company  shall  have  five  days  from  receipt
of  such  notice  to  cure  the  default,  or  the  entire  outstand-
ing  principal  balance  of  this  Note,  together  with  all  inter-
est  accrued  hereon  shall  become  immediately  due  and  pay-
able.   In  the  event  of  a  default  under  the  agreement  re-
ferred  to  in  subsection  (c)(ii)  of  this  paragraph  with  the
Banks,  payments  on  this  Note  and  notes  of  even  date  herewith
made  by  the  Other  Corporations  in  favor  of  Cirillo  shall  be
suspended until such default has been cured or waived.

3. __Financial Statements.__   The  Company  shall  dur-
ing  the  term  of  this  Note  deliver  to  Cirillo  copies  of  the
Company's  unaudited  statement  of  finances  covering  the  first
six  months  of  each  fiscal  year  and  its  annual  audited  state-
ment  of  finances,  such  statements  to  be  delivered  as  and
when available.

4. __Prepayment.__   The  Company  may,  at  any  time,
prepay  any  Installment,  in  whole  or  in  part.   In  the  event
of  a  prepayment,  whether  voluntary,  by  reason  of  default  and
acceleration,  or  otherwise,  the  Company  shall,  at  the  time

of such prepayment, be required to simultaneously pay to Cirillo a prepayment fee ("Prepayment Fee"). In the event that the entire principal amount hereof is prepaid on or before the date in which the initial Installment is due, the Prepayment Fee shall be $6,199.00. The Prepayment Fee applicable for subsequent Installments shall be as set forth on Schedule II hereof. There shall be an equitable adjustment in the amount of Prepayment Fees due in the event of partial prepayments hereunder.

5. <u>Notices; Costs of Collection</u>. The Company hereby waives demand for payment, notice of nonpayment, presentment, notice of dishonor, protest, notice of protest and any other notice and diligence in collection or bringing suit, and the holder hereof may accept partial payment without discharging or releasing the Company. The Company hereby promises to pay all costs of collection when incurred, including, without limitation, reasonable attorneys' fees and expenses and court costs in case of a default in payment of this Note.

6. <u>Transfer of Note</u>. Cirillo may transfer this Note at any time on an unsecured basis only and upon such transfer, Cirillo's security interest in the Pledged Shares will be released and the certificates will be delivered by the Escrow Agent to the Company for cancellation, in accordance with the terms of the Escrow Agreement.

7. <u>Governing Law</u>. This Note shall be governed by and construed in accordance with the laws of the State of New York.

WINIMO REALTY CORP.

By: /s/William V. Cirillo
     Name: William V. Cirillo
     Title: Vice President

-3-

Cibro Sales Corp.
Oceana Terminal Corp.
Cibro Gasoline Corp.
Cibro Petroleum/Westchester, Inc.
Cibro Petroleum/Bklyn., Inc.
Cibro Terminals, Inc.
Cibro Petroleum Inc.
Lanimret Terminals Inc.
Cibro Syracuse Property Corp.
Cirillo Bros. Chatterton Inc.
Cibro South Shore Terminal Corp.
C. & J. Cirillo Corp.
Cirillo Bros. Land Corp.

Forsee Realty Corp.
Blackrock Avenue Realty Corp.
Jacon Realty Inc.
Cibro Lindenhurst Property Corp.
Montauk Oil Transportation Corp.

SCHEDULE II

WINIMO REALTY CORP.

| PREPAYMENT AFTER INSTALLMENT NUMBER | PREPAYMENT FEE |
|---|---|
| 1 | 5,939.85 |
| 2 | 5,683.52 |
| 3 | 5,438.11 |
| 4 | 5,179.77 |
| 5 | 4,932.62 |
| 6 | 4,688.81 |
| 7 | 4,448.46 |
| 8 | 4,211.72 |
| 9 | 3,978.74 |
| 10 | 3,749.66 |
| 11 | 3,524.63 |
| 12 | 3,303.82 |
| 13 | 3,087.38 |
| 14 | 2,875.47 |
| 15 | 2,668.26 |
| 16 | 2,465.93 |
| 17 | 2,268.64 |
| 18 | 2,076.57 |
| 19 | 1,889.91 |
| 20 | 1,708.84 |
| 21 | 1,533.56 |
| 22 | 1,364.26 |
| 23 | 1,201.14 |
| 24 | 1,044.40 |
| 25 | 894.26 |
| 26 | 750.92 |
| 27 | 614.61 |
| 28 | 485.55 |
| 29 | 363.97 |
| 30 | 250.11 |
| 31 | 144.19 |
| 32 | 0.00 |