**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway - 15th Floor
New York, New York 10007
Steven M. Golub, Esq. (SG 3592)
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:


WINIMO REALTY CORPORATION, et al        Chapter 11 Case Nos. 92-B-40026
                                               Through 92-B- 40045 (RRD) (inclusive)

                                         Jointly Administered
                     Debtors.        Under Case No. 92-B-40026 (RRD)
------------------------------------------------------------------- x
WINIMO REALTY CORPORATION, et al.,

                     Plaintiffs,

                                                 Adversary Proceeding No. 10-02816 (RRD)
                 V.
WILLIAM J. CIRILLO ON HIS BEHALF AND AS
AGENT FOR THE ESTATE OFCONSTANCE CIRILLO,
JACQUELYN CIRILLO, ROBERT CIRILLO, AND
WILLIAM J. CIRILLO AND BARBARA CIRILLO, AS
TRUSTEES FOR JANICE CIRILLO AND
MONTAUK OIL TRANSPORTATION CORP.,
                         Defendants.
-------------------------------------------------------------x

**DEBTORS' NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND ENTRY OF AN ORDER SUBORDINATING CLAIMS
FILED BY WILLIAM J. CIRILLO, INDIVIDUALLY AND AS AGENT BECAUSE
THE CLAIMS (A) ARISE FROM THE PURCHASE OR SALE OF STOCK OR
SECURITIES OR (B) ARE NOT ENFORCEABLE AGAINST THE DEBTORS**

**PLEASE TAKE NOTICE** that at **10:00 a.m. (EDT)** on **October 26, 2010,** pursuant to

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding

by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rules 7056-1 and

9014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of

New York, Winimo Realty Corp., et al., the above-captioned debtors and debtors in possession

(collectively, the "Debtors"), by its counsel, Andrews Kurth LLP, and the Official Committee of

Unsecured Creditors, by its counsel, Golub & Golub, LLP, shall appear before the Honorable

Robert D. Drain, United States Bankruptcy Judge, Charles L. Brieant, Jr. United States

Courthouse, 2nd Floor, 300 Quarropas Street, White Plains, New York 10601-4140, or as soon

thereafter as counsel may be heard (the "Hearing"), and present the Debtors' motion for summary

judgment (the "Motion") seeking judgment as a matter of law subordinating claims filed by

William J. Cirillo, individually and as agent for the Estate of Constance Cirillo, Jacquelyn Cirillo,

Robert Cirillo; and William J. Cirillo and Barbara Cirillo, as Trustees for Janice Cirillo

(collectively, the "Defendants") because the claim (i) arise from the purchase or sale of stock or

securities or (ii) are not enforceable against the Debtors. Default Judgment has been entered

against Defendant Montauk Oil Transportation Corp. ("Montauk") and the claims filed by

Montauk have been subordinated.

This Motion is supported by the Debtors' (i) Statement of Undisputed Facts, and (ii)

Memorandum of Law in Support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that responses to the Motion, if any, must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Word, WordPerfect or any other Windows-based word processing format (in either case, with a hard copy delivered directly to Chambers) and shall be served upon: (a) counsel to the Debtors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Paul N. Silverstein, Esq.), (b) counsel to the Official Committee of Unsecured Creditors, Golub & Golub, LLP, 225 Broadway, 15th Floor, New York, New York 10007 (Attn: Steven M. Golub, Esq.), (c) and (c) Brian S. Masumoto, Esq., Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21St Floor, New York, New York 10004 no later than October20, 2010.

Dated: New York, New York
      October 7, 2010

                                    **GOLUB & GOLUB, LLP**
                                    Counsel to the Official Committee
                                      of Unsecured Creditors

                                      **By:**
                                        Steven M. Golub, Esq (SG 3592)
                                      A Member of the Firm
                                      225 Broadway, Suite 1515
                                      New York, New York 10007
                                      Remy j. Ferrario, Esq. (RF 4105)
                                      Telephone: (212) 693-1000
                                      Fax: (212) 693-0090

                                      -and-

**ANDREWS KURTH LLP**
Paul N. Silverstein, Esq.  (PS 5098)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929
Counsel to the Debtors

    -And-

**GOLUB & GOLUB, LLP**
225 Broadway, Suite 1515
New York, New York 10007
Steven M. Golub, Esq) (SG 3592)
Telephone: (212) 693-1000
Fax: (212) 693-0090
Counsel to the Official Committee
of Unsecured Creditors

**Hearing Date:**    **October 26, 2010**
                          **at 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

WINIMO REALTY CORPORATION, et al      Chapter 11 Case Nos. 92-B-40026
                                           Through 92-B- 40045 (RRD) (inclusive)

                                           Jointly Administered
                         Debtors.      Under Case No. 92-B-40026 (RRD)
----------------------------------------------------------------- x
WINIMO REALTY CORPORATION, et al.,

                       Plaintiffs,

                                         Adversary Proceeding No. 10-02816 (RRD)
                     V.
WILLIAM J. CIRILLO ON HIS BEHALF AND AS AGENT FOR
THE ESTATE OFCONSTANCE CIRILLO, JACQUELYN
CIRILLO, ROBERT CIRILLO, AND WILLIAM J. CIRILLO
AND BARBARA CIRILLO, AS TRUSTEES FOR JANICE
CIRILLO AND MONTAUK OIL TRANSPORTATION
CORP.,
                     Defendants.
-------------------------------------------------------------x

<div align="center">

**DEBTORS' LOCAL RULE 7056-1 STATEMENT IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT SUBORDINATING CLAIMS**
**FILED BY WILLIAM J. CIRILLO, INDIVIDUALLY AND AS AGENT BECAUSE**
**THE CLAIMS (A) ARISE FROM THE PURCHASE OR SALE OF STOCK**
**OR SECURITIES OR (B) ARE NOT ENFORCEABLE AGAINST THE DEBTORS**

</div>

Pursuant to Rule 56, Federal Rules of Civil Procedure, made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 7056-1 of the Local Rules of the United States Bankruptcy Court For The Sothern District of New York, Winimo Realty Corp., et al, debtors ("Debtors") respectfully submits the following statement of undisputed material facts as to which there is no issue to be tried.

## Undisputed Facts

1.    The Debtors are corporate entities incorporated under the laws of the State of New York.

2.    On January 3, 1992, each of the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code ("Petition Date") and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3.    On the Petition Date and thereafter the Debtors were insolvent.

4.    Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors manage and operate their respective businesses and properties as debtors in possession.

5.    Defendants are William J. Cirillo, individually and as agent for the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo; and William J. Cirillo and Barbara Cirillo, as Trustees for Janice Cirillo (collectively, "Cirillo Defendants" and "Cirillo Claimants").

6.    On June 2 and June 3, 1993, the Cirillo Claimants filed twenty (20) identical proofs of claim in these Chapter 11 Cases.

7.    The Debtors against which the proofs of claim were filed are identified by case number in Exhibit "A" hereto.

8.    The Cirillo Claims are filed as "secured claims".

9.    The Cirillo Defendants assert that the Cirillo Claims are secured by 166.96 shares of the capital stock of Debtor, Cibro Terminals, Inc.

2

10. The collateral "securing" the Cirillo Claims has no value.

11. The Cirillo Defendants allege that the Debtors were and remain indebted on the Petition Date to the Cirillo Claimants. As stated in its proof of claim, the Cirillo Defendants allege damages consisting of the alleged unpaid (a) principal amount of $1,028,841.35 owed by the Debtor to the Claimant pursuant to a certain Secured Note, dated May 29, 1987 (the 'Note'), (ii) a certain Stock Purchase Agreement, dated as of May 29, 1987 (the "SPA"), (iii) a certain Guaranty, dated as of May 29, 1987, and (iv) a certain Agreement, dated as of March 5, 1993 (the 'Settlement Agreement'); (b) Interest in the amount of $9,831.26, and (c) the Cirillo Claimant's fair and reasonable attorneys' fees, incurred and to be incurred in connection with the enforcement, collection and satisfaction of the indebtedness of the Debtor to the Claimant described in this paragraph in an amount not less than $77,214.18. For reference purposes, a copy of proof of claim no. 322 filed against Cibro Terminals, Inc., Debtor ("Terminals") is attached to the Complaint as Exhibit "C" ("Claim 322").

12. The terms of the purchase by the Debtors and the sale by the Cirillo Claimants of the "Stock" (defined below) is set forth in a stock purchase agreement, dated May 29, 1987 (the "SPA"; Exhibit "B" to Claim 322).

13. The SPA is by and among (a) William J. Cirillo, the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo, William J. Cirillo and Barbara Cirillo as Trustees for Janice Cirillo, William J. Cirillo, as Agent for the Cirillo sellers (collectively, the "Cirillo Sellers" or the Cirillo Claimants, and Bilcon Associates ("Bilcon"), and (b) the Debtor corporations listed on Schedule I to the SPA (collectively, the "Buyers" or individually a "Buyer") and Terminals, a debtor herein, as agent for the Buyers.

14. The corporate Buyers of the Stock listed on the Schedule to the SPA include eighteen (18) entities, which are Debtors in these Chapter 11 Cases, Montauk Oil Transportation Corp. ("Montauk")

3

and others.

15.    Pursuant to the SPA, dated May 29, 1987 (all documents are dated as at May 29, 1987), the Cirillo Claimants were sellers, William J. Cirillo was agent for the sellers (the "Cirillo Sellers") of the Debtors stock owned by the Cirillo Sellers and Bilcon Associates ("Bilcon") and the Debtor corporations listed on a Schedule I to the SPA, which includes Montauk, were buyers of the Cirillo Sellers Stock of the Debtor corporations and Terminals was agent for the Buyers.

16.    Montauk failed to answer the complaint filed in the within adversary proceeding and on April 15, 2010, a judgment was entered against Montauk subordinating all claims filed by Montauk in the Debtors' cases to all claims and interests that are senior to or equal to such claims of Montauk.

17.    The SPA provides that the purchase price of the Stock and the Bilcon Interest was $2,161,099.00 (the "Purchase Price"). Pursuant to Schedule III of the SPA, the Debtor entities were obligated to pay $2,074,185,00 of the Purchase Price, which constituted 95.98% of the Purchase Price and four (4) non-debtor parties, including Montauk, were obligated to pay $86,914.00 of the Purchase Price, which constituted 4.02% of the Purchase Price

18.    Prior to the Petition Date, Purchase Price in the amount of $2,161,077 was paid down to the alleged principal amount of $1,028,841.35 owed on the Petition Date. The Purchase Price was payable $62.00 at closing, with the balance payable, together with interest at the rate of seven and one-quarter (7 ¼) percent per annum, over eight years in thirty-0ne consecutive w quarterly annual installments of $75,500 each and one final quarter annual installment of $679.500.00. The first installment was payable on August 31, 1987.

19.    In connection with the transaction contemplated in the SPA, on May 29, 1987, Terminals executed a promissory note in favor of the Cirillo Claimants (as Sellers of the Stock) in the principal sum of One Million Four Hundred Thirty Eight Thousand Three Hundred Twelve Dollars

($1,438,312.00), together with interest at the rate of seven and one-quarter (7-1/4%) per cent per annum, in lawful money of the United States of America, such principal and interest to be payable in thirty-one consecutive quarter annual installments of $50,250.00 each, such Installments to be payable on August 31, November 30, February 28 and May 31 of each year commencing August 31, 1987 and one final installment of $452,249.98, to be payable on May 31, 1995.

20.     Each of the Buyers were obligated to pay that portion of the Purchase Price which was allocable to the shares of Stock being purchased by such Buyer.

21.     Each Cirillo Defendant was the owner of the number of shares of capital stock as set forth on Schedule II to the SPA (all of the shares of such stock referred to as the "Stock"), and each Buyer (also being referred to under the SPA as the "Issuer") was an Issuer with respect to the shares of Stock issued by it.

22.     At a closing, each Cirillo Defendant sold, transferred and assigned the shares of Stock owned by each of the Cirillo Defendants to the Buyers (which included eighteen (18) Debtors in these Chapter 11 cases) pursuant to the terms of the SPA.

23.     The Cirillo Defendants sold back to Debtors their Stock in the Debtors and were given notes and guarantees from the various Debtors in payment for such Stock.

24.     **The Cirillo Claims acknowledge, on their face, that the claims were incurred "in**

**connection with or arising out of the Note, Stock Purchase Agreement and Guaranty**."

Dated: New York, New York
      October 7, 2010

<div style="margin-left: 40%;">

**GOLUB & GOLUB, LLP**
Counsel to the Official Committee
of Unsecured Creditors

By: _____
     Steven M. Golub, Esq. (SG 3592)
A Member of the Firm
225 Broadway, Suite 1515
New York, New York 10007
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

       -and-

**ANDREWS KURTH LLP**
Paul N. Silverstein, Esq. (PS 5098)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

</div>

**EXHIBIT "A"**
**(List of Claims)**

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

| | | | Claims To Be Subordinated | | |
|---|---|---|---|---|---|
| **Creditor Number** | **Name/Address of Claimant** | **Claim Number** | **Date Filed** | **Case Number** | **Total Amount Claimed** |
| 0001307-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 307 | 6/2/1993 | 92-40027 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0002802-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 308 | 6/2/1993 | 92-40028 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0002604-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 309 | 6/2/1993 | 92-40026 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000262-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 310 | 6/2/1993 | 92-40043 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0004502-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 311 | 6/2/1993 | 92-40045 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000243-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 312 | 6/2/1993 | 92-40040 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001313-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 313 | 6/2/1993 | 92-40041 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

| | | | | | Claims To Be Subordinated | |
|---|---|---|---|---|---|---|
| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
| 0000256-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 314 | 6/2/1993 | 92-40042 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000291-00 | CIRILLO, WILLIAM J<br>SOUTHSHORE TERMINAL CHATTERTON &<br>BLACKROCK<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 315 | 6/2/1993 | 92-40036 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001316-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 316 | 6/2/1993 | 92-40038 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000242-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 317 | 6/2/1993 | 92-40039 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000221-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 318 | 6/2/1993 | 92-40035 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000215-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 319 | 6/2/1993 | 92-40033 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 320 | 6/2/1993 | 92-40034 | $1,115,886.79<br><br><br><br>$1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

| | | Claims To Be Subordinated | | | |
|---|---|---|---|---|---|
| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
| 0000037-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 321 | 6/2/1993 | 92-40031 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0003226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHEM MANOR NY 10803 | 322 | 6/2/1993 | 92-40032 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000017-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 323 | 6/2/1993 | 92-40029 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000031-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 324 | 6/2/1993 | 92-40030 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001334-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 334 | 6/3/1993 | 92-40037 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001335-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 335 | 6/3/1993 | 92-40044 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |

EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

_____Claims To Be Subordinated_____

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| **Totals:** | | **20 Claims** | | | $22,317,735.80 | (T) ESTIMATED |
| | | | | | | (S) |
| | | | | | | (A) |
| | | | | | | (P) |
| | | | | | $22,317,735.80 | (U) |

**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway - 15th Floor
New York, New York 10007
Steven M. Golub, Esq. (SG 3592)
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee of Unsecured Creditors

**Hearing Date:** **October 26, 2010**
**At 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————x

In re:

WINIMO REALTY CORPORATION, et al

Chapter 11 Case Nos. 92-B-40026
Through 92-B- 40045 (RRD) (inclusive)

Jointly Administered
Under Case No. 92-B-40026 (RRD)

Debtors.
-------------------------------------------------------------------- x

WINIMO REALTY CORPORATION, et al.,

Plaintiffs,

Adversary Proceeding No. 10-02816 (RRD)

V.

WILLIAM J. CIRILLO ON HIS BEHALF AND AS
AGENT FOR THE ESTATE OFCONSTANCE CIRILLO,
JACQUELYN CIRILLO, ROBERT CIRILLO, AND
WILLIAM J. CIRILLO AND BARBARA CIRILLO, AS
TRUSTEES FOR JANICE CIRILLO AND
MONTAUK OIL TRANSPORTATION CORP.,

Defendants.
-----------------------------------------------------------x

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT SUBORDINATING CLAIMS
## FILED BY WILLIAM J. CIRILLO, INDIVIDUALLY AND AS AGENT BECAUSE
## THE CLAIMS (A) ARISE FROM THE PURCHASE OR SALE OF STOCK OR
## <u>SECURITIES OR (B) ARE NOT ENFORCEABLE AGAINST THE DEBTORS</u>

### <u>PRELIMINARY STATEMENT</u>

Plaintiffs, Winimo Realty Corp., <u>et al.</u>, Debtors (the "Debtors") respectfully submit this

Memorandum of Law in support of their motion for summary judgment, as a matter of law,

subordinating all claims filed by William J. Cirillo, individually and as agent for the Estate of

Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo; and William J. Cirillo and Barbara Cirillo,

as Trustees for Janice Cirillo (collectively, the "Defendants") because the claims (i) arise from

the purchase or sale of stock or (ii) are unenforceable against the Debtors. Montauk defaulted in

answering the complaint, as a consequence, on April 15, 2010, a judgment was entered against

Montauk subordinating all of Montauk's claims to all claims and interests that are senior to or

equal to such claims of Montauk

### <u>FACTS</u>

A summary of the undisputed facts which warrant entry of summary judgment

subordinating the Defendants' claims are as follows:

     a.     The Debtors are corporate entities incorporated under the laws of the State of New York.

     b.     On January 3, 1992, each of the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code ("Petition Date") and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

     c.     On the Petition Date and thereafter the Debtors were insolvent.

     d.     On June 2 and June 3, 1993, the Defendants filed twenty (20) proofs of claim in these Chapter 11 Cases (the "Cirillo Claims").

     e.     Pursuant to a stock purchase agreement ("SPA"), dated May 29, 1987 (all documents are dated as at May 29, 1987), the Defendants were sellers, and the Debtor corporations listed on a Schedule I to the SPA were buyers.

2

f.     The Cirillo Defendants allege that the Debtors were and remain indebted on the Petition Date to the Cirillo Claimants.

g.     The SPA provides that the purchase price of the Stock was $2,161,099.00 (the "Purchase Price"). The Purchase Price was payable $62.00 at closing, with the balance payable, together with interest at the rate of seven and one-quarter (7 ¼) percent per annum, over eight years in thirty-one consecutive quarterly annual installments of $75,500 each and one final quarter annual installment of $679,500.  The first installment was payable on August 31, 1987.

h.     Pursuant to Schedule III of the SPA, the Debtor entities were obligated to pay $2,074,185,00 of the Purchase Price, which constituted 95.98% of the Purchase Price. (4) non-debtor parties, including Montauk, were obligated to pay $86,914.00 of the Purchase Price, which constituted 4.02% of the Purchase Price.

i.     In connection with the transaction contemplated in the SPA, on May 29, 1987, Terminals executed a promissory note in favor of the Cirillo Claimants (as Sellers of the Stock) in the principal sum of One Million Four Hundred Thirty Eight Thousand Three Hundred Twelve Dollars ($1,438,312.00), together with interest at the rate of seven and one-quarter (7-1/4%) per cent per annum, in lawful money of the United States of America, such principal and interest to be payable in thirty-one consecutive quarter annual installments of $50,250.00 each, such Installments to be payable on August 31, November 30, February 28 and May 31 of each year commencing August 31, 1987 and one final installment of $452,249.98, to be payable on May 31, 1995.

j     Each of the Buyers were obligated to pay that portion of the Purchase Price which was allocable to the shares of Stock (or, in the case of Bilcon, the Bilcon interests) purchased by such Buyer as set forth in Schedule III to the SPA.

k.     Defendants allege that the Debtors were and remain indebted to the Defendants in the principal amount of $1,028,841.35, plus interest as of June 1, 1993 in the amount of $9,831.26 and reasonable attorneys' fees incurred by the Cirillo Claimants in the amount of $77,214.18 or the aggregate amount of $1,115,886.79.

l.     Prior to the Petition Date, the Purchase Price was paid down to the alleged principal amount of $1,028,841.35.

m.     As stated in its proof of claim, the Cirillo Defendants allege damages consisting of the alleged unpaid (a) principal amount of $1,028,841.35 owed by the Debtor to the Cirillo Claimants pursuant to a certain Secured Note, dated May 29, 1987 (the 'Note'), (ii) a certain Stock Purchase Agreement, dated as of May 29, 1987, (iii) a certain Guaranty, dated as of May 29, 1987, and (iv) a certain Agreement, dated as of March 5, 1993 (the 'Settlement Agreement'); (b) Interest in the amount of $9,831.26, and (c) the Cirillo Claimant's fair and reasonable attorneys' fees, incurred and to be incurred in connection with the enforcement, collection and satisfaction of the indebtedness of the Debtor to the Claimant described in Claim No. 322 p in an amount not less than $77,214.18.

n.     The Cirillo Claims acknowledge, on their face, that the claims were incurred "in connection with or arising out of the Note, Stock Purchase Agreement and Guaranty".

The Court is respectfully referred to the Debtors Rule 7056-1 Statement submitted herewith for a complete recitation of the facts which cannot be disputed and to location of the appropriate documents and exhibits regarding the facts.  The Cirillo Claims are scheduled in Exhibit "A" to the Debtors' Undisputed Facts.

## ARGUMENT

### Point I

### SUBORDINATION OF THE CIRILLO CLAIMS IS WARRANTED AND SUMMARY JUDGMENT SUBORDINATING THE CLAIMS MUST BE GRANTED

Section 510(b) of the Bankruptcy Code provides for the subordination of three types of claims: "(1) an actual attempt to rescind a purchase or sale of a security issued by the debtor or one of its affiliates; (2) a claim for damages arising from a purchase or sale of a security; and (3) a claim for reimbursement or contribution for a purchase or sale of such a security under section 502 of the Code." *In re Geneva Steel Co.*, 281 F.3d 1173, 1177 (10th Cir.2002)." *In re Pre-Press Graphics Co., Inc.*, 307 B.R. 65, 70-71 (N.D. Ill.  2004).  Here, the motion concerns damages arising from a purchase or sale of a security.

Section 510(b) of the Bankruptcy Code reads, as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock. (emphasis supplied)

4

The Debtors assert that the Cirillo Claims fall squarely within section 510(b) of the Bankruptcy Code and must be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security and to all unsecured claims. In this Chapter 11 case, the "damages", for purposes of Section 510(b) of the Bankruptcy Code, consists of claims, for future installment payments due under the Note owed in connection with the SPA.

Section 510(b) is given a broad interpretation, and where there is, as here, a causal link between the Cirillo Claims and the SPA, the Cirillo Claims which arise from the SPA must be subordinated. As stated in *In re Med Diversified, Inc.*, 461 F.3d 251,254 (2nd Cir. 2006) quoting *In re PT-1 Communications*, 304 B.R. 601, 608 (Bankr.E.D.N.Y.2004), the claim "need not flow directly from the securities transaction, but can be viewed as 'arising from the transaction if the transaction is part of a causal link leading to the injury".

Likewise, in *In re Patriot Aviation Services, Inc.*, 396 B.R. 780, 788 (Bankr. S.D. Fla. 2008)("Patriot") claims were subordinated because the sale of the securities was a part of the chain of events. The court stated:

> "[t]he current case law generally provides a broad interpretation of the 'arising from' clause in section 510(b). This broader reading suggests that the purchase or sale of securities must be part of the chain of events, however, the injury may flow from incidents prior to or subsequent to the ratification of such an agreement. See *In re Nal Financial Group, Inc.*, 237 B.R. 225, 231 (Bankr.S.D.Fla.1999); *In re Enron Corp.*, 341 B.R. 141, 161 (Bankr.S.D.N.Y.2006).

In this instance, as in *Patriot*, the Cirillo Claims flow directly from the SPA and must be subordinated pursuant to section 510(b) of the Bankruptcy Code.

But for the sale and purchase of the Stock, the claims would not exist. The Cirillo Claims assert damages resulting as a consequence of the purchase of Stock. As stated in *In re WorldCom, Inc.*, 329 B.R. 10, 13 (Bankr.S.D.N.Y. 2005):

> So long as the nature of the damage or harm complained of by a shareholder can
> be said to result as a consequence of his having purchased or sold shares of stock
> or other securities of the debtor, the claimant falls within the scope of Section
> 510(b), and it is not up to the courts to decide that certain types of damage or
> harm were not contemplated by Congress or should otherwise not be included
> within the scope of the statute. In this case the harm or damage sustained by
> Merck is the total loss in value of its WorldCom stock and, as such, arises from its
> purchase of that stock. The damage and harm sustained by Merck, whether
> proximately caused by fraud in the inducement of its purchase, or the retention of
> its ownership, or misappropriation or other malfeasance of management, arises
> from and is based upon Merck's purchase and ownership of WorldCom stock and
> as such is squarely within the scope of Section 510(b) (emphasis supplied)

Although section 510(b) of the Bankruptcy Code refers to damages of a shareholder, the

subordinated creditor need not be a shareholder. To further support this rationale, one court has

noted that 'nothing in [section] 510(b)'s text requires a subordinated claimant to be a

shareholder.' See *In re Walnut Equipment Leasing Co.*, 1999 WL 1271762, p. 6, 1999 Bankr.

LEXIS 1626 (Bankr.E.D.Pa.1999). ("The language of section 510(b) does not limit its

application to any particular type of claimant but, rather, focuses on the type of claim

possessed.") (emphasis supplied.)

*In re PT-1 Communications, Inc.*, 304 B.R. 601, 609 (Bankr . E.D.N.Y. 2004)

Likewise, it is also clear that subordination is mandatory and automatic:

> Section 510(b) "requires automatic subordination of [claims for rescission] to all
> claims or interests that are senior or equal to the claim or interest represented by
> the security." 3 Collier on Bankruptcy ¶ 510.04 (15th ed. 1995). See *In re Lenco*,
> 116 B.R. 141, 144 (Bankr. E.D. Mo. 1990) (stating that "application of [[§
> 510(b)] is mandatory rather than discretionary" and referring to the "mandatory
> nature of section 510(b)"). Subordination is automatic under § 510(b) because a "
> general creditor often relies on an apparent cushion of securities in making the
> decision to extend credit." 3 Collier on Bankruptcy ¶ 510.04 (15th ed. 1995)

*In re Coronet Capital Co.*, 1995 WL 429494, 8 (S.D.N.Y. 1995)

Clearly, the Cirillo Claims assert damages which arise in connection with the purchase or sale of the Debtors' Stock and the Cirillo Claims must be subordinated pursuant to section 510(b) of the Bankruptcy Code.  In fact, the Cirillo Claims acknowledge, on the face of each of the proofs of claim, that the claims were incurred "in connection with or arising out of the Note, Stock Purchase Agreement and Guaranty."

In these Chapter11 cases, pre-petition, the principal amount of the Purchase Price has been paid down by the amount of $1,045,343.68which is the remaining principal amount of future installment payments claimed owed pursuant to the SPA.  Not having received the full Purchase Price, the Cirillo Claimants have filed the Cirillo Claims against every Debtor in the same principal amount of $1,028,841.35 which is the remaining amount of future installment payments claims owed pursuant to the SPA. . This Court has the power to regulate the distribution of the Debtors' funds so that creditors are justly treated.  Unless the Cirillo Claims are subordinated, unsecured creditors will not be be justly treated. Clearly, the Cirillo Claims are not entitled to share in the distribution on claims aggregating in excess of $20,000,000.  As stated in *In re W. T. Grant Co.*, 4 B.R. 53, 75 (Bankr. NY 1980). "A fundamental characteristic of the bankruptcy court is its expansive equitable powers. The doctrine of equitable subordination is a manifestation of such powers and provides a means of regulating distributions from a bankrupt estate by adjusting the hierarchy of creditors' claims to the equitable levels of the comparative claim positions. Its purpose is "to undo or to offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *In re Kansas City Journal-Post Co.*, 144 F.2d 791, 800 (8th Cir. 1944). Not subordinating the Cirillo Claims will work an injustice on all general unsecured creditors entitled to receive distributions in these cases.

For the foregoing reasons, the Cirillo Claims must be subordinated.

<div align="center">

**POINT II**

**THE CIRILLO CLAIMS MUST BE SUBORDINATED
OR EXPUNGED BASED ON THE PRE-PETITION OR
POST-PETITION INSOLVENCY OF THE DEBTORS**

</div>

*In re Poseidon Pool & Spa Recreational, Inc.*, 391 B.R. 234 (Bankr. E.D.N.Y. 2008)

("Poseidon") is on point and supports the proposition that the Cirillo Claims must be

subordinated or expunged based on the Debtors' post-petition or pre-petition insolvency.

Poseidon involved a pre-petition date stock redemption agreement under which installment note

payments were made by debtor Poseidon pre-petition and future remaining installment payments

existed on the petition date of October 7, 2005 ("Poseidon Petition Date"). Prior to the Poseidon

Petition Date, an employee, officer and director of Poseidon, Vincent Arbore ("Arbore"),

Poseidon and Poseidon's other shareholders entered into an agreement by which Poseidon agreed

to redeem Arbore's shares in the debtor in exchange for $450,000.00 (the "Redemption

Agreement"). $50,000.00 was paid upon execution of the Redemption Agreement and the Debtor

executed a $400,000.00 promissory note (the "Note"), which was secured by the stock

repurchased by the Debtor, as well as by a guarantee and pledge agreement executed by the

debtor and the other shareholders of Poseidon.

The facts in Poseidon are very similar to those presented in this Adversary Proceeding.

Here, the Debtors are corporate entities incorporated under New York law, and, Note, guaranty

and escrow agreement provide that such documents "shall be governed and construed in

accordance with the laws of the State of New York". The SPA provides that "all rights and

liabilities of the parties hereto shall be governed by and construed in accordance with the laws of

the State of New York."[1] Here, as in Poseidon, the SPA and all documents related thereto are unenforceable as to the Debtors with respect to payment obligations that arose post-petition and that are the basis for the Cirillo Claims. Because the obligations are unenforceable under the New York law, the Cirillo Claims must either be expunged or subordinated.

In Poseidon, in connection with the Redemption Agreement, Arbore resigned his position as an officer, employee and director of Poseidon, more than three years prior to the Poseidon Petition Date, on May 24, 2002. After Arbore passed away, his estate succeeded to his interest in the Redemption Agreement, the Note (together, the "Transaction Documents") and the guarantee and pledge agreement (together with the Transaction Documents, the "Poseidon Transaction Documents"). There, as here, the Note was to be paid in installments of $6,500 per month, with interest. Poseidon made more than three years of pre-petition installment payments under the Poseidon Note from June 2002 to August 2005. After the Poseidon Chapter 11 case was converted to a Chapter 7 case, a trustee (the "Trustee") was appointed and the Trustee commenced an adversary proceeding against the estate of Arbore and others ("Poseidon Defendants") on June 8, 2006. The complaint sought to avoid $65,000.00 pre-petition date transfers made under the Transaction Documents as fraudulent conveyances.

Subsequently, the Trustee filed a motion seeking an order dismissing the Poseidon Defendants' counterclaims with prejudice pursuant to the Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Trustee argued that the Transaction Documents were unenforceable with respect to any payment obligations, claims or

---

[1] See generally: In re Friarton Estates Corp., 65 B.R. 586, 590 (Bankr. S.D.N.Y.1986) ("Friarton's argument that non-compliance with the rent control laws is necessary to effect a successful reorganization is without merit. The goals of the federal bankruptcy laws, the rehabilitation of the debtor and the maximization of the estate for the benefit of creditors, "do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state law." In the Matter of Quanta Resources Corp., 739 F.2d 912, 919 (3d Cir.1984") (citations omitted))

damages arising post-petition under N.Y. Bus. Corp. Law § 513(a) ("BCL"). The Trustee further argued that any indemnification claim under the Transaction Documents relating to damages and costs incurred in the adversary proceeding would have arisen post-petition and, therefore, such fees and costs would not be recoverable. Accordingly, the Trustee concluded that the Defendants would be unable to recover any damages, or attorney's fee and costs sustained by them post-petition pursuant to the Transaction Documents. The issue presented to the Poseidon court was whether the Defendants had viable counterclaims for indemnification under the Transaction Documents for any damages incurred post-petition with respect to the dismissed action or the Poseidon bankruptcy case.

In opposition, the Poseidon Defendants opposed the Trustee's motion to dismiss the first and third counterclaims on various grounds. The Defendants argued, and the Trustee did not contest, that so long as a payment had been to the Defendants while the debtor was solvent, the relevant agreements were enforceable at the time of such payment, even though the debtor may have been insolvent as of the petition date and may continue to be insolvent. In particular, the Defendants argued that the Transaction Documents remained enforceable because the test under the BCL § 513(a) required not only that the debtor be insolvent, but also that a payment be made during the Debtor's insolvency in order to render a share repurchase agreement unenforceable. The Defendants further argued that even if the debtor were insolvent post-petition, no payment under the Transaction Document had been made post-petition. Therefore, the Defendants argued that until the Trustee made a payment under the Transaction Documents, such remained enforceable

In reaching a determination as to the validity of the counterclaims, the Poseidon court looked to underlying New York State governing stock redemptions. As noted by the Poseidon

court, pursuant to BCL § 513(a), "the shares of a corporation may not be purchased by the corporation, or, if redeemable, convertible or exchangeable shares, may not be redeemed, converted or exchanged, in each case for or into cash, other property, indebtedness or other securities of the corporation (other than shares of the corporation and rights to acquire such shares) if the corporation is then insolvent or would thereby be made insolvent. Shares may be purchased or redeemed only out of surplus."

As further noted by the Poseidon court, pursuant to BCL § 102(a)(8), "insolvent" means being unable to pay debts as they become due in the usual course of the debtor's business. Accordingly, "payments may not be made in a situation of insolvency even though ... the agreement itself may have been made when the corporation had a surplus sufficient to cover the entire purchase price, and title to the stock has been transferred. *In re Flying Mailmen Service, Inc.*, 539 F.2d 866, 869 (2d Cir.1976)(citing *Nakano v. Nakano McGlone Nightingale Advertising, Inc.*, 377 N.Y.S.2d 996, 84 Misc.2d 905 (Sup.Ct.N.Y.Co.1975)). See also, Le *Café Creme, Ltd. v. Le Roux et. al.* (*In re Le Café Creme, Ltd.*), 244 B.R. 221, 244 (Bankr.S.D.N.Y.2000)". *Poseidon*, supra, 391 B.R. at 241.

Pointing to *In re Dino & Artie's Automatic Transmission, Co., Inc.,* 68 B.R. 264, 268 (Bankr.S.D.N.Y.1986), the Poseidon court stated that the rationale for this section of the BCL § 513(a) is that the equities favor general unsecured creditors over shareholders or former shareholders. Where the debtor corporation is insolvent, any payment to a former shareholder would not come out of surplus and would adversely affect the interest of the debtor's general unsecured creditors." *Poseidon*, supra, 391 B.R. at 241. See also, *In re Fechheimer Fishel Co.*, 212 F. 357, 364 (2d Cir.1914) ("when a corporation becomes insolvent, a trust arises in respect to the administration of its assets for the benefit of its creditors. Hence when a corporation buys

its own stock payment cannot be made which upon insolvency belong to its creditors instead of to its stockholders.")

Based on court filed documents, the Poseidon court found that the Trustee had "sufficiently established the rebuttable presumption that the Debtor was unable to pay its debts as they became due on the Petition Date, that the Debtor was insolvent as of the Petition Date and that the Debtor continued to be insolvent." *Poseidon, supra.*, 391 B.R. at 243.

As in Poseidon, Bankruptcy courts have routinely recognize that the underlying claim arising out of an insolvent corporation's stock repurchase obligation may be subordinated to the claims of the general creditors pursuant to 11 U.S.C. § 510. see, e.g. *In re Dino & Artie's Automatic Transmission, Co., Inc.*, 68 B.R. at 268 (finding that "the underlying claim arising out of an insolvent corporation's stock repurchase obligation must be subordinated in favor of the debtor corporation's general creditors in accordance with the principles of equitable subordination expressed in 11 U.S.C. § 510(c)(1)") (citing *La Grand Steel Products Co. v. Goldberg (In re Poole, McGonigle & Dick, Inc.)*, 796 F.2d 318, 323 (9th Cir.1986); *Liebowitz v. Columbia Packing Company*, 56 B.R. 222 (D.Mass.1985); *In re Micro-Acoustics Corp.*, 34 B.R. 279 (Bankr.S.D.N.Y.1983):. *Poseidon, supra*, 391 B. R. at 269.

The Cirillo Claims consists of a claim for un-paid post-petition date installment note payments which were to first become due and during the post-petition period. Under New York State law, and applicable bankruptcy law, the SPA and supporting documents are not enforceable against the Debtors because the Debtors, on and after the Petition Date were clearly insolvent, and the Cirillo Claims and must either be expunged or subordinated. Such a result is entirely consistent with Poseidon, where the court stated:

> so long as the Trustee has not made a payment under the Note and Redemption
> Agreement and that a share repurchase agreement which may be unenforceable at

a certain point in time can become enforceable at a later date should the corporation achieve a capital surplus, the Defendants must accept the reality that the Debtor will never have a capital surplus as the Debtor is in liquidation, its debts have become due and owing and there are insufficient assets to pay its liabilities in full. Accordingly, the Trustee could never make a payment under the Redemption Agreement as of the Petition Date and for the entire post-petition period without violating N.Y. Bus. Corp. Law § 513(a). Therefore, the Redemption Agreement cannot be enforced with respect to the Debtor for any payment obligation that would arise post-petition and the Redemption Agreement must be deemed null and void with respect to the Debtor for all post-petition payment obligations.

*In re Poseidon Pool & Spa Recreational, Inc.*, 391 B.R at 243-44; emphasis supplied.

As argued in Point I above, all documents given to secure the repurchase obligation under a stock repurchase agreement which is rendered unenforceable as a result of the corporation's insolvency are also rendered unenforceable. See *In re Flying Mailmen Service, Inc.*, 539 F.2d at 866, 868-69 (2nd Cir, 1976) (finding where a stock purchase agreement is no longer enforceable due to the insolvency of the corporation, any security interest created by the agreement is no longer enforceable as well); *In re Dino & Artie's Automatic Transmission Co., Inc.*, 68 B.R. at 269 (finding that because the underlying repurchase obligation is unenforceable under BCL § 513(a), it follows that the mortgage given to secure the underlying obligation is also unenforceable).

BCL 513(a) reinforces the basic rule that the equities generally favor the conventional general creditors rather than stockholders or former stockholders. *Jezarian v. Raichle* (*In re Stirling Homex Corp.*), 579 F.2d 206, 213 (2d Cir.1978), cert. denied 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979).

As in Poseidon, and this case, the stock pledge agreement purportedly secured obligations owed to the Cirillo Claimants and is unenforceable. The **Poseidon** court stated the "Note and Guarantee and Pledge Agreement are similarly unenforceable as to the Debtor with respect to

any payment obligations for damages incurred by the Defendants that arises post-petition". Id. 391 B.R.at 234. As here, the entire thrust of the SPA and related documents, as with the Poseidon Transaction Documents, concern the sale of stock to the Debtors. "The purpose of these agreements was to facilitate the sale of Vincent Arbore's stock by giving Vincent Arbore a promissory note and a security interest to secure the payment obligation under the Redemption Agreement." Id 391 B.R. at 243. "Because the Redemption Agreement is deemed unenforceable with respect to any damages arising during the post-petition period, any rights under these ancillary agreements are also deemed unenforceable against the Debtor during the post-petition period". Id.

Accord: *In re Dino & Artie's Automatic Transmission Co., Inc.*, 68 B.R. 264 (Bankr. S.D.N.Y.1986)

For all of the foregoing reasons, equity demands that the Cirillo Claims should either be expunged or subordinated.


## RESERVATION OF RIGHTS

The Debtors reserve all of their rights and remedies regarding the Cirillo Claim, including the right to seek to expunge the Cirillo Claims by a claims objection motion, if necessary.


## POINT III

## THE ENTRY OF SUMMARY JUDGMENT AND
## AN ORDER SUBORDINATING THE CIRILLO CLAIMS IS WARRANTED

The standards applicable to motions for summary judgment are well settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. As the Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50, 106 S.Ct. at 2511 (citations omitted). Rule 56 further provides, when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. A party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). With these standards in mind, with respect to the moving party, Rule 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 505 Fed.R.Civ.P. 56(c).

The dispositive facts at issue here are simple, based on written agreements and are undisputed. As shown in the Plaintiffs' statement of undisputed facts pursuant to Local Rule

7056-1 filed in support of the Motion, there are no genuine issues of material facts in dispute and

entry of summary judgment in favor of the Debtors is warranted.

## CONCLUSION

**WHEREFORE**, Debtors respectfully requests that this Honorable Court grant summary

judgment in their favor and enter an order, substantially in the form attached hereto as "1"

subordinating the Cirillo Claims or, alternatively, an order , substantially in the form attached

hereto as "2", disallowing and expunging the Cirillo Claims, and that the Court grant such other

and further relief as this court may deem just and appropriate.

Dated: New York, New York
      October 7, 2010

**GOLUB & GOLUB, LLP**

Counsel to the Official Committee
of Unsecured Creditors

By: _____

Steven M. Golub, Esq (SG 3592)
A Member of the Firm
225 Broadway, Suite 1515
New York, New York 10007
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

-and-

**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

16

**EXHIBIT "1"**
**(Proposed Order)**

ANDREWS KURTH LLP
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway - 15th Floor
New York, New York 10007
Steven M. Golub, Esq. (SG 3592)
Remy J. Ferrario, Esq. (RF 4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x
In re:

WINIMO REALTY CORPORATION, et al.,

                                 Debtors.

Chapter 11 Case Nos. 92-B-40026
  Through 92-B- 40045 (RRD) (inclusive)

        Jointly Administered
Under Case No. 92-B-40026 (RRD)

------------------------------------------------------------- x
WINIMO REALTY CORPORATION, et al.,

                    Plaintiffs,

                       V.
WILLIAM J. CIRILLO ON HIS BEHALF AND AS
AGENT FOR THE ESTATE OFCONSTANCE
CIRILLO, JACQUELYN CIRILLO, ROBERT
CIRILLO, AND WILLIAM J. CIRILLO AND
BARBARA CIRILLO, AS TRUSTEES FOR
JANICE CIRILLO AND MONTAUK OIL
TRANSPORTATION CORP.,
                   Defendants.

Adversary Proceeding No. 10-02816 (RRD)

------------------------------------------------------------x

**ORDER GRANTING SUMMARY JUDGMENT SUBORDINATING CLAIMS FILED BY**
**DEFENDANTS WILLIAM J. CIRILLO, INDIVIDUALLY AND AS AGENT**

This matter has come before the Court on (i) Debtors' notice of motion for summary judgment (the "Motion") seeking judgment as a matter of law, subordinating all claims set forth in Exhibit "A" hereto filed by William J. Cirillo, individually and as agent for the Estate of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo; and William J. Cirillo and Barbara Cirillo, as Trustees for Janice Cirillo (collectively, the "Defendants"), the Debtors' Statement of Undisputed Facts and the Debtors Memorandum of Law in support of the Motion (collectively, "Debtor's Moving Papers"), and the Court having reviewed the Debtors' Moving Papers and any opposition papers filed, and considered the Debtors' and Defendants oral argument on the Motion at a hearing held on October 26, 2010;

**THE COURT HEREBY FINDS THAT:**

1.      The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334; and

2.      There is no dispute that the Defendants are parties to the SPA[1] and that the damages asserted in the Defendants Proofs of Claim are admitted to arise "in connection with or arising out of the Note, Stock Purchase Agreement and Guaranty"; and

3.      There is no genuine issue of material fact in dispute and the Plaintiff s therefore are entitled to judgment as a matter of law

**NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED**: that:

1.      The Motion is granted in all respects.

2.      The Plaintiff is granted judgment against Defendants subordinating all claims filed by Defendants, as set forth in Exhibit "A" hereto, to all claims or interests that are senior to or equal to the claim or interest represented by the stock and shall have the same priority as common stock.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Debtors' Memorandum of Law..

3.     The person responsible for maintaining the claims register in these Chapter 11 Cases is authorized to cause the claims register to be amended to reflect the relief granted by this Order.

4.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

5.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      October_____2010

 

_____
**Hon. Robert D. Drain**
**United States Bankruptcy Judge**

**Exhibit A**

**Filed Claims**

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

## Claims To Be Subordinated

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| 0001307-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 307 | 6/2/1993 | 92-40027 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002802-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 308 | 6/2/1993 | 92-40028 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002604-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 309 | 6/2/1993 | 92-40026 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0002262-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 310 | 6/2/1993 | 92-40043 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0004502-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 311 | 6/2/1993 | 92-40045 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000243-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 312 | 6/2/1993 | 92-40040 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001313-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 313 | 6/2/1993 | 92-40041 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

| Creditor Number | Name/Address of Claimant | Claims To Be Subordinated | | | |
|---|---|---|---|---|---|
| | | Claim Number | Date Filed | Case Number | Total Amount Claimed |
| 0000256-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 314 | 6/2/1993 | 92-40042 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000291-00 | CIRILLO, WILLIAM J<br>SOUTHSHORE TERMINAL CHATTERTON &<br>BLACKROCK<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 315 | 6/2/1993 | 92-40036 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001316-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 316 | 6/2/1993 | 92-40038 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000242-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 317 | 6/2/1993 | 92-40039 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000221-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 318 | 6/2/1993 | 92-40035 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000215-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 319 | 6/2/1993 | 92-40033 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 320 | 6/2/1993 | 92-40034 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

## ────Claims To Be Subordinated────

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| 0000037-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHEM MANOR NY 10803 | 321 | 6/2/1993 | 92-40031 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0003226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHEM MANOR NY 10803 | 322 | 6/2/1993 | 92-40032 | $1,115,886.79 | (T)<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000017-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 323 | 6/2/1993 | 92-40029 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0000031-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 324 | 6/2/1993 | 92-40030 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001334-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 334 | 6/3/1993 | 92-40037 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |
| 0001335-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 335 | 6/3/1993 | 92-40044 | $1,115,886.79 | (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>(U) |

# EXHIBIT A - Subordination Under 11 U.S.C. § 510(b)

## Claims To Be Subordinated

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| Totals: | | 20 Claims | | | $22,317,735.80 (T) ESTIMATED |
| | | | | | (S) |
| | | | | | (A) |
| | | | | | (P) |
| | | | | | $22,317,735.80 (U) |

**EXHIBIT "2"**
**(Proposed Order Expunging Claims)**

**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

Hearing Date:  October 26, 2010

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

WINIMO REALTY CORPORATION, et al.,

                              Debtors.

Chapter 11 Case Nos. 92-B-40026
 Through 92-B- 40045 (RRD) (inclusive)

Jointly Administered
Under Case No. 92-B-40026 (RRD)

-------------------------------------------------------- x
WINIMO REALTY CORPORATION, et al.,

                       Plaintiffs,

Adversary Proceeding No. 10-02816 (RRD)

             V.
WILLIAM J. CIRILLO ON HIS BEHALF AND AS
AGENT FOR THE ESTATE OFCONSTANCE
CIRILLO, JACQUELYN CIRILLO, ROBERT
CIRILLO, AND WILLIAM J. CIRILLO AND
BARBARA CIRILLO, AS TRUSTEES FOR
JANICE CIRILLO AND MONTAUK OIL
TRANSPORTATION CORP.,
                    Defendants.
--------------------------------------------------------x

## ORDER DISALLOWING AND EXPUNGING CLAIMS FILED BY DEFENDANTS
## WILLIAM J. CIRILLO, INDIVIDUALLY AND AS AGENT

This matter has come before the Court on (i) Debtors' notice of motion for summary

judgment (the "Motion") seeking judgment as a matter of law, subordinating all claims set forth in

Exhibit "A" hereto filed by William J. Cirillo, individually and as agent for the Estate of

Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo; and William J. Cirillo and Barbara Cirillo, as

Trustees for Janice Cirillo (collectively, the "Defendants"), the Debtors' Statement of Undisputed

Facts and the Debtors Memorandum of Law in support of the Motion (collectively, "Debtor's Moving Papers"), and the Court having reviewed the Debtors' Moving Papers and any opposition papers filed, and considered the Debtors' and Defendants oral argument on the Motion at a hearing held on October 26, 2010;

### NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED: that:

1.   The Motion is granted in all respects.

2.   The Plaintiff is granted judgment against Defendants and all claims filed by Defendants, as set forth in Exhibit "A" hereto are disallowed and expunged.

3.   The person responsible for maintaining the claims register in these Chapter 11 Cases is authorized to cause the claims register to be amended to reflect the relief granted by this Order.

4.   The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

Dated: New York, New York
      October____2010

 

                                      _____
                                        **Hon. Robert D. Drain**
                                        **United States Bankruptcy Judge**

**EXHIBIT "A"**
**(Claims To Be Expunged)**

# EXHIBIT A - Claims To Be Expunged

## Claims to be Subordinated

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| 0001307-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 307 | 6/2/1993 | 92-40027 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0002802-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 308 | 6/2/1993 | 92-40028 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0002604-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 309 | 6/2/1993 | 92-40026 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000262-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 310 | 6/2/1993 | 92-40043 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0004502-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 311 | 6/2/1993 | 92-40045 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000243-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 312 | 6/2/1993 | 92-40040 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001313-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 313 | 6/2/1993 | 92-40041 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |

# EXHIBIT A – Claims To Be Expunged

## ─── Claims to be Subordinated ───

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| 0000256-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 314 | 6/2/199392-40042 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0000291-00 | CIRILLO, WILLIAM J<br>SOUTHSHORE TERMINAL CHATTERTON &<br>BLACKROCK<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 315 | 6/2/199392-40036 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0001316-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 316 | 6/2/199392-40038 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0000242-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 317 | 6/2/199392-40039 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0000221-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 318 | 6/2/199392-40035 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0000215-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 319 | 6/2/199392-40033 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |
| 0000226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 320 | 6/2/199392-40034 | | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br><br>$1,115,886.79 (U) |

EXHIBIT A - Claims To Be Expunged

—— Claims to be Subordinated ——

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| 0000037-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHEM MANOR NY 10803 | 321 | 6/2/1993 | 92-40031 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0003226-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 322 | 6/2/1993 | 92-40032 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000017-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 323 | 6/2/1993 | 92-40029 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0000031-00 | CIRILLO, WILLIAM J<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 324 | 6/2/1993 | 92-40030 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001334-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 334 | 6/3/1993 | 92-40037 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |
| 0001335-00 | CIRILLO, WILLIAM J<br>EST CONSTANCE/JACQUELYN/ROBERT<br>JANICE-WILLIAM & BARBARA TTEES<br>19 MANGER CIRCLE<br>PELHAM MANOR NY 10803 | 335 | 6/3/1993 | 92-40044 | $1,115,886.79 (T) ESTIMATED<br>(S)<br>(A)<br>(P)<br>$1,115,886.79 (U) |

EXHIBIT A - Claims To e Expunged

———— Claims to be Subordinated ————

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| **Totals:** | | **20 Claims** | | | $22,317,735.80 (T) ESTIMATED |
| | | | | | (S) |
| | | | | | (A) |
| | | | | | (P) |
| | | | | | $22,317,735.80 (U) |

ANDREWS KURTH LLP
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein, Esq. (PS 5098)
Jonathan Levine, Esq. (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway, Suite 1515
New York, New York 10007
Steven M. Golub, Esq) (SG 3592)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee
of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

WINIMO REALTY CORP., et al.,

     Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 11
Case Nos. 92-B-40026 (RDD) through
92-B-40045 (RDD), inclusive

JOINTLY ADMINISTERED UNDER
CASE NO. 92-B-40026 (RDD)

## AFFIDAVIT OF SERVICE BY MAIL

Remy J. Ferrario, being duly sworn, deposes and says:

I am not a party to this action, am over eighteen (18) years of age and reside in Bergen County, New Jersey, New York. On October 7, 2010, I served via U.S. Mail the Debtors (a) Notice of Motion For Summary Judgment (b) Statement of Undisputed Facts, (c) Memorandum of Law in support of the Motion, (d) Exhibit "A" to the Statement of Undisputed Facts , and (e) Exhibit "B" to the Statement of Undisputed Facts by placing true copies of such papers in a properly sealed envelope addressed to the (a) Paul Silverstein, Esq., Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017, Counsel to the Debtors, (b) Mark A. Frankel, Esq., Backenroth Frankel & Krinsky, LLP 489 Fifth Avenue, New York, New York 10017, Counsel for Defendants, William J. Cirillo on his behalf and agent for the estates of Constance Cirillo, Jacquelyn Cirillo, Robert Cirillo, William C. Cirillo and Barbara Cirillo, as Trustees for Janice Cirillo, and (c) Brian S. Masumoto,

Esq., Assistant US Trustee, Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, 21St Floor, New York, New York 10004, with postage thereon fully paid, which was deposited

with the U.S. Postal Service on that same day in the ordinary course of business.

_____
Remy J. Ferrario

Sworn to before me on this 7th
day of October 2010

_____
NOTARY PUBLIC

STEVEN M. GOLUB
Notary Public, State of New York
No. 31-4968286
Qualified in New York County
Commission Expires 6/5/2014